### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Our Alchemy, LLC | Case No. 16-11596 (KG) |
| Debtor. | **Objection Deadline: TBD**<br>**Hearing Date: TBD** |

### MOTION OF ANDERSON MERCHANDISERS, LLC FOR THE EXPEDITED ENTRY OF AN ORDER: (I) GRANTING RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1) TO ALLOW TERMINATION OF ITS AGREEMENT WITH THE DEBTOR; OR, ALTERNATIVELY, (II) PROVIDING ADEQUATE ASSURANCE OF FUTURE PERFORMANCE PENDING ASSUMPTION OR REJECTION OF THE AGREEMENT

Anderson Merchandisers, LLC ("Anderson Merchandisers") hereby moves the Court (the "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A**: (i) granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) to allow termination of its Agreement (defined below) with Our Alchemy, LLC (the "Debtor"); or (ii) requiring George L. Miller, as trustee of the Debtor's chapter 7 bankruptcy estate (the "Chapter 7 Trustee"), to provide adequate assurance of future performance under the Agreement pending assumption or rejection of the Agreement. In support of the Motion, Anderson Merchandisers represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought are §§ 362 and 365 of the Bankruptcy Code.

2.      Pursuant to Local Rule 9013-1(h), Anderson Merchandisers consents to the entry of a final order by this Court on this Motion if it is determined that the Court, absent

#40017406 v7

consent of the parties, cannot enter final orders consistent with Article III of the United States Constitution.

## **BACKGROUND**

3.      The Debtor was in the business of distributing DVDs to retailers, including Walmart.  On July 9, 2015, Anderson Merchandisers and the Debtor entered into a Merchandising Agreement (the "Agreement"), a copy of which is attached hereto as **Exhibit B.** Pursuant to the Agreement, Anderson Merchandisers provides certain merchandising services for the Debtor in Walmart stores, including, *inter alia*, stocking, zoning and setting of DVD's in the stores' movie department.  *See Agreement*, section 1.4, Exhibit A.   More specifically, the services provided by Anderson Merchandisers pursuant to the Agreement include, but are not limited to, (i) merchandising of all new release and catalog movie product inline, on end caps and out of department (e.g., front of store) fixtures; (ii) managing movie return initiatives; (iii) executing all signing and point of purchase materials for studios and overall department; (iv) overseeing modular reset change outs (3 times a year) of the entire movie department and (v) setting all promotions, including but not limited to new release and catalog corrugates, standees, trays and seasonal activity.

4.      In simple terms, under the Agreement, Anderson Merchandisers provides in-store marketing, organization and stocking for approximately 1,000 film titles and television episodes at approximately 4,500 Walmart locations.  In other words, Anderson Merchandisers provides the in-store link between the Debtor and its DVDs that is crucial to the sale of DVDs in Walmart's approximately 4,500 locations.  These services involve a significant expenditure of manpower and expense, with Anderson's monthly bills to the Debtor typically running $200,000

to $300,000.  Without these services, the sale of DVDs by Walmart and payments made to the Debtor's estate would be adversely affected.

5.    Pursuant to section 9.2 of the Agreement, Anderson Merchandisers has the right to terminate the Agreement if the Debtor materially breaches the Agreement, including without limitation, by nonpayment, and that breach is not remedied to Anderson Merchandisers' reasonable satisfaction within fifteen (15) business days of the Debtor's receipt of a notice of breach from Anderson Merchandisers. *See Agreement*, section 9.2.

6.    On June 27, 2016, in accordance with section 9.2 of the Agreement, Anderson Merchandisers sent a letter (the "Default Notice") to the Debtor (i) declaring that the Debtor was in material breach of the Agreement, (ii) reflecting that as of June 27, 2016, the Debtor owed Anderson Merchandisers $3,228,731.14 under the Agreement due to non-payment, and (iii) demanding payment in full.  A copy of the Default Notice is attached hereto as **Exhibit C**.  Neither the Debtor nor the Chapter 7 Trustee have remedied that breach.

7.    On July 1, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq.* as amended, the "Bankruptcy Code").

8.    As of the Petition Date, the Debtor owed Anderson Merchandisers $193,846.54[1] under the Agreement, none of which has been paid.  Given the Default Notice, had the bankruptcy not been commenced, Anderson Merchandisers would have been able to complete the termination of the Agreement on July 25, 2016. See Agreement, § 9.2(iii).

9.    Upon information and belief, on or before the Petition Date, the Debtor ceased operations and terminated, most if not, all of its employees.    *See*

---

[1]    This number is net of a $3,208,314 setoff exercised by the Debtor on April 12, 2016.  Prior to the Petition Date, the Debtor never paid Anderson Merchandisers for its services under the Agreement.

#40017406 v7

http://www.ouralchemy.com.  The Chapter 7 Trustee is not operating the Debtor's business in the ordinary course.

10.     Beginning early in the week of July 11th, counsel for Anderson Merchandisers contacted counsel for the Chapter 7 Trustee to ascertain what the Chapter 7 Trustee's plans were with respect to liquidating the Debtor's assets and whether or not Anderson Merchandisers would be paid for its continuing services.  As of the filing of this Motion, no agreement had been reached between the Chapter 7 Trustee, Walmart, Anderson Merchandisers and the Debtor's secured creditor, Sun Trust, with respect to paying Anderson Merchandisers for its continued services.  Anderson Merchandisers delayed filing this Motion with the hope that an agreement would be reached.  However, as of the filing of this Motion, no agreement has been reached and it was not clear if, or when, an agreement would be reached.

11.     Given the Debtor's cessation of business operations, it is unclear at this time whether the Chapter 7 Trustee wants Anderson Merchandisers to continue to perform under the Agreement.  However, the contractual period for completion of the process of terminating the Agreement under section 9.2 had not yet passed as of the Petition Date, implicating the extension provisions of section 108(b) of the Bankruptcy Code.  It is also unclear whether the Chapter 7 Trustee, even if he wanted Anderson Merchandisers to continue to perform under the Agreement, can pay for that performance given the existence of substantial secured debt in the case and the absence of any agreement with Sun Trust.  The uncertainty created by this confluence of factors places Anderson Merchandisers in an untenable and unfair position, warranting expedited relief from this Court.

#40017406 v7

**RELIEF REQUESTED**

12.      This Motion seeks the entry of an order (i) granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) so that Anderson Merchandisers can terminate the Agreement and suspend performance under the Agreement pending such termination; or (ii) requiring the Chapter 7 Trustee to provide adequate assurance of future performance pending assumption or rejection of the Agreement.

**BASIS FOR RELIEF REQUESTED**

**A.      Anderson Merchandisers is Entitled to Relief from the Automatic Stay to Terminate the Agreement under § 362(d).**

13.      "Under 11 U.S.C. § 362(d)(1), the automatic stay can be lifted 'for cause, including the lack of adequate protection of an interest in property of such party in interest[.]'" *Rocco v. J.P. Morgan Chase Bank*, 255 F. App'x 638, 641 (3d Cir. 2007). "Except for lack of adequate protection, 'cause' is not defined by § 362(d)(1)." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).  "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *Id.*

14.      Cause exists to lift the stay so that Anderson Merchandisers may terminate the Agreement and suspend performance pending termination.  Prior to the Petition Date, given the Debtor's substantial history of non-performance of its obligations under the Agreement, Anderson Merchandisers started the process of terminating the Agreement by sending the Default Notice.  By operation of section 108, the filing of the Debtor's bankruptcy petition suspended that termination process.  Moreover, since the Agreement constitutes an executory contract, the Chapter 7 Trustee may take the position (as to which Anderson Merchandisers

#40017406 v7

reserves all rights) that Anderson Merchandisers is required to continue to perform under the Agreement even though the Debtor has ceased operations.

15.    In order to avoid further losses, Anderson Merchandisers seeks relief from this Court to finalize termination of the Agreement and to suspend performance under the Agreement pending that termination.  Anderson Merchandisers provides services to the Debtor under the Agreement with a value under the Agreement of approximately $200,000 to $300,000 per month.  If Anderson Merchandisers is not permitted to complete the termination of the Agreement, it will be placed in the unreasonable and unfair position of having to extend post-petition credit of approximately $200,000 to $300,000, with a concomitant benefit to the estate and Sun Trust every month with no evidence that the Debtor's estate can pay for those services, or even whether the Chapter 7 Trustee agrees that the services being rendered by Anderson are a benefit to the estate given the Debtor's cessation of business operations.   Under these circumstances, it is inequitable to force Anderson Merchandisers to expend the considerable resources necessary to continue to perform under the Agreement.  Therefore, lifting the stay to permit the termination of the Agreement, and allowing Anderson Merchandisers to suspend performance under the Agreement pending termination, is warranted.

**B.    If Anderson Merchandisers' Request for Relief from the Stay is Denied, Anderson Merchandisers is Entitled to Adequate Protection Pending Assumption or Rejection of the Agreement.**

16.    "The distorting effect of the Bankruptcy Code upon outcomes which would otherwise be expected outside the context of bankruptcy at times gives bankruptcy law the aura of an 'Alice through the Looking Glass' world." *In re Macomb Occupational Health Care, LLC*, 300 B.R. 270, 283 n. 11 (Bankr. E.D. Mich. 2003).  "However, bankruptcy proceedings do not transpire in some exotic land which is exempt from the laws which govern the rest of the

world." *Id.* For example, the Bankruptcy Code should not be construed to deprive a creditor of its constitutional right to be compensated for property. *See In re Continental Energy Assocs. Ltd. Pshp.*, 178 B.R. 405 (Bankr. M.D. Pa. 1995).

      17.    Section 363(e) of the Bankruptcy Code provides, in relevant part:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used . . . by the trustee, the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e); *see also In re Swedeland Dev. Grp., Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) (noting that the purpose of adequate protection is to ensure that the creditor receives the value he bargained for pre-bankruptcy). While the Bankruptcy Code does not define adequate protection, section 361 states that it may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361. The last possibility is regarded as a catch all, allowing courts discretion in fashioning the protection provided. *Swedeland,* 16 F.3d at 564.

      18.    In *Continental*, the debtor sought an injunction compelling a creditor to continue performance under a supply contract until the debtor decided to assume or reject it. 178 B.R., at 407. The debtor was in arrears under the contract for $15 million on the petition date. *Id.* As a form of adequate assurance, the debtor offered to pay the creditor cash in advance to ensure the creditor's post-petition performance would be fully compensated. *Id.* Importantly, while expressing concern about "the Fifth Amendment rights of an entity to be compensated for property," the *Continental* court noted that because, *inter alia,* "the Debtor is now paying to [the creditor] the contract amount in advance," the creditor's "Fifth Amendment rights are vigilantly being guarded[.]" 178 B.R., 407.

19.     Similarly, given the Debtor's pre-petition defaults and the substantial administrative obligations that will continue to accrue post-petition under the Agreement, it is respectfully submitted that the Chapter 7 Trustee should be ordered to pay cash-in-advance if he wants Anderson Merchandisers to provide post-petition services under the Agreement pending assumption or rejection.

20.     Specifically, Anderson Merchandisers proposes that the Chapter 7 Trustee be required to pay $50,000 to Anderson Merchandisers, on the first business day of each week (the "Weekly Payment") as cash-in-advance for services to be provided by Anderson Merchandisers for the coming week, with a true-up to be performed by Anderson Merchandisers within three business days following the end of each calendar month for the immediately proceeding month, with (i) any shortfall to be remitted to Anderson Merchandisers by the Chapter 7 Trustee by wire transfer within three business days of such true-up, or (ii) any overage to be credited against the next Weekly Payment owed by the Chapter 7 Trustee. Absent timely payment by the Chapter 7 Trustee, Anderson Merchandisers would be entitled to immediately and permanently cease services under the Agreement without further order of the Court.

## NOTICE

21.     Notice of this Motion has been given to (i) the Office of the United States Trustee; (ii) the Chapter 7 Trustee, (iii) the Debtor's secured creditors, (iv) Walmart and (v) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedures. Anderson Merchandisers submits that, in light of the nature of the relief requested, no other or further notice be given.

#40017406 v7

## NO PRIOR REQUEST

22.    Anderson Merchandisers has not filed any prior motion for the specific relief requested herein to this Court or any other Court.

## CONCLUSION

WHEREFORE, Anderson Merchandisers respectfully requests that the Court enter an order, substantially in the form attached hereto, (i) granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) so Anderson Merchandisers can terminate the Agreement and suspend performance under the Agreement pending termination, or (ii) alternatively, requiring the Chapter 7 Trustee to provide adequate assurance of future performance to Anderson Merchandisers pending assumption or rejection of the Agreement, and (iii) granting Anderson Merchandisers such other and further relief as is just and proper.

Dated:  July 22, 2016
          Wilmington, DE

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ Evelyn J. Meltzer
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
Michael J. Custer (DE No. 4843)
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, Delaware  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Counsel to the Anderson Merchandisers, LLC*

#40017406 v7