**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, | Case No. 16-11596 (KG) |
| Debtor. | |
| In re: | Chapter 7 |
| ANDERSON DIGITAL, LLC, | Case No. 16-11597 (KG) |
| Debtor. | |

**SHARING AND REIMBURSEMENT AGREEMENT BETWEEN CHAPTER 7
TRUSTEE AND SUNTRUST BANK, AS ADMINISTRATIVE AGENT FOR ITSELF
AND CERTAIN OTHER SECURED LENDERS, PROVIDING FOR, AMONG OTHER
THINGS, (I) DETERMINATION AND ALLOWANCE OF THE SECURED LENDERS'
PRE-PETITION CLAIMS AND LIENS; (II) THE TRUSTEE'S SALE OF THE
DEBTORS' ASSETS AND SECURED LENDERS' COLLATERAL; (III) THE
SPECIFIED CARVE-OUT OF THE SECURED LENDERS' LIENS; AND (IV) OTHER
MATTERS CONCERNING THE TRUSTEE'S CONTEMPLATED SALE(S) OF
COLLATERAL AND THE SETTLEMENTS EMBODIED IN THE SHARING AND
REIMBURSEMENT AGREEMENT**

This Sharing and Reimbursement Agreement (the "Agreement") is entered into as of the

1st day of September, 2016, by and between (A) George L. Miller (the "Trustee"), the chapter 7

trustee of the estates of the above-captioned debtors, namely, Our Alchemy, LLC ("Alchemy")

and Anderson Digital, LLC ("Anderson Digital" and, together with Alchemy, the "Debtors" or

the "Estates"), and (B) SunTrust Bank, in its capacity as Administrative Agent under the Pre-

Petition Financing Documents (as defined below) ("SunTrust") for itself and for certain other

lenders (collectively, with SunTrust Bank in its capacity as a lender, the "Lenders"). The Trustee and SunTrust[1] are referred to herein, collectively, as the "Parties".

## I.    BACKGROUND

A.    WHEREAS, on July 1, 2016 (the "Petition Date"), each Debtor filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases").

B.    WHEREAS, on or around the Petition Date, the Trustee was appointed trustee of the Estates and is so acting. The meeting of creditors pursuant to 11 U.S.C. § 341 was commenced and concluded on July 25, 2016.

C.    WHEREAS, the Parties understand that the Debtors were among the largest independent distributors of film and television content across multiple platforms and windows in North America. The Debtors were also full-service acquisition and distribution companies providing one-stop destinations for sales, marketing and releasing services across all major media channels. Moreover, the Parties understand that the Debtors previously served as independent distributors that provided direct access to theatrical exhibitors, and all major physical retailers (including Wal-Mart, Target and Best Buy), and also served as a leading independent supplier to digital platforms, cable, satellite and television (including Netflix, Comcast, DIRECTV, Amazon and Hulu). Finally, the Parties understand that the Debtors currently own a diverse film library and television properties in North America and select international markets.

---

[1]    For the avoidance of doubt, and except as otherwise noted herein, any reference to "SunTrust" in this Agreement shall mean SunTrust, in its capacity as Administrative Agent for the Lenders, in accordance with and subject to the terms and conditions of the Pre-Petition Financing Documents (as defined below).

2

## II.    EXISTING DEBT

D.      WHEREAS, each of the Debtors is a borrower or guarantor under a certain credit facility and, as of the Petition Date, have total outstanding secured debt owing to the Lenders of no less than $46,307,642 (the "Claim Amount").  The credit facility is described below.

**Credit Facility with SunTrust and the Lenders.**

E.      WHEREAS, pursuant to that certain Revolving Credit and Term Loan Agreement, dated as of September 4, 2014, as amended by that certain Amended and Restated Revolving Credit and Term Loan Agreement dated as of July 9, 2015, and as further amended by that certain Amendment No. 1 and Waiver to Credit Agreement, dated as of December 18, 2015 (as amended, supplemented or otherwise modified from time to time, the "Pre-Petition Credit Agreement"), the Lenders agreed to extend certain loans to Alchemy (the "Borrower") under a first-lien facility consisting of:  (i) a revolving credit facility (the "Revolver") of the lesser of (A) $26,000,000, and (B) a borrowing base calculation consisting of eligible accounts receivable and eligible inventory; and (ii) a term loan (the "Term Loan" and, together with the Revolver, the "Pre-Petition Loans") in the principal amount of $33,500,000.

F.      WHEREAS, as of the Petition Date, there was no less than $17,050,000 outstanding under the Revolver, and no less than $29,256,475 in principal outstanding under the Term Loan, plus interest, fees, costs, expenses and other obligations payable under the Pre-Petition Financing Documents (as defined below) (collectively, the "Pre-Petition Obligations").

G.      WHEREAS, to induce the Lenders to extend the loans evidenced by the Pre-Petition Credit Agreement, the Borrower, Anderson Digital and Calrissian LP ("Calrissian") entered into that certain Guaranty and Security Agreement, dated as of September 4, 2014, as amended by that certain Omnibus Amendment of Certain Collateral Documents, dated as of

27957167\1 00601.0823.000/390810.000
09/06/2016

July 9, 2015 (as amended, supplemented or modified from time to time, the "Pre-Petition Security Agreement" and, together with the Pre-Petition Credit Agreement and any and all other agreements, documents and instruments executed in connection therewith or in furtherance thereof, the "Pre-Petition Financing Documents")[2]. Pursuant to the Pre-Petition Security Agreement: (i) each of the Borrower, Anderson Digital and Calrissian granted to SunTrust valid, enforceable, perfected and non-avoidable first-priority security interests and liens (the "Pre-Petition Liens") in substantially all of the Borrower's, Anderson Digital's and Calrissian's respective personal and real property, tangible and intangible, whether then owned or at any time thereafter acquired by any such entity or in which such entity then had or at any time in the future may acquire any right, title or interest, wherever located or situated, and whether then existing or thereafter coming into existence, including, but not limited to, all of each such entity's right, title and interest in, to and under any of the following: all Accounts and Chattel Paper; all Copyrights and Copyright Licenses; all Commercial Tort Claims; all contracts; all Deposit Accounts; all Documents; all General Intangibles; all Goods (including all Inventory, all Equipment and all Fixtures); all Instruments; all Investment Property; all Letter-of-Credit Rights; all Notes and all intercompany obligations between the Borrower, Anderson Digital and Calrissian; all Patents and Patent Licenses; all Pledged Securities; all Trademarks and Trademark Licenses; all Vehicles; all books and records, Supporting Obligations and related letters of credit or other claims and causes of action, in each case to the extent pertaining thereto; and to the extent not otherwise included, substitutions, replacements, accessions, products and other Proceeds (including insurance proceeds, licenses, royalties, income, payments, claims, damages and proceeds of suit) of any or all of the foregoing and all collateral security, guarantees and

---

[2]  Capitalized terms shall have the meanings ascribed in the Pre-Petition Financing Documents unless otherwise expressly defined herein.

4

other Supporting Obligations given with respect to any of the foregoing, whether arising prior to,

on or after the Petition Date, excluding the Excluded Property (the "Collateral")[3], and (ii) each of

Anderson Digital and Calrissian unconditionally and irrevocably guaranteed, jointly with the

other and severally, as a primary obligor and not merely as a surety, (x) the due and punctual

payment of all Pre-Petition Obligations, including (A) the principal of and premium, if any, and

interest (including interest accruing during the pendency of any bankruptcy, insolvency,

receivership or other similar proceeding, regardless of whether allowed or allowable in such

proceeding) on the Pre-Petition Loans, when and as due, whether at maturity, by acceleration,

upon one or more dates set for prepayment or otherwise and (B) all other monetary obligations,

including fees, costs, expenses and indemnities, whether primary, secondary, direct, contingent,

fixed or otherwise (including monetary obligations incurred during the pendency of any

bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed

or allowable in such proceeding), of the Borrower, Anderson Digital, Calrissian and/or any other

person (other than a Lender) respectively owing to SunTrust or any of the Lenders under the Pre-

Petition Financing Documents; and (y) the due and punctual performance of all covenants,

agreements, obligations and liabilities of the Borrower, Anderson Digital, Calrissian and/or any

other person (other than a Lender) respectively owing to SunTrust or any of the Lenders under

the Pre-Petition Financing Documents.  For the avoidance of doubt, the Collateral excludes

causes of action under chapter 5 of the Bankruptcy Code and the proceeds thereof (for the further

avoidance of doubt, such exclusion shall not prevent SunTrust or any of the Lenders from

---

[3]    Collateral includes causes of action or claims held by the Estates, if any, against the former officers, directors, professionals or other parties, but (i) SunTrust's liens on the Debtors' "commercial tort claims" (as defined in Section 9-102 of the New York Uniform Commercial Code) were not perfected as of the Petition Date (ii) SunTrust's liens do not extend to avoidance actions under sections 544, 547, 548, 549 and 550 (except with respect to Collateral recovered pursuant to section 549 of the Bankruptcy Code) of the Bankruptcy Code.

27957167\2 00601.0823.000/390810.000
09/15/2016

participating in any distribution to pre-petition unsecured creditors, based on any deficiency claim that SunTrust or any of the Lenders ultimately hold).

H.    WHEREAS, the Pre-Petition Liens of SunTrust are (i) valid, binding, perfected, enforceable liens, including all post-petition proceeds, products, offspring, rents and profits thereof, (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) subject and subordinate only to (A) the Adequate Protection Liens (as defined below) and (B) the Carve-Out (as defined below and to which the Adequate Protection Liens are subject).  The Pre-Petition Financing Documents are valid and binding agreements and obligations of the Debtors and the Estates.

I.    WHEREAS, the Pre-Petition Obligations constitute legal, valid, binding obligations of the Estates, enforceable in accordance with their terms, and no objection, defense, counterclaim, avoidance, subordination, setoff, recharacterization, deductions, impairment, disallowance or challenge of any kind or nature with respect to the Pre-Petition Obligations exists.  None of the Pre-Petition Liens, Pre-Petition Obligations, nor any amounts previously paid to SunTrust or any of the Lenders on account thereof or with respect thereto, is subject to objection, avoidance, subordination, setoff, recovery, recharacterization, deductions, challenge, disallowance or impairment under the Bankruptcy Code or applicable non-bankruptcy law.  The Estates do not have, hereby forever release and are forever barred from bringing, exercising or enforcing, any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or otherwise, with respect to the Pre-Petition Liens, the Pre-Petition Obligations and the Pre-Petition Financing Documents, against SunTrust, any of the Lenders or any of their respective successors-in-interest, predecessors-in-interest, affiliates, subsidiaries,

27957167\1 00601.0823.000/390810.000
09/06/2016

agents, officers, directors, employees, partners, managers, members, advisors, consultants, or attorneys or representatives (collectively, the "Related Parties").

      J.    WHEREAS, the Pre-Petition Loans were originally set to mature on September 4, 2018, and pursuant to the terms of the Pre-Petition Financing Documents, are secured by a first-priority lien on substantially all of the Debtors' and Calrissian's property identified as Collateral. On June 15, 2016, SunTrust issued a Notice of Acceleration of Debt to each of the Debtors and Calrissian, pursuant to which SunTrust, on behalf of itself and the Lenders (i) terminated the commitments under the Pre-Petition Credit Agreement, (ii) declared the principal of and any accrued interest on the Pre-Petition Loans outstanding, and all other Pre-Petition Obligations owing under the Pre-Petition Credit Agreement, to be due and payable immediately and accelerated, (iii) notified the Debtors and Calrissian that, as a result of such acceleration, default interest under the Pre-Petition Credit Agreement continues to accrue from December 31, 2015, and (iv) demanded immediate payment of all amounts described in clauses (ii) and (iii), and any other amounts lawfully due and payable under the terms of the Pre-Petition Financing Documents, including all out-of-pocket costs and expenses (including the reasonable fees, charges and disbursements of outside counsel and the allocated cost of inside counsel) incurred by SunTrust or any Lender in connection with the enforcement or protection of SunTrust's or any Lender's rights in connection with the Pre-Petition Credit Agreement.

### III.    USE OF SUNTRUST'S CASH COLLATERAL

      K.    WHEREAS, the Trustee requires the ability to use cash and the other proceeds of the Debtors' existing accounts receivable and inventory to recover, preserve, market and sell the Collateral pursuant to sales to be conducted under section 363 of the Bankruptcy Code ("Section 363 Sales"), or other methods of liquidating Collateral (e.g., collecting accounts receivable)

27957167\1 00601.0823.000/390810.000
09/06/2016

(collectively, with Section 363 Sales, the "Asset Sales").  The Debtors' cash and other proceeds of the Debtors' existing accountants receivable, inventory and other collateral, however, constitute part of the Collateral (the "Cash Collateral") and, therefore, may not be used absent compliance with section 363(c)(2) of the Bankruptcy Code.

L.     WHEREAS, SunTrust is willing, subject to the terms and conditions set forth herein, to consent to the Trustee's use of Cash Collateral and other Collateral to recover, preserve and maintain said Collateral in order to conduct Asset Sales of the Collateral.  Because such use is essential to the preservation of the value of the Estates, the Court should approve the Trustee's use of Cash Collateral under section 363(c)(2) and 363(e) of the Bankruptcy Code, subject to the terms and conditions set forth herein.

M.     WHEREAS, in exchange for the Trustee's use of Collateral (including Cash Collateral), SunTrust is entitled to receive adequate protection pursuant to sections 361, 363 and 364 of the Bankruptcy Code, for (i) any diminution in the value (the "Diminution in Value") of its interest in the Cash Collateral resulting from the Trustee's use of Cash Collateral and (ii) the subordination to the Carve-Out (as defined below).

N.     WHEREAS, SunTrust, with the consent of the Trustee, and pursuant to that certain *Stipulation Between (1) George L. Miller, Chapter 7 Trustee, (2) SunTrust Bank, as Administrative Agent, and (3) Epiq Systems, Inc. for Use of Cash Collateral* [D.I. 72], agreed and consented to the use by the Trustee and/or Epiq of $13,000 of the Cash Collateral held in one or more of the Debtors' accounts at Wells Fargo Bank solely for the purpose of preparing and completing the Debtors' schedules and statements of financial affairs, including for the payment of one or more of the Debtors' former employees to assist with such purpose.  The Trustee understands and acknowledges that the use and expenditure of such funds is a use of SunTrust's

27957167\1 00601.0823.000/390810.000
09/06/2016

Cash Collateral, and the Trustee acknowledges and agrees that SunTrust is entitled to the adequate protection contemplated and provided herein for such use of Cash Collateral.

O.    WHEREAS, the Trustee proposes to provide SunTrust with adequate protection in accordance with sections 361, 363 and 364 of the Bankruptcy Code.  To that end, the Trustee and SunTrust have negotiated, and the Trustee requests that the Court approve, as of the Petition Date, certain protections of SunTrust's interests in the Collateral from any use by the Trustee, and the diminution in value resulting from the Trustee's use of Cash Collateral.  Such adequate protection shall be in the form of post-petition replacement liens, as further described below.

P.    WHEREAS, the Trustee on July 5, 2016 requested the turnover of all cash of the Debtors in the custody and control of SunTrust and the Lenders as of the Petition Date and copies of certain bank statements and cancelled checks related thereto, which the SunTrust and the Lenders have withheld pending the negotiation of this Agreement.

**NOW, THEREFORE**, with the foregoing background deemed incorporated hereinafter, the Trustee and SunTrust, intending to be legally bound hereby, in consideration for the mutual covenants and promises contained herein, the sufficiency of which is hereby acknowledged, promise and agree, subject to Bankruptcy Court approval as follows:

1.    The Trustee stipulates and agrees that, as of the Petition Date, pursuant to the Pre-Petition Financing Documents, the Debtors are indebted to SunTrust and the Lenders in the aggregate amount of no less than the Claim Amount, plus interest, fees, costs, expenses and other amounts due or payable under the Pre-Petition Financing Documents.

2.    The Trustee further stipulates and agrees that the Pre-Petition Obligations are secured by valid, enforceable, perfected and non-avoidable first-priority liens and security interests granted by the Debtors to SunTrust upon and in the Collateral.  For the avoidance of

9

doubt, the first-priority liens, security interests and claim(s) of SunTrust regarding the Debtors, the Estates or the Collateral are and shall be deemed finally allowed for all purposes in the Bankruptcy Cases, and shall not be subject to objection, defense, counterclaim, avoidance, subordination, setoff, recharacterization, deductions, challenge, disallowance or impairment of any kind or nature by the Trustee, the Estates, or any creditor, interest holder or other party in interest. In the event of the dismissal of one or both of the Bankruptcy Cases, the findings, stipulations and agreements set forth herein regarding the amount, validity, enforceability, non-avoidability and allowance of the claim(s), liens and security interests of SunTrust and the Lenders, as the case may be, shall survive, and shall be binding on the Debtors, their assigns, successors-in-interest, creditors, interest holders and other parties in interest.

3.      The respective claims of SunTrust and any of the Lenders shall be allowed in an amount of no less than the Claim Amount, shall be deemed secured by the Collateral to the extent of the value of such Collateral and neither SunTrust nor any of the Lenders shall be required to file a proof of claim in either of the Bankruptcy Cases except for the Deficiency Claim as set forth in paragraph 9 below.

4.      As adequate protection for the Trustee's use of the Cash Collateral and any diminution in value, commencing from the Petition Date, that has resulted or results from the Trustee's use thereof, and as an inducement to SunTrust to permit the Trustee's use of the Cash Collateral as provided herein and agreed amongst the Parties, the Trustee hereby grants, assigns and pledges to SunTrust post-petition replacement security interests in and liens on (collectively, the "Replacement Liens"), subject to the Carve-Out (as defined below), all of the Collateral whether acquired before or after the Petition Date. The Replacement Liens granted to SunTrust

10

as adequate protection shall be valid, perfected and enforceable against the Collateral without further filing or recording of any document or instrument or the taking of any further actions.

5.      The Parties shall, in good faith, use reasonable commercial efforts to cooperate in an attempt to maximize the proceeds from the liquidation of the Collateral in a manner that is designed and intended to obtain the highest and best price for the Collateral.  The Trustee is willing to conduct the Asset Sales, provided he can pay for the costs of the Asset Sales (including the costs related to recovering, preserving, marketing and selling the Collateral from the proceeds of same and from Cash Collateral), and the Asset Sales will provide some benefit to the Estates.   To that end, it is expected that the Trustee and the Trustee's professionals will participate in conference calls with SunTrust and the Lenders on a weekly basis to provide updates on the Asset Sales and liquidation processes and other matters pending in the Debtors' Chapter 7 cases, and shall also provide to and share with SunTrust and any of the Lenders such documents and other information as may be reasonably requested by SunTrust or any such Lenders regarding the Asset Sales and liquidation processes and the Estates, and as may be requested by SunTrust or any such Lenders in connection with its analysis and pursuit of any litigation claims it may be entitled to bring against third parties.

6.      The Trustee will work with SunTrust and the Lenders in good faith to agree upon a sale process and bidding procedures for the Asset Sales that the Parties believe will lead to the sale of the Collateral at the best possible price.  For the avoidance of doubt, the Trustee shall meaningfully consult with SunTrust and the Lenders on any contemplated or proposed sale process, sale(s) agent (including the terms of the engagement of Focus Advisory Services LLC or any other sales agent, and the scope of the duties of Focus Advisory Services LLC or any other sales agent) or other matter concerning the administration and liquidation of the Collateral.

11

If the Parties cannot agree on the sale process and/or bidding procedures, or the Trustee's continuing use of Collateral (including Cash Collateral) pursuant to this Agreement, after good faith efforts to meet, confer and agree upon such procedures (it being understood and agreed that any (i) break-up or similar fee, (ii) expense reimbursement or cost proposed to be paid or otherwise provided to any stalking horse buyer(s), or other person (collectively, a "Stalking Horse Payment") or (iii) retention or employment of any sales agent, investment banker or similar person, shall be subject to the express written consent of SunTrust), the Trustee may proceed in the manner he deems appropriate, and SunTrust shall reserve any and all rights to object to the process proposed by the Trustee.  Moreover, in the event the Parties cannot agree to a sale process, bidding procedures or any other matters relating to an Asset Sale or Asset Sales, SunTrust expressly reserves the right to (i) terminate consent to the Trustee's and/or the Estates' use of any Collateral (including Cash Collateral) and (ii) seek relief from the automatic stay to seek any such relief as SunTrust deems warranted.  In any such event, the Trustee shall reserve the right to respond, object to the same, and assert rights pursuant to 11 U.S.C. section 506(c), subject to SunTrust's and the Lenders' respective rights to object to same.

7.      SunTrust expressly agrees that the liens and security interests of SunTrust shall be subject to a carve-out for (i) the payment of allowed statutory commissions of the Trustee attributable to the Asset Sales (the "Trustee Carve-Out") and (ii) the professional fees and disbursements incurred by the professionals retained by the Trustee pursuant to section 327 of the Bankruptcy Code related to the Asset Sales, including the fees related to recovering, preserving, marketing and selling the Collateral (any other activities of the Trustee and his professionals that are not related to the Asset Sales or recovery shall not constitute part of the Professional Carve-Out (as defined below)), to the extent allowed and awarded by the

27957167\1 00601.0823.000/390810.000
09/06/2016

Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, and the other costs and expenses solely related to the Asset Sales (collectively, with the Trustee Carve-Out, the "Professional Carve-Out").    SunTrust agrees and consents to the use by the Trustee of Cash Collateral to pay the Professional Carve-Out and the costs of Asset Sales (including costs related to recovering, preserving, marketing and selling Collateral).    Notwithstanding SunTrust's consent to use of the Cash Collateral for the Professional Carve-Out, SunTrust reserves its rights to review and object to the amounts sought as part of the Professional Carve-Out in the normal course.  The Trustee's professionals shall track their time so that the Professional Carve-Out can be determined.

8.    SunTrust and the Lenders within ten (10) days of execution of this Agreement will turn over to the Trustee all funds of the Debtors in their custody and control and provide the Trustee with copies of the bank statements and cancelled checks for the bank accounts of the Debtors maintained with SunTrust and the Lenders for the period from June 30, 2015 through the Petition Date.

9.    SunTrust further expressly agrees that the liens and security interests of SunTrust shall be subject to an additional carve-out equal to seven percent (7%) (the "Estate Carve-Out Percentage") of the cash proceeds of the Asset Sales consummated by the Trustee after deduction from the Asset Sales' gross cash proceeds of (x) the aggregate amount of the Professional Carve-Out and (y) all other costs and expenses solely related to the Asset Sales, including any Stalking Horse Payment or buyer's premium (the "Estate Carve-Out" and, together with the Professional Carve-Out, the "Carve-Out"); provided, however, to the extent that the Estate Carve-Out exceeds or would exceed $1,000,000, the Estate Carve-Out Percentage shall thereafter be reduced to three percent (3%).  The Estate Carve-Out shall be deemed unencumbered assets of the Estates and,

13

subject to Bankruptcy Court approval, shall be distributed by the Trustee in accordance with the order of priorities set forth in section 507 of the Bankruptcy Code.  For the avoidance of doubt, the Carve-Out shall be paid solely from the cash proceeds of Asset Sales and nothing herein shall require SunTrust to pay any portion of the Carve-Out or assure that the Estates have sufficient funds on hand to pay amounts attributable to the Carve-Out.

10.    The Trustee shall pay SunTrust within five (5) business days of the Trustee's receipt of proceeds at any closing of the Asset Sales (unless the Trustee is on vacation in which case the Trustee shall make payment within five (5) business days of his return, but in no event later than ten (10) business days after such receipt), an amount equal to the gross cash proceeds of the Asset Sales less the Carve-Out.  Such payments (but only to the extent thereof) shall be in full and final satisfaction of SunTrust's liens on and security interests in the Collateral being sold, and the Collateral will be transferred to the winning bidder(s) free and clear of the liens and security interests of SunTrust (the "Immediate SunTrust Payment"), provided that the Immediate SunTrust Payment from the subject Asset Sale or other Collateral collection, combined with any other contemporaneous Asset Sale or other Collateral collection, is to be calculated in an aggregate amount of, or in excess of, $50,000.  If the Immediate SunTrust Payment from an Asset Sale or otherwise is less than $50,000, then the Trustee will pay to SunTrust the Immediate SunTrust Payment related to such Asset Sale or other Collateral collection within five (5) business days after the end of the calendar month in which the Asset Sale or other Collateral collection occurred (unless the Trustee is on vacation in which case the Trustee shall make payment within five (5) business days of his return, but in no event later than ten (10) business days after such receipt).  To the extent that the obligations owing to SunTrust and the Lenders under the Pre-Petition Financing Documents exceed SunTrust's recovery from the Asset Sales

14

and other collections of the Collateral, SunTrust shall have an allowed, general unsecured claim against each of the Estates for the amount of the deficiency (the "Deficiency Claim") and shall file a proof of claim for same no later than sixty (60) days after the Trustee provides SunTrust and its counsel written notice (a copy of which notice the Trustee shall post on the Bankruptcy Court's docket) stating that all Collateral has been sold, abandoned or otherwise disposed; provided, however that SunTrust hereby agrees that it will not share in any distribution of the Estate Carve-Out with respect to the Claim Amount.

11.     For purposes of the Immediate SunTrust Payment, the Professional Carve-Out shall be equal to the Professional Carve-Out estimated, reasonably and in good faith, by the Trustee (the "Estimated Professional Carve-Out") and stated in writing to SunTrust.  To the extent that any amount of the Estimated Professional Carve-Out for the Trustee's commissions, or, fees or expenses for professionals employed under section 327 of the Bankruptcy Code is not awarded by the Bankruptcy Court pursuant to sections 330 and/or 331 of the Bankruptcy Code, such amount shall be paid to SunTrust upon entry of the Bankruptcy Court's final order disallowing such commissions and/or fees and/or expenses, or promptly following the Trustee's determination that any estimate was incorrect.  SunTrust reserves the right to object to any estimate provided by the Trustee, and the Trustee reserves its right to respond to any such objection.

12.     SunTrust shall be deemed a pre-qualified bidder with respect to any auction sale or competitive bidding permitted in the Asset Sales, without the need to qualify or pay any bidding deposit.  SunTrust shall be entitled to credit bid (a "SunTrust Credit Bid") its security interests and liens upon the Collateral, provided that, in the event of a successful SunTrust Credit Bid (in which a sale to SunTrust pursuant to such credit bid is consummated, or, a sale to a third

15

party is not consummated because of a SunTrust Credit Bid that was chosen as the winning bid but did not close (a "Credit Bid Asset Sale")), SunTrust pays cash equal to (i) the amount of the Professional Carve-Out (other than the Trustee Carve-Out) solely for services related to the applicable Credit Bid Asset Sales plus (ii) any Bankruptcy Court approved break-up fees or expense reimbursement of any stalking horse bidders related to the Credit Bid Asset Sales; provided, further, that, for the avoidance of doubt, in such case of a SunTrust Credit Bid, the Estate Carve-Out shall be $0.00, but the Trustee shall be entitled, in the case of such SunTrust Credit Bid and subject to allowance by the Bankruptcy Court, to compensation for the number of hours of work which the Trustee performed related to the Credit Bid Asset Sales at the rate of $750/hour (capped at an amount equal to 3% of the amount of the applicable SunTrust Credit Bid) (the "Alternative Hourly Compensation"), but not the Trustee Carve-Out or any other compensation; provided, further, however, if the Lenders and SunTrust do not directly or indirectly collectively retain ownership of substantially all of the assets acquired in such SunTrust Credit Bid for at least one (1) year after the closing of any such sale, such sale will not be treated as having been a successful SunTrust Credit Bid for purposes of calculating the Trustee Carve-Out or the Estate Carve-Out (in which case the Trustee shall not also be entitled to the Alternative Hourly Compensation, and in the event the Trustee has received any such Alternative Hourly Compensation, such amount(s) received by the Trustee on account of the underlying Asset Sale shall be credited against the Trustee Carve-Out).  At the request of SunTrust, the Trustee shall disclose to SunTrust an approximation of the amount of hours worked by the Trustee in connection with a proposed Asset Sale at which SunTrust may credit bid.  (For the avoidance of doubt, if any Alternative Hourly Compensation is paid to the Trustee because of a SunTrust Credit Bid that was chosen as the winning bid but did not close, such

16

Alternative Hourly Compensation shall be credited against any commission payable to Trustee, such that there will be no duplication of payments to the Trustee.)  In addition, in the event the Lenders and SunTrust do not directly or indirectly retain ownership of substantially all of the assets acquired in such a SunTrust Credit Bid for at least one (1) year, then in such event the Lenders and SunTrust shall pay to the Trustee (i) the amount of the Professional Carve-Out and (ii) the Estate Carve-Out calculated based upon the amount of the SunTrust Credit Bid, without duplication of amounts previously paid or collected.

13.    All amounts to be paid to SunTrust hereunder shall be paid to "SunTrust Bank", and the Trustee shall by virtue of approval of this Agreement by the Bankruptcy Court be authorized to make such payment to SunTrust via wire transfer.

14.    The automatic stay under section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit SunTrust to receive, collect and apply payments and proceeds in respect of the Collateral in accordance with, and to otherwise implement and comply with, the terms and provisions of this Agreement and the Pre-Petition Financing Documents.

15.    Subject to 11 U.S.C. §506(b), SunTrust and the Lenders shall be allowed interest and any reasonable fees, costs or charges provided for under the Pre-Petition Credit Agreement.

16.    Except as otherwise provided in the Pre-Petition Financing Documents, so long as any Pre-Petition Obligations remain outstanding, (i) the Trustee shall not, directly or indirectly, create, incur, assume or permit to exist any security interest, encumbrance, lien or other security arrangement of any kind, on or with respect to any of the Collateral, or take any action that would grant or create a lien or security interest in favor of any person in such assets other than to

17

SunTrust, and (ii) there shall not be entered in the Bankruptcy Cases any further order that authorizes, under any section of the Bankruptcy Code, including sections 105 and 364, the procurement of credit or the incurring of indebtedness secured by a lien that is entitled to a superpriority administrative expense claim or administrative expense status that is, in any case, equal to or superior to that of SunTrust, unless in each instance (x) SunTrust shall have given its prior written consent thereto (and no such consent shall ever be implied from any other action, inaction or acquiescence by SunTrust) or (y) such other order requires that the secured obligations of SunTrust under the Pre-Petition Financing Documents be indefeasibly paid in full in cash and discharged contemporaneously with the entry of such order.

17.     In consideration of and as a condition to this Agreement, the Trustee on behalf of the Estates (collectively, the "Releasors"), hereby absolutely releases, waives, forever discharges and acquits SunTrust, the Lenders and their respective Related Parties (collectively, the "Releasees") of, from and with respect to any and all claims, demands, causes of action, damages, choses in action, and all other claims, counterclaims, defenses, objections, setoff rights, subordination rights, recharacterization rights, deductions, challenges and other liabilities whatsoever (the "Pre-Petition Released Claims") of every kind, name, nature, and description, whether known or unknown, both at law and equity (including any "lender liability" claims) that any Releasor may now or hereafter own, hold, have or claim against each and every of the Releasees arising at any time prior to the entry of an order approving this Agreement. Each Releasor hereby absolutely, unconditionally and irrevocably covenants and agrees with each Releasee that it will not sue any Releasee on the basis of any Pre-Petition Released Claims released and discharged by the Releasor pursuant to this Agreement. Further, the Trustee will not use any Collateral (including Cash Collateral) to sue, challenge, investigate SunTrust or the

18

Lenders for claims, demands, causes of action, damages, choses in action, and all other claims, counterclaims, defenses, objections or deductions or to exercise setoff rights, subordination rights, recharacterization rights, including the Pre-Petition Released Claims.  Moreover, and for the avoidance of doubt, the Trustee and the Releasors waive any claim, right or remedy against SunTrust, the Lenders or the Collateral under or in connection with sections 506(c) (except as provided in paragraph 6 hereof) and 552 of the Bankruptcy Code.

18.     To the extent of any inconsistency between the terms of this Agreement and the Pre-Petition Financing Documents, the terms and provisions of this Agreement shall govern.

19.     Any notices in connection herewith may be transmitted by personal delivery, overnight courier, or, email:

|  |  |
|---|---|
| If to the Trustee: | George L. Miller, Trustee |
|  | 1628 John F. Kennedy Blvd. |
|  | Suite 950 |
|  | Philadelphia, PA 19103-2110 |
|  | Tel:  215-561-0950 Ext. 14 |
|  | Fax: 215-561-0330 |
|  | Email: gmiller@mctllp.com |
|  |  |
| with a copy to | John T. Carroll, III |
| Trustee's Counsel: | Cozen O'Connor |
|  | 1201 North Market Street |
|  | Suite 1001 |
|  | Wilmington, DE  19801 |
|  | Tel: (302) 295-2028 |
|  | Fax: (302) 295-2013 |
|  | Email: jcarroll@cozen.com |

27957167\1 00601.0823.000/390810.000
09/06/2016

| | |
|---|---|
| If to SunTrust: | Juan DeJesus-Caballero |
| | SunTrust Bank |
| | 200 South Orange Avenue, 5th Floor |
| | Orlando, FL 32801 |
| | Tel: (407) 237-4507 |
| | Fax: (407) 835-1276 |
| | Email: juan.dejesus-caballero@suntrust.com |

and

| | |
|---|---|
| with a copy to | David P. Simonds |
| SunTrust's counsel: | Akin Gump Strauss Hauer & Feld LLP |
| | 1999 Avenue of the Stars, Suite 600 |
| | Los Angeles, CA  90067 |
| | Tel: (310) 229-1000 |
| | Fax: (310) 229-1001 |
| | Email:  dsimonds@akingump.com |

and

Ricardo Palacio
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington DE 19899
Tel: (302) 654-1888 ext. 240
Fax: (302) 654-2067
Email:  rpalacio@ashby-geddes.com

Notices shall be effective (a) immediately upon personal delivery, (b) one (1) day after deposit with an overnight courier, or (c) upon receipt of email (so long as notice by first class mail is deposited with the United States Postal Service or overnight courier on the same day as the email is sent).

20.     This Agreement may be executed in any number of separate counterparts, any of which may be transmitted by facsimile or email, and each of which when so executed and delivered shall be an original, but all of which shall together constitute, one and the same agreement.

27957167\1 00601.0823.000/390810.000
09/06/2016

21.     All headings used in the Agreement are for reference purposes only and do not comprise part of the terms hereof.

22.     No failure of SunTrust, the Lenders or the Trustee to enforce any right granted under this Agreement, any of the Pre-Petition Financing Documents or otherwise shall represent a waiver of such right.

23.     Except as expressly set forth herein, nothing in this Agreement constitutes a modification, alteration or amendment of the Debtors' or the Estates' obligations to SunTrust and the Lenders under the Pre-Petition Financing Documents.  In addition, neither the Trustee, SunTrust nor any of the Lenders shall be deemed to have waived any rights against any person except to the extent expressly provided herein, and all such rights are reserved.

24.     The Parties agree to execute any and all documents that are reasonably necessary to implement the terms and provisions of this Agreement.

25.     No modification or amendment of any of the provisions hereof shall be effective unless set forth in writing and signed by the Parties and approved by the Bankruptcy Court.

26.     This Agreement between the Parties is subject in all respects to entry, no later than October 15, 2016, of an order by the Bankruptcy Court, in all respects acceptable to each of the Parties, which Trustee will promptly seek after the execution hereof.

27.     The Bankruptcy Court shall have jurisdiction over all matters arising from or relating to this Agreement and order approving same.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

27957167\1 00601.0823.000/390810.000
09/06/2016

28.     **IN WITNESS WHEREOF**, the parties have executed this Agreement, intending
to be legally bound, as of the date first above written.

Dated:   Wilmington, Delaware
         September 1, 2016

         COZEN O'CONNOR

By:  _____
         John T. Carroll, III (DE No. 4060)
         Suite 1001
         1201 North Market Street
         Wilmington, Delaware 19801
         Tel: (302) 295-2028
         Fax: (302) 295-2013
         Email:jcarroll@cozen.com

         *Counsel to the Trustee*


Dated:   Wilmington, Delaware
         September 1, 2016

         ASHBY & GEDDES

By:  _____
         Ricardo Palacio (DE No. 3765)
         500 Delaware Avenue
         P.O. Box 1150
         Wilmington Delaware 19899
         Tel: (302) 654-1888 ext. 240
         Fax: (302) 654-2067
         Email:  rpalacio@ashby-geddes.com

         *Counsel to SunTrust Bank*

22