

35 W. Wacker Drive
Chicago, IL 60601
T +1 312 558 5600
F +1 312 558 5700

**DANIEL J. MCGUIRE**
Partner
(312) 558-6154
dmcguire@winston.com

March 21, 2017

Honorable Kevin Gross
U.S. Bankruptcy Court for the District of Delaware
824 North Market Street
Sixth Floor, Courtroom #3
Wilmington, Delaware 19801

Re:     *In re*: Our Alchemy, LLC, et al, Case No. 16-11596 (KG)

Dear Judge Gross:

      This firm represents Nu Image, Inc. in connection with the above-referenced bankruptcy case. Currently pending before the court is Nu Image's motion for relief from the automatic stay [Docket No. 364]. This letter is in response to the Court's invitation on March 15, 2017 to provide a letter by today responding to the cases cited on the record by counsel for the Chapter 7 Trustee at the hearing on the stay relief motion held on March 15. These cases fall into two categories: (i) cases involving whether rejection of a contract results in termination or rescission of the contract; and (ii) cases regarding whether under California law a non-termination/exclusive remedy provision will be enforced.

      The Chapter 7 Trustee cited *Lavigne v. Hirsch*, 114 F.3d 379, 397 (2nd Cir. 1997) and two other cases outside of the Third Circuit for the proposition that rejection of a contract does not result in the automatic termination or rescission of the rejected contract. Nu Image acknowledges that certain courts from outside this jurisdiction, including those cited by the Chapter 7 Trustee, have held that rejection does not always equal termination of executory contracts. At the same time, many courts have also held that in certain instances rejection equates with termination. *See Anderson v. Elm Inn, Inc. (In re Elm Inn, Inc.)*, 942 F.2d 630, 633-34 (9th Cir. 1991) (citing cases) (holding in the non-residential lease context, such leases are deemed terminated upon the debtor-lessee's rejection, necessitating surrender of the property under 11 U.S.C. §365(d)(4)); *In re 6177 Realty Assocs., Inc.*, 142 B.R. 1017, 1019 (Bankr. S.D. Fla. 1992) (holding that the requirement to surrender the leased property under 11 U.S.C. §365(d)(4) supports the determination that rejection is deemed termination of an unexpired lease).

      Similar to the unexpired lease context, upon rejection of executory contracts like the Nu Image agreements, the property (*i.e.*, the estate's interest—distribution rights—in the films) is "no longer property of the [bankrupt] estate." *See In re Damianopoulos*, 93 B.R. 3, 6 (Bankr. N.D.N.Y. 1988) (holding that the debtor had no possessory interest in the subject lease, whether it had been terminated prepetition or rejected post-petition).



Nu Image submits that this issue is not particularly germane to its relief from stay motion. Nu Image is not asking this Court to determine that the contracts are terminated. Nu Image is merely asking that the automatic stay be lifted to so that all parties may assert and pursue whatever rights they believe they have under the Nu Image agreements. There is no material prejudice to the estate in allowing the parties' rights to be determined.

The second issue involves the non termination provisions contained in some, but not all, of the Nu Image agreements. The Chapter 7 Trustee cites *Fosson v. Palace (Waterland)*, 78 F.3d 1448 (9th Cir. 1995) and *Price Development v. Redevelopment Agency of City of Chino*, 852 F.2d 1123,1127 (9th Cir. 1988)—for the proposition that under California law a non-termination/exclusive remedy provision will be enforced. Both of these cases are distinguishable factually because of the contracting parties' ability to perform, which is not present here with a defunct distributor licensee.

First, in *Fosson v. Palace (Waterland)*, a composer licensed his composition through a nonexclusive synch license for use in a film. 78 F.3d at 1455. The license agreement contained a remedies provision that stated that in the event of breach, the licensor plaintiff would be limited to remedies at law for damages and would not have the right to restrain or enjoin production, distribution, or other exploitation of the film. *Id.* The composition was used in the film but timely payment of the license fee was not received by the plaintiff, who subsequently filed suit for copyright infringement and recession of the contract. *Id.* at 1451-52. The plaintiff admitted that he had understood the provision in which he waived his right to equitable or injunctive relief. The court found that the license was valid and granted summary judgment in favor of the defendants, holding that the plaintiff composer was limited to monetary damages under the contract, and could not sue for copyright infringement or rescission. *Id.* at 1455. There, the court also found significant that the "facts show" that the plaintiff had "never actually attempted to rescind the agreement." *Id.* at 1456.

In short, *Fosson* deals with a nonexclusive synch license for using a song in one film where the use was already completed. Here we are dealing with a series of exclusive distribution agreements that have yet to be fully performed, and which for all practical purposes, future performance is impossible.

Second, in *Price Development v. Redevelopment Agency of City of Chino*—a non-entertainment case—the parties entered into a redevelopment contract that provided for an exclusive remedy in case of breach: "Developer's sole remedy for any Agency breach shall be appropriate equitable relief to compel Agency to impose the assessment or development fee on the subsequent developer(s)." 852 F.2d at 1127. The court held that the plaintiff developer's claims for an equitable lien and constructive trust were not claims to compel the agency to impose an assessment or development fee, and thus were not authorized by the terms of the contract. *Id.* The court also noted that this was not a situation in which an equitable lien or constructive trust was necessary to prevent unjust enrichment because the development fee paid by Price was not used to improve the property, and did not reduce the purchase price. *Id.*

Unlike here, *Price Development* is a real estate dispute and has nothing to do with a defunct party that cannot perform its obligations under an entertainment contract. The distinction between enforcement of theses types of provisions in "normal" situation and those involving a non operating bankruptcy entity or defunct party is important. In the abstract these provisions may be enforceable generally, but there is law supporting the opposite result in the case of a party who cannot perform.



Termination of a contract is permitted when performance by a party is impossible. In the instance where the circumstances make performance under an agreement (or agreements) impossible or impracticable, the doctrine of impossibility excuses such performance. *Hensler v. City of Los Angeles*, 124 Cal.App.2d 71, 83 (2d 1954) (citing *Potts Drug Co. v. Benedict*, 156 Cal. 322, 333 (1909) and *Tuohy v. Moore*, 133 Cal. 516, 523 (1901)); *see also Garcia v. Baumgarten*, Case No. 03-14-267, 2015 WL 4603866, at *5 (App. Ct. Tex. July 30, 2015). "In order for a supervening event to discharge a duty [under the doctrine of impossibility], the non-occurrence of that event must have been a 'basic assumption' on which both parties made the contract . . . ." Restat. 2d Contracts §261 (Oct. 2016).

A party may terminate a contract, excusing their own performance under that contract, when the other party's breach is "material." *See* Restat. 2d Contracts §237, comment b; *see also Allied Health Ass'n, Inc. v. Arthrocare Corp.*, Case No. 05-4276, 2009 WL 1424509, at *8 (N.D.C.A. May 20, 2009) ("The general rule is that if the breach is a material breach, it may give grounds for the non-breaching party to cancel the contract. . . .") (quoting *Comedy Club, Inc. v. Improv West Assocs.*, 514 F.3d 833, 847 n. 12 (9th Cir. 2007), *vacated and remanded on other grounds*, ––– U.S. –––, 129 S.Ct. 45, 172 L.Ed.2d 6 (2008)).

The Uniform Commercial Code takes the notion of termination due to impossibility of performance a step further, expressly providing that exclusive remedy provisions will not be enforced where they frustrate the essential purpose of the contract. *See, e.g.*, Cal. Com. Code § 2719(b)(2) (authorizing contractual modification where circumstances cause an exclusive or limited remedy to fail its "essential purpose"). In *RRX Industries, Inc. v. Lab-Con, Inc.*, 772 F.2d 543 (9th Cir. 1985), the court found the limited remedies provided in an agreement "failed" in their "essential purpose" where the defendants were "unwilling or unable" to provide the limited remedies called for in the agreement. *Id.* at 547. The case is similar here, with a bankrupt licensee who will never be in a position to distribute, and the sole remedy is a futile monetary damages provision.

As is the case here where a defunct party cannot perform, the circumstances render the damages limitation clauses in the Nu Image Agreements oppressive and invalid. This was not the situation in either *Fosson* or *Price Development*, and as a consequence, neither case is applicable here. The exclusive remedy provisions in some of the Nu Image agreements are failing their essential purpose. The obvious reason for these provisions is to protect Our Alchemy's right to distribute the films licensed under the Nu Image agreements. That distribution is never going to happen. Enforcing the exclusive remedy provisions would do *nothing* to help Our Alchemy's estate; it would serve only to further frustrate the purpose of the Nu Image agreements, leaving the Nu Image owned films in a state of limbo.



March 21, 2017
Page 4

    Lastly, it should again be noted that the enforceability of these remedy provisions is not relevant to the matter before the Court. Nu Image is seeking only to proceed with a determination of the parties rights under the Nu Image agreements; we are *not* asking the Court to make any determination as to the scope of those rights.

Respectfully,

*[signature]*

Daniel J. McGuire


cc: John T. Carroll, III