**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>OUR ALCHEMY, LLC,<br><br>　　　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 16-11596 (KG) |
| NU IMAGE, INC.,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the Estate of Our Alchemy, LLC,<br><br>　　　　　　　　　　Defendant. | Adv. No. 17-50477 (KG)<br><br>**Hearing Date:  December 21, 2017 at 10:00 a.m.**<br><br>**Objection Deadline: November 24, 2017 at 4:00 p.m.** |

**MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER APPROVING SETTLEMENT AGREEMENT WITH NU IMAGE, INC. PURSUANT TO FED. R. BANKR. P. 9019**

George L. Miller, the chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Bankruptcy Estates") of Our Alchemy, LLC and Anderson Digital, LLC (together, the "Debtors"), hereby files this motion (the "Motion") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), seeking an order approving a settlement agreement by and between the Trustee for the Bankruptcy Estates of the Debtors and Nu Image, Inc. ("Nu Image" and, together with the Trustee, the "Parties"), a copy of which is attached hereto, incorporated herein and marked as Exhibit "1" (the "Settlement Agreement"), and authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the provisions of the Settlement Agreement.  In support of the Motion, the Trustee respectfully avers the following:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

**BACKGROUND**

4. On July 1, 2016 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court.

5. On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the duly authorized Chapter 7 Trustee to the Bankruptcy Estates of the Debtors.

6. Prior to the Petition Date, the Debtors operated as a film and media distributor. The Debtors, among other things, acquired and distributed feature films, television series, and other programming via multiple platforms, including online, electronic, and hard copy distribution channels.

7. As part of the Debtors' business, Debtor Our Alchemy, LLC, in its own capacity and as successor in interest to DEJ Entertainment, Inc., First Look Studios, Inc., Millennium Entertainment LLC and any other subsidiary or affiliated entities of any of the aforementioned entities ("Our Alchemy") was granted certain rights in and to 163 film titles and/or pictures listed on Exhibit "A" to the Settlement Agreement (collectively, the "Nu Image Titles") pursuant to

agreements between Our Alchemy and Nu Image, either directly or as successors-in-interest and/or as agent of a third-party (the "Agreements").

**(A)     The Nu Image Complaint and Adversary Proceeding**

8.      After the Petition Date, on May 5, 2017, Nu Image initiated the above-captioned adversary proceeding (the "Adversary Proceeding") by the filing with the Bankruptcy Court a Complaint [Adv. D.I. No. 1] (the "Complaint") against the Trustee, in his capacity as the Chapter 7 trustee for the estate of Our Alchemy, seeking, among other things, declaratory judgments concerning Nu Image's rights in and to the Nu Image Titles which are subject to the Agreements.[1]

9.      Specifically, and among other things, Nu Image asserted that, because the Agreements were rejected by operation of law, which is deemed to be a breach of the agreements, such first material breach entitles Nu Image to excusal from performance related to the Debtor's distribution rights in the Nu Image Titles. See Complaint at ¶¶57-63. Further, Nu Image sought a declaratory judgment that the Agreements were terminated under the doctrine of impossibility, as performance by the Bankruptcy Estates was impossible. See id. at ¶¶64-72. Thus, Nu Image asserted that it could exploit the Nu Image Titles without regard to any rights of Our Alchemy under the terms of the Agreements, which Nu Image claimed it was excused from continued performance or were terminated. See id. at ¶¶57-72.

10.     By the Complaint, Nu Image also sought the allowance of its proof of claim number 172 filed against the bankruptcy estate of Our Alchemy in the amount of not less than $2,132,208.79 for amounts asserted as owed by Our Alchemy to Nu Image pursuant to certain of

---

[1] Nu Image's First Claim for Relief asserted in the Complaint against the Trustee, solely in his official capacity, for alleged breach of his fiduciary duty, see Complaint at ¶¶53-56, was dismissed by this Bankruptcy Court pursuant to the Bankruptcy Court's Memorandum Order [Adv. D.I. No. 25] and related Order [Adv. D.I. No. 26] entered on July 17, 2017.

the Agreements (the "Asserted Nu Image Claim"), in addition to, other potential general unsecured and administrative expense claims against the bankruptcy estate of Our Alchemy. Further, and again among other claims, Nu Image sought an accounting of any funds received by the Trustee or Bankruptcy Estates relating to the Nu Image Titles. See id. at ¶¶84-86.

11. In turn, the Trustee, through his counsel, among other things, denied that the Bankruptcy Estates' rights in the Nu Image Titles and/or the Agreements were terminated and/or terminable by Nu Image, and asserted that the Bankruptcy Estates continued to have enforceable rights in the Nu Image Titles pursuant to the terms of the Agreements. The Trustee also asserted various defenses to the allowance of the Asserted Nu Image Claim through the Complaint, including but not limited to rights of setoff and/or recoupment of the Bankruptcy Estates for amounts owed by Nu Image to the Debtors pursuant to the Agreements which could reduce to zero any amounts owed by the Debtors to Nu Image.

**(B)    The Netflix Stipulation and Settlement Discussions with Amazon Related to Nu Image Titles**

12. As stated above, and in connection with certain Nu Image Titles, among others, the Debtors distributed films and television series titles that it controlled via online and electronic distribution channels. As part of this business, Netflix, Inc. ("Netflix") licensed from the Debtors subscription video on demand rights to various film and television titles which authorized Netflix to exhibit and distribute certain films and television titles to the public via the Netflix service.

13. On July 26, 2017, the Trustee filed a Motion of Chapter 7 Trustee Pursuant to Fed. R. Bankr. P. 9019 for an Order Approving Stipulation with Netflix, Inc. Regarding License Agreements for Internet Transmission and Resolving Netflix Motion [D.I. No. 467] (the "Motion to Approve Netflix Stipulation"). By the Motion to Approve Netflix Stipulation, among other

things, the Trustee sought the approval of a stipulation with Netflix (the "<u>Netflix Stipulation</u>"), which, among other things, provided for the extension of certain Netflix film and television title sublicenses and required certain payments to be made by Netflix to the Bankruptcy Estates.

14. On September 15, 2017, the Bankruptcy Court entered an Order Approving the Motion to Approve Netflix Stipulation [D.I. No. 494] (the "<u>Order Approving Netflix Stipulation</u>"). Some of the Nu Image Titles are subject to the Netflix Stipulation, including but not limited to Nu Image Titles identified as "Stonehearst Asylum," "Automata," "Good People" and "The Humbling."

15. In addition to the Netflix Stipulation, the Trustee is also currently in negotiations with Amazon Digital Services LLC f/k/a Amazon Digital Services, Inc. (including any affiliates, subsidiaries and/or parent companies, "<u>Amazon</u>") concerning amounts due and owing by Amazon to the Bankruptcy Estates for, among other things, films, motion pictures and/or TV program titles that have been placed on the Amazon platform, and the Trustee and Amazon are working to reconcile and reach an agreement regarding amounts due and owing from Amazon to the Bankruptcy Estates (including the documentation of any agreement reached with Amazon, the "<u>Amazon Settlement</u>").

16. Nu Image has asserted rights to payments received by the Bankruptcy Estates from Amazon pursuant to an Amazon Settlement on account of the Nu Image Titles.

**(C)     <u>Settlement Discussions between the Parties</u>**

17. Since no later than January 2017, the Trustee began contacting Nu Image regarding potential resolution of the Parties' disputes concerning the Nu Image Titles and the Agreements, and the Parties have continued extensive discussions regarding a potential resolution since that time.

18. On August 30, 2017, in furtherance of the Parties ongoing efforts to reach a resolution, the Parties met in person, along with counsel for the Debtors' pre-petition secured lenders, and continued their settlement discussions. Unfortunately, at that time, the Parties were unable to reach an agreement.

19. Upon further settlement negotiations, on or about September 14, 2017, the Trustee and Nu Image reached a settlement, in principal, to consensually resolve their disputes relating to the Adversary Proceeding, the Complaint, the Nu Image Titles, the Agreements, the Asserted Nu Image Claim, the Netflix Stipulation and the Amazon Settlement, subject to documenting the settlement in principal in the form of a mutually agreeable settlement agreement and approval of the settlement agreement by the Bankruptcy Court. The principal terms of the Parties' settlement were placed on the record at the status conference held by the Bankruptcy Court for the Adversary Proceeding on September 15, 2017.

20. The Trustee and Nu Image since the aforesaid hearing on September 15, 2017 have been working to memorialize the settlement in the form of a written agreement and on or about November 1, 2017 agreed that the Settlement Agreement accurately documents their settlement in principal and is mutually acceptable and has been executed by both parties.

## RELIEF REQUESTED

21. By this Motion, the Trustee respectfully seeks an order of this Bankruptcy Court approving the attached Settlement Agreement with Nu Image (Exhibit "1"), authorizing the Trustee and Nu Image to take any and all actions as may be necessary and appropriate to implement the terms and provisions of the Settlement Agreement and providing that the Bankruptcy Court shall retain jurisdiction to enforce the Settlement Agreement.

**THE SETTLEMENT AGREEMENT**

22. The complete terms and conditions of the Trustee's settlement with Nu Image are more fully set forth in the Settlement Agreement (Exhibit "1") and should be referred to in their entirety. Salient provisions of the Settlement Agreement include, *inter alia*, the following:

a. The Nu Image Cash Payment: Nu Image agrees to pay the Trustee the sum of $625,000 (the "Nu Image Cash Payment") not later than seven (7) business days after the entry of the Approval Order (as defined in Paragraph 12(l) of the Settlement Agreement) (the "Cash Payment Date").

b. The Netflix Stipulation: Nu Image consents to the Netflix Stipulation and the Order Approving Netflix Stipulation, subject to terms set forth in the Settlement Agreement. With respect to the Netflix Stipulation, the Parties agree as follows:

   i. Direction to Pay Title Payments: The Parties agree and shall direct Netflix to pay the license fee proceeds for the Nu Image Titles that are Direction to Pay Titles (as defined in the Netflix Stipulation), which are identified on Schedule 5(a) of the Netflix Stipulation as "Stonehearst Asylum," "Automata," and "Good People" (the "Direction to Pay Title Payments") to Comerica Bank ("Comerica") not later than seven (7) business days after the payment of the Nu Image Cash Payment to the Trustee.

   ii. The Humbling Fees: The Bankruptcy Estates shall be entitled to retain any and all payments received from Netflix by the Bankruptcy Estates pursuant to the Netflix Stipulation on account of the Nu Image Title "The Humbling" (the "Humbling Revenue").

c. The Amazon Settlement: Nu Image shall not object to the approval of an Amazon Settlement and the Bankruptcy Estates shall be entitled to retain any and all payments received from Amazon by the Bankruptcy Estates on account of the Nu Image Titles (the "Amazon Fees"); provided, however, that the Amazon Settlement may not provide for an extension of any license of Nu Image Titles beyond the Amazon Sublicense Termination Date (as defined below). Any proceeds generated for the benefit of the Bankruptcy Estates from the exploitation of Nu Image Titles after the Revenue Cutoff Date (as defined below) from Amazon which are received by the Trustee, if any, shall be paid over by the Trustee to Nu Image with a remittance advice identifying the source of payment within seven (7) business days of the Trustee identifying the proceeds as being attributable to Nu Image Titles as set forth in the periodic certifications described in Paragraph 8 of the Settlement Agreement.

d. Other Revenues from Nu Image Titles: Nu Image waives any rights and/or interests in any funds, payments, fees and/or other revenues received by the Bankruptcy

    Estates and/or any claims and/or rights to payment on account of the Nu Image Titles which were received, are due and owing and/or were earned during the period prior to and including September 1, 2017 (the "Revenue Cutoff Date"); provided, however, that Nu Image does not waive its rights and/or interests in the Direction to Pay Title Payments to be paid to Comerica pursuant to Paragraph 3(a) of the Settlement Agreement and provided further, that the Bankruptcy Estates shall retain the Humbling Revenue and the Amazon Fees pursuant to Paragraphs 3(b) and 4 of the Settlement Agreement.

e. **Termination of Bankruptcy Estates' Interest in Nu Image Titles; Reversion of All Interests**: Except to the extent set forth in the Settlement Agreement regarding the Order Approving the Netflix Stipulation (which provides for a narrow window of continued use of certain Nu Image Titles by the Trustee), the Agreements are hereby terminated effective upon entry of the Approval Order and the payment of the Nu Image Cash Payment being made to the Trustee. The sub-license agreement(s) between Amazon and the Bankruptcy Estates relating to Nu Image Titles are hereby terminated effective upon the Amazon Sublicense Termination Date (as defined below). Regarding the Order Approving the Netflix Stipulation, upon the expiration of the period described in paragraph 18(e)(i) of the Motion to Approve the Netflix Stipulation and paragraph 7 of the Netflix Stipulation, any and all agreements between Netflix and the Bankruptcy Estates relating to Nu Image Titles are thereby terminated and all such interests in Nu Image Titles shall immediately and automatically revert to Nu Image. The aforesaid termination of the Bankruptcy Estates' interest in the Nu Image Titles under the Agreements shall also be memorialized by and through the execution and delivery of the Copyright Assignment, attached to the Settlement Agreement as Exhibit "B." Upon entry of the Approval Order and payment of the Nu Image Cash Payment being made to the Trustee, the Trustee shall (i) give access to any and all documentation held by the Bankruptcy Estate relating to the Nu Image Titles and (ii) authorize delivery of possession to Nu Image of any and all materials and other documents (including, without limitation, any digital files or masters) relating to the Nu Image Titles in the Trustee or Bankruptcy Estates' custody, possession, or control. With regard to the foregoing, the Trustee shall execute and deliver to Nu Image the Laboratory Access Letter, attached to the Settlement Agreement as Exhibit "C," within seven (7) business days of entry of the Approval Order and payment of the Nu Image Cash Payment being made to the Trustee and the Trustee shall have no further obligations with respect to obtaining access to materials for Nu Image Titles held by laboratories or third parties. The Trustee is hereby authorized to enter into and/or execute any further documentation necessary to give effect to the terms of the Settlement, including, without limitation, Paragraph 6 of the Settlement Agreement.

f. **Notices to Contract Counterparties**: Within seven (7) business days after payment of the Nu Image Cash Payment to the Trustee, the Trustee shall send notice to all contract counterparties known to the Trustee to have sub-license agreements with Alchemy for the exploitation of the Nu Image Titles, other than Netflix and Amazon, that such sub-license agreements for the exploitation of Nu Image Titles are terminated effective the last day of the month in which the Approval Order is entered

(the "Sublicense Termination Date"). No later than the next business day after entry of the Approval Order and the payment to the Trustee of the Nu Image Cash Payment, the Trustee shall send notice to Amazon that such sub-license agreement or agreements for the exploitation of Nu Image Titles are terminated effective upon the date of the notice (the "Amazon Sublicense Termination Date"). For those sub-license agreements lacking a provision for termination upon notice, within seven (7) business days after Nu Image payment of the Nu Image Cash Payment to the Trustee, the Trustee will notify and instruct such counterparties to direct to Nu Image any funds, payments, fees and/or other revenue due and owing and/or earned on account of the Nu Image Titles for any periods after the Revenue Cutoff Date. The Trustee shall provide to Nu Image a list of any and all agreements entered by the Debtors with respect to the license, assignment, distribution, exploitation or other treatment of Nu Image Titles known to the Trustee as of the date upon with the notices and/or instructions are provided pursuant to the Settlement Agreement. For any and all funds, payments, fees, and/or other revenue earned after the Sublicense Termination Date on account of the Nu Image Titles received by the Bankruptcy Estates, other than the Humbling or the Amazon Fees (the Nu Image Amounts"), the Trustee shall pay any and all such Nu Image Amounts to Nu Image with a remittance advice identifying the source of payment within seven (7) business days of the Trustee identifying such payments, funds, fees and/or other revenue as being attributable to Nu Image Titles as set forth in the periodic certifications described in Paragraph 8 of the Settlement Agreement.

g. Accountant's Certification of Receipts. Within the initial ten (10) business days of the calendar months of November 2017, December 2017, January 2018, February 2018, March 2018 and April 2018, the Trustee's accountants will provide a certification to Nu Image setting forth a listing of any revenue payments for revenue earned after the Revenue Cutoff Date received by the Trustee during the prior calendar month which has been identified as being on account of Nu Image Titles.

h. Reduction Amounts. Any funds, payments, fees, and/or other revenue earned for the period between the Revenue Cutoff Date to the Sublicense Termination Date on account of the Nu Image Titles received by the Bankruptcy Estates shall serve to reduce the amount of the Nu Image Cash Payment made by Nu Image to the Trustee (the "Reduction Amounts"), except that the Reduction Amounts shall not include any amounts to the extent assigned, paid and/or otherwise received by Nu Image and/or the Direction to Pay Title Payments and/or any of the Humbling Revenue and/or the Amazon Fees which the Bankruptcy Estates shall retain pursuant to Paragraphs 3(b) and 4 of the Settlement Agreement. Within five (5) business days of the entry of the Approval Order, the Trustee's accountants shall provide a certification to Nu Image identifying the Reduction Amounts received by the Trustee's through the date of the certification, which Reduction Amounts may be deducted from the Cash Payment to be made by Nu Image.

i. The Nu Image Release: Upon payment of the Nu Image Cash Payment to the Trustee and entry of the Approval Order, Nu Image releases the Trustee and the Bankruptcy Estates of the Debtors from any and all rights, obligations, claims, causes of action

and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, including but not limited to any such claims, causes of action or demands related to the Adversary Proceeding, the Complaint, the Nu Image Titles, the Agreements, the Asserted Nu Image Claim, the Netflix Stipulation and the Amazon Settlement; <u>provided</u>, <u>however</u>, that the obligations arising out of the Settlement Agreement are not released.  Upon entry of the Approval Order, (a) the Adversary Proceeding without need for further Order by the Bankruptcy Court shall be deemed dismissed with prejudice and (b) the Asserted Nu Image Claim without need for further Order by the Bankruptcy Court shall be deemed withdrawn with prejudice.

j.  <u>The Trustee Release</u>: Upon payment of the Nu Image Cash Payment to the Trustee and entry of the Approval Order, the Trustee and the Bankruptcy Estates of the Debtors release Nu Image of any and all rights, obligations, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, including but not limited to any such claims, causes of action or demands related to the Adversary Proceeding, the Complaint, the Nu Image Titles, the Agreements, the Asserted Nu Image Claim, the Netflix Stipulation and the Amazon Settlement; <u>provided</u>, <u>however</u>, that the obligations arising out of the Settlement Agreement are not released.

## BASIS FOR RELIEF REQUESTED

23.  This Bankruptcy Court has the authority to grant the relief requested in this Motion pursuant to Bankruptcy Code Section 105 and Rule 9019(a) of the Bankruptcy Rules. Bankruptcy Code Section 105(a) provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  Rule 9019 of the Bankruptcy Rules grants the Bankruptcy Court authority to approve settlements of claims and controversies after notice and a hearing.[2]  Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'"  <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 393 (3d Cir. 1996) (<u>quoting</u> 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, this District has

---

[2] Rule 9019(a) of the Bankruptcy Rules provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)

24. Before approving a settlement under Rule 9019(a) of the Bankruptcy Rules, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting Louise's, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. Martin, 91 F.3d at 393. In striking this balance, the court should consider the following factors

    a.    The probability of success in the litigation;

    b.    The complexity, expense and likely duration of the litigation;

    c.    The possibilities of collecting on any judgment which might be obtained;

    d.    All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and

    e.    Whether the proposed compromise is fair and equitable to the debtors, their creditors, and other parties in interest.

Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-425 (1968). See also Martin, 91 F.3d at 393. Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 425. The TMT rule does not require the Bankruptcy Court to hold a full evidentiary hearing before a compromise can be approved, but rather the Bankruptcy Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" Collier on Bankruptcy at ¶ 9019.2, 9019-4, quoting In re Drexel Lambert Grp., Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991). See

Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983).

25. The Settlement Agreement and the proposed settlement and compromise embodied therein meets all of the above criteria. If there were no Settlement Agreement, the Bankruptcy Estates would face complex, time-consuming and expensive litigation, including but not limited to, continuing to litigate the Adversary Proceeding and the Parties' respective rights in and to the Nu Image Titles and the Agreements, in addition to, potential objections by Nu Image to an Amazon Settlement and/or issues relating to payments received by the Bankruptcy Estates from Amazon and/or Netflix on account of the Nu Image Titles. Such litigation involves inherent risk given the novel and complex nature of the underlying disputed issues and there is uncertainty as to whether the Trustee would prevail in obtaining a judgment that the Bankruptcy Estates continue to hold rights in and to the Nu Image Titles, the Agreements and/or payments received by the Bankruptcy Estates on account of the Nu Image Titles.

26. On the other hand, by the Settlement Agreement, the Trustee is able to obtain the Nu Image Cash Payment in the amount of $625,000 from Nu Image, is able to retain the full amount of the Humbling Revenue from Netflix, in addition to, retaining any Amazon Fees paid to the Bankruptcy Estates from Amazon on account of the Nu Image Titles and/or any other revenue on account of the Nu Image Titles which were received, are doe and owning and/or were earned during the period prior to the Revenue Cutoff Date (September 1, 2017) while avoiding the expenditure of the Bankruptcy Estates' resources continuing to litigate with Nu Image.

27. Moreover, by the Settlement Agreement, the Trustee is able to reduce the claims against the Bankruptcy Estates by the Asserted Nu Image Claim in the amount of $2,132,208.79 and any other potential claims that Nu Image may have asserted against the Bankruptcy Estates.

Accordingly, in making the decision to enter into the Settlement Agreement, the Trustee has considered, among other factors: (i) the need and benefit of resolving litigation in an expeditious manner, such as in the present matter in which the Nu Image Cash Payment will be paid to the Trustee subject to the Bankruptcy Court's approval of this Motion, and (ii) the fact that the Nu Image Cash Payment, in addition to, the Humbling Revenue and the Amazon Fees provided for in the Settlement Agreement represent a substantial recovery for the Bankruptcy Estates.

28.  Therefore, the Trustee based upon the exercise of his business judgment respectfully submits that all of the foregoing factors reflect that the Settlement Agreement is a fair and equitable settlement which meets or exceeds the required range of reasonableness and should be approved by this Bankruptcy Court as being in the best interests of the Bankruptcy Estates and the Debtors' creditors.

**NOTICE**

29.  The Trustee shall promptly serve a copy of this Motion on: (a) counsel to the Debtors, (b) the United States Trustee, (c) counsel for Nu Image, (d) the Debtors' twenty largest unsecured creditors as appearing on the Debtors' filed listing of creditors, and (e) all parties in interest having requested notice to date pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). In light of the nature of the relief requested herein, the Trustee submits that no other or further notice need be given.

[continued on the next page]

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order in the form attached hereto approving the Settlement Agreement (Exhibit "1"), authorizing the Trustee and Nu Image to take any and all actions necessary or appropriate to implement the terms and provisions of the Settlement Agreement, approving limited notice upon the Notice Parties as provided herein and providing that the Bankruptcy Court retains jurisdiction to enforce the Settlement Agreement.

Date:  November 3, 2017
       Wilmington, DE

COZEN O'CONNOR

By: */s/ John T. Carroll, III*
John T. Carroll, III (DE No. 4060)
Keith L. Kleinman (DE No. 5693)
1201 North Market Street
Suite 1001
Wilmington, DE  19801
302-295-2000
302-295-2013 Fax
jcarroll@cozen.com
kkleinman@cozen.com

*Counsel to the Chapter 7 Trustee,*
*George L. Miller*