# EXHIBIT "1"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, | Case No. 16-11596 (KG) |
| Debtor. | |
| NU IMAGE, INC., | |
| Plaintiff, | |
| v. | Adv. No. 17-50477 (KG) |
| GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the Estate of Our Alchemy, LLC, | |
| Defendant. | |

## SETTLEMENT AGREEMENT WITH NU IMAGE, INC. REGARDING CERTAIN FILMS SUBJECT TO AGREEMENTS WITH OUR ALCHEMY, LLC AND RELEASE OF CLAIMS BY AND AGAINST NU IMAGE, INC.

This Settlement Agreement (the "Settlement Agreement") with Nu Image, Inc. Regarding Certain Films Subject to Agreements with Our Alchemy, LLC and Release of Claims by and Against Nu Image, Inc. is entered into as of November 1, 2017 (the "Agreement Date") by and between George L. Miller, in his capacity as the Chapter 7 Trustee (the "Trustee") for the bankruptcy estates (the "Estates") of Our Alchemy, LLC and Anderson Digital, LLC (the "Debtors"), and Nu Image, Inc., in its individual capacity and as the duly authorized agent for certain of the Nu Image Titles (as defined in this Settlement Agreement) ("Nu Image" and, together with the Trustee, the "Parties") with reference to the following facts and recitals:

**WHEREAS**, on July 1, 2016 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

**WHEREAS**, on or shortly after the Petition Date, the Trustee was appointed by the Office of the United States Trustee to serve as the duly authorized Trustee for the Estates of the Debtors and he continues to serve in this capacity; and

**WHEREAS**, on May 5, 2017, Nu Image initiated the above-captioned adversary proceeding (the "Adversary Proceeding") by the filing with the Bankruptcy Court of a Complaint [Adv. D.I. No. 1] (the "Complaint") against the Trustee, in his capacity as the Chapter 7 trustee

for the estate of Our Alchemy, LLC, in its own capacity and as successor in interest to DEJ Entertainment, Inc., First Look Studios, Inc., Millennium Entertainment LLC and any other subsidiary or affiliated entities of any of the aforementioned entities ("Alchemy"), seeking, among other things, declaratory judgments concerning Nu Image's rights in and to 163 film titles and/or pictures listed on **Exhibit A** to this Settlement Agreement (collectively, the "Nu Image Titles") which are subject to agreements between Alchemy and Nu Image, either directly or as successors-in-interest and/or as an agent of a third-party, whereby Alchemy was granted rights in and to the Nu Image Titles (together, the "Agreements"); and

WHEREAS, Nu Image also filed with the Bankruptcy Court a general unsecured, non-priority proof of claim number 172 against the bankruptcy estate of Alchemy in the amount not less than $2,132,208.79 (the "Asserted Nu Image Claim"); and

WHEREAS, on July 26, 2017, the Trustee filed his Motion of Chapter 7 Trustee Pursuant to Fed. R. Bankr. P. 9019 for an Order Approving Stipulation with Netflix, Inc. Regarding License Agreements for Internet Transmission and Resolving Netflix Motion [D.I. No. 467] (the "Motion to Approve Netflix Stipulation"). By the Motion to Approve Netflix Stipulation, among other things, the Trustee sought the approval of a stipulation with Netflix attached as Exhibit "A" to the Motion to Approve Netflix Stipulation (the "Netflix Stipulation"); and

WHEREAS, on September 15, 2017, the Bankruptcy Court entered an Order Approving the Motion to Approve Netflix Stipulation [D.I. No. 494] (the "Order Approving Netflix Stipulation"); and

WHEREAS, the Trustee is currently in negotiations with Amazon Digital Services LLC f/k/a Amazon Digital Services, Inc. (including any affiliates, subsidiaries and/or parent companies, "Amazon") concerning amounts due and owing by Amazon to the Estates for, among other things, films, motion pictures and/or TV program titles that have been placed on the Amazon platform, and the Trustee and Amazon are working to reconcile and reach an agreement regarding amounts due and owing from Amazon to the Estates (including the documentation of any agreement reached with Amazon, the "Amazon Settlement"); and

WHEREAS, Nu Image has asserted rights to any payments received by the Estates from Amazon pursuant to an Amazon Settlement on account of the Nu Image Titles; and

WHEREAS, after arm's length negotiations, in order to avoid the potential costs, risks, and delay of litigation, the Parties have determined to resolve their disputes relating to the Adversary Proceeding, the Complaint, the Nu Image Titles, the Agreements, the Asserted Nu Image Claim, the Netflix Stipulation and the Amazon Settlement on the terms and subject to the conditions set forth in this Settlement Agreement.

**NOW, THEREFORE**, the Parties intending to be legally bound, and for good and valuable consideration, the receipt of which is hereby acknowledged, agree as follows:

1.    The recitals set forth in the "Whereas" clauses above are incorporated herein by reference.

2.     The Nu Image Cash Payment: Nu Image agrees to pay the Trustee the sum of $625,000 (the "Nu Image Cash Payment") not later than seven (7) business days after the entry of the Approval Order (as defined in Paragraph 12(l) of this Settlement Agreement) (the "Cash Payment Date." Nu Image shall pay the Nu Image Cash Payment in cash to the Trustee as set forth herein in immediately available funds denominated in U.S. Dollars.

3.     The Netflix Stipulation: Nu Image consents to the Netflix Stipulation and the Order Approving Netflix Stipulation, subject to terms set forth in this Paragraph.  With respect to the Netflix Stipulation, the Parties hereby agree as follows:

(a)     Direction to Pay Title Payments: The Parties agree and shall direct Netflix to pay the license fee proceeds for the Nu Image Titles that are Direction to Pay Titles (as defined in the Netflix Stipulation), which are identified on Schedule 5(a) of the Netflix Stipulation as "Stonehearst Asylum," "Automata," and "Good People" (the "Direction to Pay Title Payments") to Comerica Bank ("Comerica") not later than seven (7) business days after the payment of the Nu Image Cash Payment to the Trustee.

(b)     The Humbling Fees: The Estates shall be entitled to retain any and all payments received from Netflix by the Estates pursuant to the Netflix Stipulation on account of the Nu Image Title "The Humbling" (the "Humbling Revenue").

4.     The Amazon Settlement: Nu Image shall not object to the approval of an Amazon Settlement and the Estates shall be entitled to retain any and all payments received from Amazon by the Estates on account of the Nu Image Titles (the "Amazon Fees"); provided, however, that the Amazon Settlement may not provide for an extension of any license of Nu Image Titles beyond the Amazon Sublicense Termination Date (as defined below).  Any proceeds generated for the benefit of the Estates from the exploitation of Nu Image Titles after the Revenue Cutoff Date from Amazon which are received by the Trustee, if any, shall be paid over by the Trustee to Nu Image with a remittance advice identifying the source of payment within seven (7) business days of the Trustee identifying the proceeds as being attributable to Nu Image Titles as set forth in the periodic certifications described in Paragraph 8 herein.

5.     Other Revenues from Nu Image Titles: Nu Image waives any rights and/or interests in any funds, payments, fees and/or other revenues received by the Estates and/or any claims and/or rights to payment on account of the Nu Image Titles which were received, are due and owing and/or were earned during the period prior to and including September 1, 2017 (the "Revenue Cutoff Date"); provided, however, that Nu Image does not waive its rights and/or interests in the Direction to Pay Title Payments to be paid to Comerica pursuant to Paragraph 3(a) of this Settlement Agreement and provided further, that the Estates shall retain the Humbling Revenue and the Amazon Fees pursuant to Paragraphs 3(b) and 4 of this Settlement Agreement.

6.     Termination of Estates' Interest in Nu Image Titles; Reversion of All Interests: Except to the extent set forth herein regarding the Order Approving the Netflix Stipulation (which provides for a narrow window of continued use of certain Nu Image Titles by the Trustee), the Agreements are hereby terminated effective upon entry of the Approval Order and the payment of the Nu Image Cash Payment being made to the Trustee.  The sub-license

3

agreement(s) between Amazon and the Estates relating to Nu Image Titles are hereby terminated effective upon the Amazon Sublicense Termination Date (as defined below). Regarding the Order Approving the Netflix Stipulation, upon the expiration of the period described in paragraph 18(e)(i) of the Motion to Approve the Netflix Stipulation and paragraph 7 of the Netflix Stipulation, any and all agreements between Netflix and the Estates relating to Nu Image Titles are thereby terminated and all such interests in Nu Image Titles shall immediately and automatically revert to Nu Image. The aforesaid termination of the Estates' interest in the Nu Image Titles under the Agreements shall also be memorialized by and through the execution and delivery of the Copyright Assignment, attached to this Settlement Agreement as **Exhibit B**. Upon entry of the Approval Order and payment of the Nu Image Cash Payment being made to the Trustee, the Trustee shall (i) give access to any and all documentation held by the Estate relating to the Nu Image Titles and (ii) authorize delivery of possession to Nu Image of any and all materials and other documents (including, without limitation, any digital files or masters) relating to the Nu Image Titles in the Trustee or Estates' custody, possession, or control. With regard to the foregoing, the Trustee shall execute and deliver to Nu Image the attached Laboratory Access Letter, attached to this Settlement Agreement as **Exhibit C**, within seven (7) business days of entry of the Approval Order and payment of the Nu Image Cash Payment being made to the Trustee and the Trustee shall have no further obligations with respect to obtaining access to materials for Nu Image Titles held by laboratories or third parties. The Trustee is hereby authorized to enter into and/or execute any further documentation necessary to give effect to the terms of this Settlement, including, without limitation, this Paragraph 6.

7.    Notices to Contract Counterparties: Within seven (7) business days after payment of the Nu Image Cash Payment to the Trustee, the Trustee shall send notice to all contract counterparties known to the Trustee to have sub-license agreements with Alchemy for the exploitation of the Nu Image Titles, other than Netflix and Amazon, that such sub-license agreements for the exploitation of Nu Image Titles are terminated effective the last day of the month in which the Approval Order is entered (the "Sublicense Termination Date"). No later than the next business day after entry of the Approval Order and the payment to the Trustee of the Nu Image Cash Payment, the Trustee shall send notice to Amazon that such sub-license agreement or agreements for the exploitation of Nu Image Titles are terminated effective upon the date of the notice (the "Amazon Sublicense Termination Date"). For those sub-license agreements lacking a provision for termination upon notice, within seven (7) business days after Nu Image payment of the Nu Image Cash Payment to the Trustee, the Trustee will notify and instruct such counterparties to direct to Nu Image any funds, payments, fees and/or other revenue due and owing and/or earned on account of the Nu Image Titles for any periods after the Revenue Cutoff Date. The Trustee shall provide to Nu Image a list of any and all agreements entered by the Debtors with respect to the license, assignment, distribution, exploitation or other treatment of Nu Image Titles known to the Trustee as of the date upon with the notices and/or instructions are provided in this Paragraph. For any and all funds, payments, fees, and/or other revenue earned after the Sublicense Termination Date on account of the Nu Image Titles received by the Estates, other than the Humbling or the Amazon Fees (the Nu Image Amounts"), the Trustee shall pay any and all such Nu Image Amounts to Nu Image with a remittance advice identifying the source of payment within seven (7) business days of the Trustee identifying such payments, funds, fees and/or other revenue as being attributable to Nu Image Titles as set forth in the periodic certifications described in Paragraph 8 herein.

8.    <u>Accountant's Certification of Receipts</u>. Within the initial ten (10) business days of the calendar months of November 2017, December 2017, January 2018, February 2018, March 2018 and April 2018, the Trustee's accountants will provide a certification to Nu Image setting forth a listing of any revenue payments for revenue earned after the Revenue Cutoff Date received by the Trustee during the prior calendar month which has been identified as being on account of Nu Image Titles.

9.    <u>Reduction Amounts</u>. Any funds, payments, fees, and/or other revenue earned for the period between the Revenue Cutoff Date to the Sublicense Termination Date on account of the Nu Image Titles received by the Estates shall serve to reduce the amount of the Nu Image Cash Payment made by Nu Image to the Trustee (the "<u>Reduction Amounts</u>"), except that the Reduction Amounts shall not include any amounts to the extent assigned, paid and/or otherwise received by Nu Image and/or the Direction to Pay Title Payments and/or any of the Humbling Revenue and/or the Amazon Fees which the Estates shall retain pursuant to Paragraphs 3(b) and 4 of this Settlement Agreement.  Within five (5) business days of the entry of the Approval Order, the Trustee's accountants shall provide a certification to Nu Image identifying the Reduction Amounts received by the Trustee's through the date of the certification, which Reduction Amounts may be deducted from the Cash Payment to be made by Nu Image.

10.    <u>The Nu Image Release</u>: Upon payment of the Nu Image Cash Payment to the Trustee and entry of the Approval Order, Nu Image hereby releases the Trustee and the Estates of the Debtors from any and all rights, obligations, claims, causes of action and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, including but not limited to any such claims, causes of action or demands related to the Adversary Proceeding, the Complaint, the Nu Image Titles, the Agreements, the Asserted Nu Image Claim, the Netflix Stipulation and the Amazon Settlement; <u>provided</u>, <u>however</u>, that the obligations arising out of this Settlement Agreement are not released  Upon entry of the Approval Order, (a) the Adversary Proceeding without need for further Order by the Bankruptcy Court shall be deemed dismissed with prejudice and (b) the Asserted Nu Image Claim without need for further Order by the Bankruptcy Court shall be deemed withdrawn with prejudice.

11.    <u>The Trustee Release</u>: Upon payment of the Nu Image Cash Payment to the Trustee and entry of the Approval Order, the Trustee and the Estates of the Debtors hereby release Nu Image of any and all rights, obligations, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, including but not limited to any such claims, causes of action or demands related to the Adversary Proceeding, the Complaint, the Nu Image Titles, the Agreements, the Asserted Nu Image Claim, the Netflix Stipulation and the Amazon Settlement; <u>provided</u>, <u>however</u>, that the obligations arising out of this Settlement Agreement are not released.

12.    <u>Miscellaneous Provisions</u>:

(a)    The Parties represent and acknowledge that, in executing this Settlement Agreement, they do not rely and have not relied upon any representation or statement made by any Party or any of their agents, shareholders, representatives, or attorneys, with regard to the subject matter, basis, or effect of this Settlement Agreement or otherwise, other than as specifically stated in this Settlement Agreement.

(b)     The Parties further declare that, in making this Settlement Agreement, they have relied entirely upon their own judgment, beliefs, and the advice of their counsel (for whose expense each shall be solely responsible), if any, and that they have had a reasonable period of time to consider this Settlement Agreement and, if so desired, to consult with counsel.

(c)     The Parties agree that each Party and its counsel (if applicable) have reviewed this Settlement Agreement, and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement.  The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

(d)     The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the Parties.

(e)     Should any provision(s) of this Settlement Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid, and/or unenforceable, then the legality, validity, and/or enforceability of the remaining parts, terms, and/or provisions shall not be affected thereby, and said illegal, unenforceable, and/or invalid part, term, and/or provision shall be deemed not to be a part of this Settlement Agreement.

(f)     This Settlement Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

(g)     No modification of this Settlement Agreement shall be binding or enforceable unless in writing and signed by the Parties.

(h)     This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, administrators, and assigns.

(i)     This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Delaware, without regard to the conflict of laws principles of the State of Delaware. Each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Settlement Agreement and expressly waives any right to commence any such action in any other forum.

(j)     This Settlement Agreement may be executed in one or more counterparts, including by email or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(k)     Each person signing this Settlement Agreement represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party and to bind his/her respective clients to the terms and conditions of this Settlement Agreement.

(l)     Notwithstanding any provision herein to the contrary, this Settlement Agreement is subject to the entry of a final order by the Bankruptcy Court approving this Settlement Agreement as to which (A) no request for stay is pending, no stay is in effect, the order has not been vacated, reversed, set aside, annulled or suspended and any deadline under the applicable statute or rule for the filing of such request has passed, (B) no petition for rehearing or reconsideration or application for review is pending and the time for filing any such petition or application under the applicable statute or rule has passed, and (C) no appeal is pending or in effect and the time for filing any such appeal under applicable statute or rule has passed (the "Approval Order").  After the Parties have executed this Settlement Agreement, the Trustee will proceed to file a motion with the Bankruptcy Court to obtain entry of the Approval Order.  Both Parties will use their good faith efforts to obtain such approval of this Settlement Agreement.

(m)     In the event that the Bankruptcy Court refuses to enter a Approval Order, the Settlement Agreement shall be null and void.

**[signature page to follow]**

IN WITNESS WHEREOF, the Parties have each approved and executed this Settlement Agreement as of the date set forth above.

By: Trevor Short
6423 Wilshire Blvd.,
Los Angeles, California 90048

Telephone:    (310) 388-6900
Facsimile:    (310) 388-6901

*Authorized signer/agent for Nu Image, Inc.*

George L. Miller
Miller Coffey Tate LLP
8 Penn Center, Suite 950
1628 John F. Kennedy Boulevard
Philadelphia PA 19103
Telephone:    215-561-0950
Facsimile:    215-561-0330

*Trustee*

8

IN WITNESS WHEREOF, the Parties have each approved and executed this Settlement Agreement as of the date set forth above.

By: Trevor Short
6423 Wilshire Blvd.,
Los Angeles, California 90048

Telephone:   (310) 388-6900
Facsimile:   (310) 388-6901

*Authorized signer/agent for Nu Image, Inc.*

George L. Miller
Miller Coffey Tate LLP
8 Penn Center, Suite 950
1628 John F. Kennedy Boulevard
Philadelphia PA 19103
Telephone:   215-561-0950
Facsimile:   215-561-0330

*Trustee*

8

**EXHIBIT A**

| Title | Title |
|---|---|
| 88 | DEATH TRAIN |
| AFRICAN EXPRESS | DELTA FORCE 2 |
| AIR MARSHALS | DELTA FORCE 3 |
| AIRSTRIKE | DELTA FORCE 4 |
| ALIEN VS. ALIEN aka SHOWDOWN AT AREA 51 | DELTA FORCE 5 |
| AMERICAN PERFEKT | DERAILED |
| ANASAZI MOON aka NOBODY'S BABY | DIAMOND CUT DIAMOND |
| ARMSTRONG | DIRECT ACTION |
| AS GOOD AS DEAD | DIRECT CONTACT |
| AS I LAY DYING | DISASTER |
| AUTOMATA | DOGWATCH |
| AVALANCHE | DOUBLE IDENTITY aka FAKE IDENTITY |
| BAD LIEUTENANT | EARTHQUAKE |
| BEYOND FORGIVENESS | ELEPHANT WHITE |
| BLACK HOLE | ELIZA GRAVES aka STONEHEARST ASYLUM |
| BLACK WIDOW aka BEFORE IT HAD A NAME | F.T.W. |
| BLITZ | FIRE |
| BLOODRUN | FOREVER LULU |
| BLOODSUCKER | FOURTH FLOOR |
| CITY OF FEAR | FRANKENSTEIN |
| CODE, THE | FRANKIE THE FLY |
| COLD HARVEST | GOOD PEOPLE |
| COLD HEART | HARD JUSTICE |
| COMMAND PERFORMANCE | HELL aka IN HELL aka THE SHU |
| CONTRACT, THE | HELLO SHE LIED |
| CONTROL | HOLLOWPOINT |
| COOL DOG | HOUSE OF BONES |
| CREATURE aka ALIEN LOCKDOWN | HOW TO KILL YOUR NEIGHBOR'S DOG |
| CROCODILE (AKA FLATDOG) | HUMAN TIME BOMB (AKA WALKING TIMEBOMB) |
| CROCODILE 2 | HUMBLING, THE |
| CYBORG CONQUEST | ICEMAN, THE |
| CYBORG COP 2 | IN GOD WE TRUST aka HARD CASH |
| CYBORG COP 3 | JOURNEY TO THE END OF THE NIGHT |
| CYBORG SOLDIER aka WEAPON | JUDGE AND JURY |
| DANGER ZONE | KILL SLADE |
| DAY OF THE DEAD | KILLING SEASON |
| DAYS OF LOVE | KING OF CALIFORNIA |
| DEAD AWAKE | |

| Title |
| --- |
| LABOR PAINS |
| LEAVES OF GRASS |
| LIMA: BREAKING THE SILENCE |
| LOOKING FOR LOLA (AKA DONUTS) |
| LUNARCOP |
| MAINLINE aka SHADOW OF FEAR |
| MAKER |
| MARINES |
| MARRIED 2 MALCOLM |
| MEDALLION aka STOLEN |
| MEGA SNAKE aka MEGASNAKE |
| MERCHANT OF DEATH |
| MORPHMAN (AKA LARVA & INFESTATION) |
| MOSQUITOMAN |
| MOSSAD |
| NEVER SAY DIE |
| NINE LIVES aka UNSTOPPABLE |
| NINJA |
| NINJA 2 aka NINJA: SHADOW OF A FEAR |
| OCTOBER 22 |
| OCTOPUS 1 |
| OCTOPUS 2 |
| ON THE BORDER |
| OPERATION DELTA FORCE |
| PANIC (AKA AIR PANIC OR TRIUMPH) |
| PAPERBOY |
| PASSOVER FEVER |
| PAST PERFECT |
| PEACEKEEPER |
| PHASE IV; FLYING VIRUS aka KILLER BUZZ; WINDFALL aka ESCAPE FROM BRENDA |
| PLATO'S RUN |
| PRINCE & ME 3 aka PRINCE AND ME: A ROYAL HONEYMOON |
| PRINCE & ME 4 aka PRINCE AND ME: THE ELEPHANT ADVENTURE |
| QUANTUM APOCALYPSE |
| RAGING ANGELS |
| RAGING SHARKS |
| RATS |
| REALITY CHECK |
| REDLINE |

| Title |
| --- |
| RELATIVE STRANGERS |
| REPLACEMENT (AKA ALTERNATE) |
| RETURN FROM INDIA |
| RIN TIN TIN aka FINDING RIN TIN TIN |
| SCARRED CITY |
| SHADOWCHASER 2 |
| SHADOWCHASER 3 |
| SHADOWCHASER 4 |
| SHARK ATTACK |
| SHARK ATTACK 2 |
| SHARK ATTACK 3 |
| SHARK ZONE (AKA EATEN ALIVE) |
| SHARKMAN |
| SKELETONMAN |
| SNAKEMAN |
| SOME GIRL |
| SPIDERS |
| SPIDERS 2 |
| SPIDERS 3D |
| STAY AWAKE |
| STRAIGHT A'S |
| STREET GUN (AKA VISIONARY) |
| SUBMARINES |
| SUMURU |
| SURVIVOR |
| SWEEPER |
| TAKEOVER |
| TAKING, THE aka THE TAKING OF DEBORAH LOGAN |
| TARGET OF OPPORTUNITY |
| THAT ENGLISHWOMAN |
| TOP OF THE WORLD |
| TORNADO |
| TRAITOR'S HEART |
| TRESPASS |
| TRUST |
| U.S. SEALS |
| U.S. SEALS 2 |
| U.S. SEALS 3 (AKA FROGMEN) |
| U.S. SPECIAL FORCES |
| VAMPIRE CLAN |

| Title |
|---|
| VAMPIRE IN VEGAS |
| VOLCANO |
| WAR, INC. |
| WARHEAD |
| WARRIOR |
| WAY OF WAR |
| WHEN NIETZSCHE WEPT |
| WILDSIDE |
| WINDFALL aka ESCAPE FROM BRENDA |
| WOLVESBAYNE |

## **EXHIBIT B**

Copyright Agreement

## COPYRIGHT ASSIGNMENT

THIS COPYRIGHT ASSIGNMENT ("Assignment") is made by and between the bankruptcy estate of Our Alchemy, LLC, a Delaware limited liability company in its own capacity and to the extent applicable as successor in interest to DEJ Entertainment, Inc., First Look Studios, Inc., Millennium Entertainment LLC and any other subsidiary or affiliated entities of any of the aforementioned entities (the "Assignor") and Nu Image, Inc., a Delaware corporation ("Assignee") with reference to the following.

WHEREAS, Assignor is the licensee of certain rights relating to those certain motion pictures listed on Exhibit 1 attached hereto (collectively, the "Works"); and

WHEREAS, Assignee in accordance with the settlement agreement entered into as of November 1, 2017 by and between George L. Miller in his capacity as Chapter 7 Trustee for the bankruptcy estate of Our Alchemy, LLC and Nu Image, Inc. (the "Settlement Agreement") and the order of the bankruptcy court approving the Settlement Agreement, desires to acquire all of Assignor's right, title and interest in and to the Works, including all exploitation rights and any copyright rights therein or thereto (the "Copyrights").

NOW, THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.    Assignment of Copyright.  Assignor does hereby irrevocably, assign, convey and transfer to Assignee all right, title and interest of Assignor, if any, in and to the Works and the Copyrights throughout the world, including, but is not limited to, the rights if any of the Assignor (a) to reproduce, distribute copies, publicly display, publicly perform, adapt, and prepare derivative works based on the Works and the Copyrights and to make, use, sell or otherwise make use of the Works and the Copyrights (including all editions, revisions, supplements to, and versions of the Works, regardless of nature or state of development) throughout the world in any form or medium; (b) to license or otherwise transfer to others the rights commensurate herewith in connection with the Works and the Copyrights for the entire term of any copyright, including any renewals and extensions; (c) to file copyright applications in the United States and throughout the world for the Works in the name of Assignee, its successors and assigns; and (d) to all proceeds to infringement suits, the right to sue for past, present and future infringements, and all rights corresponding thereto throughout the world for the Works and the Copyrights assigned herein.

2.    Copyright Registration and Enforcement.  If requested to do so by Assignee, Assignor agrees to cooperate as reasonably requested by Assignee in maintaining, enforcing and protecting the Works and the Copyrights (at Assignee's expense) and further agrees to execute any documents that are necessary to perfect Assignee's ownership of the rights, title and interest in the Works and the Copyrights assigned from the Assignor pursuant to this Assignment to obtain copyright registrations therefor or to prosecute infringements, all at Assignee's expense.

[continued on the next page]

3.    <u>Miscellaneous</u>.    This Assignment shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflicts of law provisions.  This Assignment shall be binding upon the parties, their successors and/or assigns, and all others acting by, through, with or under their direction, and all those in privity therewith.

ASSIGNOR                                      ASSIGNEE


By: _____        By: _____
Name: George L. Miller               Name:  Nu Image, Inc.
Title:  Chapter 7 Trustee of the        Title:
        estate of Our Alchemy, LLC


Date: _____       Date: _____

2

**EXHIBIT 1**

| Title | Description of Work | Copyright App. or Reg. No. |
|---|---|---|
| 88 | Film | PAu3-730-381 |
| AFRICAN EXPRESS | Film | |
| AIR MARSHALS | Film | PAu2-721-748 |
| AIRSTRIKE | Film | PAu2-689-593 |
| ALIEN VS. ALIEN aka SHOWDOWN AT AREA 51 | Film | PA1-595-228 |
| AMERICAN PERFEKT | Film | PAu2-184-133 |
| ANASAZI MOON aka NOBODY'S BABY | Film | PAu2-441-458 |
| ARMSTRONG | Film | PAu2-275-192 |
| AS GOOD AS DEAD | Film | PA1-764-185 |
| AS I LAY DYING | Film | PA1-901-596 |
| AUTOMATA | Film | PA1-923-090 |
| AVALANCHE | Film | PAu2-895-687 |
| BAD LIEUTENANT | Film | PA1-667-197 |
| BEYOND FORGIVENESS | Film | PAu1-872-119 |
| BLACK HOLE | Film | PA1-346-969 |
| BLACK WIDOW aka BEFORE IT HAD A NAME | Film | PA1-390-426 |
| BLITZ | Film | PA1-878-557 |
| BLOODRUN | Film | PAu1-887-959 |
| BLOODSUCKER | Film | PA1-257-885 |
| CITY OF FEAR | Film | PAu2-505-291 |
| CODE, THE | Film | PA1-970-600 |
| COLD HARVEST | Film | PAu2-358-550 |
| COLD HEART | Film | PAu2-566-159 |
| COMMAND PERFORMANCE | Film | PAu3-438-011 |
| CONTRACT, THE | Film | PAu3-112-431 |
| CONTROL | Film | PAu2-860-358 |
| COOL DOG | Film | PA1-759-882 |
| CREATURE aka ALIEN LOCKDOWN | Film | PAu2-800-613 |
| CROCODILE (AKA FLATDOG) | Film | PAu2-482-271 |
| CROCODILE 2 | Film | PAu2-599-577 |
| CYBORG CONQUEST | Film | PA1-670-697 |
| CYBORG COP 2 | Film | PAu1-908-298 |
| CYBORG COP 3 | Film | PAu3-460-854 |
| CYBORG SOLDIER aka WEAPON | Film | PAu3-561-034 |
| DANGER ZONE | Film | PAu2-054-920 |
| DAY OF THE DEAD | Film | PA1-641-512 |
| DAYS OF LOVE | Film | |
| DEAD AWAKE | Film | PAu2-584-070 |
| DEATH TRAIN | Film | PA1-091-587 |
| DELTA FORCE 2 | Film | PAu2-231-903 |
| DELTA FORCE 3 | Film | PAu2-277-153 |
| DELTA FORCE 4 | Film | PAu2-396-008 |
| DELTA FORCE 5 | Film | PAu2-469-828 |
| DERAILED | Film | PAu2-671-094 |
| DIAMOND CUT DIAMOND | Film | PAu2-721-833 |
| DIRECT ACTION | Film | PAu2-881-662 |
| DIRECT CONTACT | Film | PA1-681-967 |
| DISASTER | Film | PAu2-621-573 |
| DOGWATCH | Film | PAu2-145-031 |

| Title | Description of Work | Copyright App. or Reg. No. |
|---|---|---|
| DOUBLE IDENTITY aka FAKE IDENTITY | Film | PAu2-895-679 |
| EARTHQUAKE | Film | PA1-723-479 |
| ELEPHANT WHITE | Film | PA1-943-133 |
| ELIZA GRAVES aka STONEHEARST ASYLUM | Film | PAu1-791-905 |
| F.T.W. | Film | PA1-667-133 |
| FIRE | Film | PAu2-895-668 |
| FOREVER LULU | Film | PAu2-547-864 |
| FOURTH FLOOR | Film | PAu2-459-658 |
| FRANKENSTEIN | Film | PA1-997-424 |
| FRANKIE THE FLY | Film | PAu2-144-969 |
| GOOD PEOPLE | Film | PA1-923-052 |
| HARD JUSTICE | Film | PAu1-986-392 |
| HELL aka IN HELL aka THE SHU | Film | PAu2-024-323 |
| HELLO SHE LIED | Film | PAu2-010-159 |
| HOLLOWPOINT | Film | PA1-773-637 |
| HOUSE OF BONES | Film | PAu2-660-088 |
| HOW TO KILL YOUR NEIGHBOR'S DOG | Film | PAu1-875-212 |
| HUMAN TIME BOMB (AKA WALKING TIMEBOMB) | Film | Pau3-760-198 |
| HUMBLING, THE | Film | PA1-876-295 |
| ICEMAN, THE | Film | PAu2-630-275 |
| IN GOD WE TRUST aka HARD CASH | Film | PAu2-779-388 |
| JOURNEY TO THE END OF THE NIGHT | Film | PA1-346-739 |
| JUDGE AND JURY | Film | PAu2-095-076 |
| KILL SLADE | Film | |
| KILLING SEASON | Film | PAu3-351-033 |
| KING OF CALIFORNIA | Film | PA1-354-911 |
| LABOR PAINS | Film | PA1-631-758 |
| LEAVES OF GRASS | Film | PA1-781-107 |
| LIMA: BREAKING THE SILENCE | Film | PAu2-410-646 |
| LOOKING FOR LOLA (AKA DONUTS) | Film | PAu2-236-438 |
| LUNARCOP | Film | PAu2-164-127 |
| MAINLINE aka SHADOW OF FEAR | Film | PAu2-881-681 |
| MAKER | Film | PAu2-192-692 |
| MARINES | Film | PAu2-743-935 |
| MARRIED 2 MALCOLM | Film | PAu2-267-174 |
| MEDALLION aka STOLEN | Film | PA1 818 543 |
| MEGA SNAKE aka MEGASNAKE | Film | PA1-970-606 |
| MERCHANT OF DEATH | Film | PAu2-192-705 |
| MORPHMAN (AKA LARVA & INFESTATION) | Film | PAu2-941-933 |
| MOSQUITOMAN | Film | PAu2-941-934 |
| MOSSAD | Film | PAu2-574-285 |
| NEVER SAY DIE | Film | PAu1-890-819 |
| NINE LIVES aka UNSTOPPABLE | Film | PAu2-848-755 |
| NINJA | Film | PA1-669-996 |
| NINJA 2 aka NINJA: SHADOW OF A FEAR | Film | PA1-896-860 |
| OCTOBER 22 | Film | PAu2-296-960 |
| OCTOPUS 1 | Film | PAu2-498-809 |
| OCTOPUS 2 | Film | PAu2-586-155 |
| ON THE BORDER | Film | PAu2-300-508 |
| OPERATION DELTA FORCE | Film | PAu2-177-451 |
| PANIC (AKA AIR PANIC OR TRIUMPH) | Film | PAu2-615-023 |
| PAPERBOY | Film | PA1-823-544 |

| Title | Description of Work | Copyright App. or Reg. No. |
|---|---|---|
| PASSOVER FEVER | Film | PAu2-115-694 |
| PAST PERFECT | Film | PAu2-127-507 |
| PEACEKEEPER | Film | PA 868-653 |
| PHASE IV; FLYING VIRUS aka KILLER BUZZ; WINDFALL aka ESCAPE FROM BRENDA | Film | PAu2-177-424 |
| PLATO'S RUN | Film | PA1-753-211 |
| PRINCE & ME 3 aka PRINCE AND ME: A ROYAL HONEYMOON | Film | PA1-674-295 |
| PRINCE & ME 4 aka PRINCE AND ME: THE ELEPHANT ADVENTURE | Film | PA1-761-512 |
| QUANTUM APOCALYPSE | Film | PAu2-007-317 |
| RAGING ANGELS | Film | PAu2-915-738 |
| RAGING SHARKS | Film | PAu2-584-306 |
| RATS | Film | PAu2-851-662 |
| REALITY CHECK | Film | PAu2-214-879 |
| REDLINE | Film | PA1-352-174 |
| RELATIVE STRANGERS | Film | PAu2-459-636 |
| REPLACEMENT (AKA ALTERNATE) | Film | |
| RETURN FROM INDIA | Film | PA1-373-648 |
| RIN TIN TIN aka FINDING RIN TIN TIN | Film | PAu2-274-368 |
| SCARRED CITY | Film | PAu1-870-148 |
| SHADOWCHASER 2 | Film | PAu1-881-243 |
| SHADOWCHASER 3 | Film | PAu2-578-189 |
| SHADOWCHASER 4 | Film | PAu2-389-307 |
| SHARK ATTACK | Film | PAu2-504-218 |
| SHARK ATTACK 2 | Film | PAu2-659-933 |
| SHARK ATTACK 3 | Film | PAu2-783-310 |
| SHARK ZONE (AKA EATEN ALIVE) | Film | PAu2-920-142 |
| SHARKMAN | Film | PA1-864-611 |
| SKELETONMAN | Film | PAu2-944-045 |
| SNAKEMAN | Film | PAu2-941-935 |
| SOME GIRL | Film | PAu2-445-448 |
| SPIDERS | Film | PAu2-497-895 |
| SPIDERS 2 | Film | PAu2-574-615 |
| SPIDERS 3D | Film | PA1-839-681 |
| STAY AWAKE | Film | |
| STRAIGHT A'S | Film | PA1-839-683 |
| STREET GUN (AKA VISIONARY) | Film | PAu2-578-190 |
| SUBMARINES | Film | PAu2-689-594 |
| SUMURU | Film | |
| SURVIVOR | Film | PA1-956-191 |
| SWEEPER | Film | PAu2-314-807 |
| TAKEOVER | Film | PAu1-992-071 |
| TAKING, THE aka THE TAKING OF DEBORAH LOGAN | Film | PAu3-740-617 |
| TARGET OF OPPORTUNITY | Film | PAu2-800-798 |
| THAT ENGLISHWOMAN | Film | |
| TOP OF THE WORLD | Film | PAu2-214-803 |
| TORNADO | Film | PAu2-895-686 |
| TRAITOR'S HEART | Film | PAu2-335-469 |
| TRESPASS | Film | PA1-764-417 |
| TRUST | Film | PA1-723-506 |
| U.S. SEALS | Film | PAu2-410-156 |

| Title | Description of Work | Copyright App. or Reg. No. |
|---|---|---|
| U.S. SEALS 2 | Film | PAu2-595-880 |
| U.S. SEALS 3 (AKA FROGMEN) | Film | PAu2-621-835 |
| U.S. SPECIAL FORCES | Film | PAu2-721-083 |
| VAMPIRE CLAN | Film | PAu2-683-337 |
| VAMPIRE IN VEGAS | Film | PAu3-540-017 |
| VOLCANO | Film | PAu2-895-685 |
| WAR, INC. | Film | PA1-644-670 |
| WARHEAD | Film | PAu2-074-145 |
| WARRIOR | Film | PAu1-789-862 |
| WAY OF WAR | Film | PAu3-349-326 |
| WHEN NIETZSCHE WEPT | Film | PA1-391-789 |
| WILDSIDE | Film | PAu2-038-320 |
| WINDFALL aka ESCAPE FROM BRENDA | Film | PA1-086-972 |
| WOLVESBAYNE | Film | PA1-397-914 |

## **EXHIBIT C**

Lab Access Letter

[Date]

To Any and All Laboratories Holding Material and/or Films
From Our Alchemy, LLC and Anderson Digital, LLC

Re:  Nu Image Films

To Whom It May Concern:

I serve in the capacity as chapter 7 trustee (the "Trustee") of the bankruptcy estates of Our Alchemy, LLC and/or Anderson Digital, LLC (collectively "Alchemy"), and therefore am empowered with all rights and standing of such companies.  Alchemy has on deposit with you ("Laboratory") or granted access to certain materials (the "Materials") with respect to certain motion pictures as listed on Schedule 1 attached (the "Films").

Pursuant to a settlement agreement entered by and between the Trustee and Nu Image, Inc. ("Nu Image"), and approved by the bankruptcy court, the Trustee relinquished any and all remaining rights, title, and interest to the Films to Nu Image.

Accordingly, you are hereby authorized and irrevocably directed and instructed to provide to Nu Image absolute access and control over the Materials for the Films for any reason, including without limitation, direction to release and deliver such Materials for the Films to Nu Image, and use of the Materials for the Films and any and all laboratory services with respect to the aforementioned Films. All services and materials ordered by Nu Image, its successors and assigns shall be at the sole cost and expense of Nu Image, or its successors and assigns.  Any and all Materials on deposit in your vault relating to the Films shall be retained by Laboratory for Nu Image's order and shall not be transferred to any other laboratory or similar facilities without the prior written consent of Nu Image; it being understood that Nu Image or its designees shall have, at all times, the right to remove any copies ordered by Nu Image or its designees.

Notwithstanding anything in the foregoing to the contrary, if the Materials remain inactive for a period of twelve months or more, Laboratory is hereby permitted to terminate this agreement by giving Nu Image written notice of not less than thirty (30) days.  Upon the occurrence of such termination, Laboratory is authorized to release and deliver the Materials to Nu Image at its last known address unless otherwise advised of an alternate destination by Nu Image before termination. The instructions contained herein may not be altered or modified except in writing signed by Nu Image and Laboratory.  Please confirm your understanding and agreement with the foregoing by signing in the space provided below.

Very truly yours,

_____
George L. Miller, as chapter 7 trustee of the estates of Our Alchemy, LLC and Anderson Digital, LLC

Agreed to and accepted:                    Agreed to and accepted:

**[LAB COMPANY NAME]**                    **NU IMAGE, INC.**

**By:** _____     **By:** _____
    [Name], [Title]                                    [Name], [Title]

**Schedule 1 to Lab Access Letter Dated [Date]**
**List of Films**

| | |
|---|---|
| 88 | DOUBLE IDENTITY aka FAKE IDENTITY |
| AFRICAN EXPRESS | EARTHQUAKE |
| AIR MARSHALS | ELEPHANT WHITE |
| AIRSTRIKE | ELIZA GRAVES aka STONEHEARST ASYLUM |
| ALIEN VS. ALIEN aka SHOWDOWN AT AREA 51 | F.T.W. |
| AMERICAN PERFEKT | FIRE |
| ANASAZI MOON aka NOBODY'S BABY | FOREVER LULU |
| ARMSTRONG | FOURTH FLOOR |
| AS GOOD AS DEAD | FRANKENSTEIN |
| AS I LAY DYING | FRANKIE THE FLY |
| AUTOMATA | GOOD PEOPLE |
| AVALANCHE | HARD JUSTICE |
| BAD LIEUTENANT | HELL aka IN HELL aka THE SHU |
| BEYOND FORGIVENESS | HELLO SHE LIED |
| BLACK HOLE | HOLLOWPOINT |
| BLACK WIDOW aka BEFORE IT HAD A NAME | HOUSE OF BONES |
| BLITZ | HOW TO KILL YOUR NEIGHBOR'S DOG |
| BLOODRUN | HUMAN TIME BOMB (AKA WALKING TIMEBOMB) |
| BLOODSUCKER | HUMBLING, THE |
| CITY OF FEAR | ICEMAN, THE |
| CODE, THE | IN GOD WE TRUST aka HARD CASH |
| COLD HARVEST | JOURNEY TO THE END OF THE NIGHT |
| COLD HEART | JUDGE AND JURY |
| COMMAND PERFORMANCE | KILL SLADE |
| CONTRACT, THE | KILLING SEASON |
| CONTROL | KING OF CALIFORNIA |
| COOL DOG | LABOR PAINS |
| CREATURE aka ALIEN LOCKDOWN | LEAVES OF GRASS |
| CROCODILE (AKA FLATDOG) | LIMA: BREAKING THE SILENCE |
| CROCODILE 2 | LOOKING FOR LOLA (AKA DONUTS) |
| CYBORG CONQUEST | LUNARCOP |
| CYBORG COP 2 | MAINLINE aka SHADOW OF FEAR |
| CYBORG COP 3 | MAKER |
| CYBORG SOLDIER aka WEAPON | MARINES |
| DANGER ZONE | MARRIED 2 MALCOLM |
| DAY OF THE DEAD | MEDALLION aka STOLEN |
| DAYS OF LOVE | MEGA SNAKE aka MEGASNAKE |
| DEAD AWAKE | MERCHANT OF DEATH |
| DEATH TRAIN | MORPHMAN (AKA LARVA & INFESTATION) |
| DELTA FORCE 2 | MOSQUITOMAN |
| DELTA FORCE 3 | MOSSAD |
| DELTA FORCE 4 | NEVER SAY DIE |
| DELTA FORCE 5 | NINE LIVES aka UNSTOPPABLE |
| DERAILED | NINJA |
| DIAMOND CUT DIAMOND | NINJA 2 aka NINJA: SHADOW OF A FEAR |
| DIRECT ACTION | OCTOBER 22 |
| DIRECT CONTACT | OCTOPUS 1 |
| DISASTER | OCTOPUS 2 |
| DOGWATCH | ON THE BORDER |

| |
|---|
| OPERATION DELTA FORCE |
| PANIC (AKA AIR PANIC OR TRIUMPH) |
| PAPERBOY |
| PASSOVER FEVER |
| PAST PERFECT |
| PEACEKEEPER |
| PHASE IV; FLYING VIRUS aka KILLER BUZZ; WINDFALL aka ESCAPE FROM BRENDA |
| PLATO'S RUN |
| PRINCE & ME 3 aka PRINCE AND ME: A ROYAL HONEYMOON |
| PRINCE & ME 4 aka PRINCE AND ME: THE ELEPHANT ADVENTURE |
| QUANTUM APOCALYPSE |
| RAGING ANGELS |
| RAGING SHARKS |
| RATS |
| REALITY CHECK |
| REDLINE |
| RELATIVE STRANGERS |
| REPLACEMENT (AKA ALTERNATE) |
| RETURN FROM INDIA |
| RIN TIN aka FINDING RIN TIN TIN |
| SCARRED CITY |
| SHADOWCHASER 2 |
| SHADOWCHASER 3 |
| SHADOWCHASER 4 |
| SHARK ATTACK |
| SHARK ATTACK 2 |
| SHARK ATTACK 3 |
| SHARK ZONE (AKA EATEN ALIVE) |
| SHARKMAN |
| SKELETONMAN |
| SNAKEMAN |
| SOME GIRL |
| SPIDERS |

| |
|---|
| SPIDERS 2 |
| SPIDERS 3D |
| STAY AWAKE |
| STRAIGHT A'S |
| STREET GUN (AKA VISIONARY) |
| SUBMARINES |
| SUMURU |
| SURVIVOR |
| SWEEPER |
| TAKEOVER |
| TAKING, THE aka THE TAKING OF DEBORAH LOGAN |
| TARGET OF OPPORTUNITY |
| THAT ENGLISHWOMAN |
| TOP OF THE WORLD |
| TORNADO |
| TRAITOR'S HEART |
| TRESPASS |
| TRUST |
| U.S. SEALS |
| U.S. SEALS 2 |
| U.S. SEALS 3 (AKA FROGMEN) |
| U.S. SPECIAL FORCES |
| VAMPIRE CLAN |
| VAMPIRE IN VEGAS |
| VOLCANO |
| WAR, INC. |
| WARHEAD |
| WARRIOR |
| WAY OF WAR |
| WHEN NIETZSCHE WEPT |
| WILDSIDE |
| WINDFALL aka ESCAPE FROM BRENDA |
| WOLVESBAYNE |