## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.,* | Case No. 16-11596 (KG) |
| Debtors.[1] | **Hearing Date: June 21, 2018 at 2:00 p.m. (ET)**<br>**Obj. Deadline: June 5, 2018 at 4:00 p.m. (ET)** |

### MOTION OF SUNTRUST BANK, AS ADMINISTRATIVE AGENT
### FOR ITSELF AND CERTAIN OTHER LENDERS, FOR AN ORDER UNDER
### RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
### COMPELLING THE PRODUCTION OF DOCUMENTS FROM THE VIRGO ENTITIES

SunTrust Bank ("SunTrust"), as Administrative Agent ("SunTrust")[2] for itself and for certain other lenders (collectively, with SunTrust in its capacity as a lender, the "Lenders"), by and through its undersigned counsel, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules") for the United States Bankruptcy Court for the District of Delaware (the "Court"), hereby files this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), compelling the Virgo Entities (as defined below) to produce the documents set forth on **Schedule 1** to the Proposed Order. In support of the Motion, SunTrust respectfully states as follows:

---

[1] The Debtors are: Our Alchemy, LLC, Case No. 16-11596 (KG), and Anderson Digital, LLC, Case No. 16-11597 (KG).

[2] For the avoidance of doubt, and except as otherwise noted herein, any reference to "SunTrust" in this Motion shall mean SunTrust in its capacity as Administrative Agent for the Lenders, in accordance with and subject to the terms and conditions of the Loan Documents.

{01325249;v1 }

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1084 and 1409.  This is a core proceeding pursuant 28 U.S.C. § 157(b)(2).

2.      The predicates for the relief requested in this Motion are Bankruptcy Rule 2004 and Local Rule 2004-1.

3.      SunTrust confirms its consent pursuant to Local Rule 9013-l(f) to entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A.      Procedural Background

4.      On July 1, 2016 (the "Petition Date"), Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson" and together with Alchemy, the "Debtors") commenced these bankruptcy cases (the "Chapter 7 Cases") by each filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

5.      On or shortly after the Petition Date, the Office of the United States Trustee appointed George L. Miller as the duly authorized chapter 7 trustee to the Estates of the Debtors.

### B.      General Background

6.      Prior to the commencement of these bankruptcy cases, the Debtors operated as a film and media distributor.  The Debtors, among other things, acquired, licensed and distributed feature films, television series, and other programming via multiple platforms, including online, electronic, and hard copy distribution channels.

7.      The Debtors' affiliate, Calrissian LP ("Calrissian"), is a holding company with no business operations and no employees.  It was originally created to invest in assets in, and related to, the film industry.  Upon the filing of its bankruptcy case,[3] Calrissian had two assets – the equity interests in chapter 7 debtor Alchemy, and contingent claims it shared with its investors against the seller of Alchemy, Nu-Image, Inc. ("Nu Image") and other parties.  [Calrissian D.I. 52], ¶ 4.

### 1.      The August 2014 Purchase Agreement

8.      On August 18, 2014, Calrissian and Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., and Virgo Investment Group, LLC (collectively, the "Virgo Entities") entered into a Purchase Agreement (the "August 2014 Purchase Agreement") with Nu Image Holdings, Nu Image, and certain other equity holders (collectively, the "Sellers") to purchase all of the outstanding equity interests in Millennium Entertainment, LLC (the "August 2014 Transaction").   Following the sale, Calrissian changed the name of Millennium Entertainment LLC to Our Alchemy, LLC.

9.      Less than a month later, Alchemy, as borrower, entered into a Revolving Credit and Term Loan Agreement, dated September 4, 2014 (as amended, the "Credit Agreement"), with certain lenders (the "Lenders"), and SunTrust, as both a Lender and the Administrative Agent. Under the terms of the Credit Agreement, the Lenders agreed to extend certain loans to Alchemy under a first-lien facility consisting of: (i) a revolving credit facility (the "Revolver") of the lesser of (A) $26,000,000 and (B) a borrowing base calculation consisting of eligible accounts receivable and eligible inventory; and (ii) a term loan (the "Term Loan" and, together with the Revolver, the

---

[3] Calrissian filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.  *See In re Calrissian LP*, Case No.17-10356 (KG).  References to the docket in the Calrissian bankruptcy case are styled "Calrissian D.I. ___".

"Loans") in the principal amount of $33,500,000.  The Loans were instrumental in financing the Alchemy acquisition.

10.    To induce the Lenders to extend the Loans, and as a condition of the Credit Agreement, Calrissian agreed, in favor of SunTrust, to unconditionally and irrevocably guarantee all of Alchemy's obligations under the Credit Agreement pursuant to a Guaranty and Security Agreement, dated as of September 4, 2014 (as amended, the Guaranty Agreement", and together with the Credit Agreement, the "Loan Documents").  More specifically, pursuant to the terms of the Guaranty Agreement, Calrissian (i) granted to SunTrust a first-priority security interest in substantially all of Calrissian's property and (ii) unconditionally and irrevocably guaranteed, jointly and severally, Alchemy's obligations on the Loans.

### 2.    The May 2015 Purchase Agreement

11.    On May 7, 2015, Alchemy entered into an asset purchase agreement (the "May 2015 Purchase Agreement") with ANconnect LLC ("ANconnect"), the physical distribution arm of Anderson Media Corporation, which is an affiliate of Anderson Merchandisers, LLC ("Anderson").  Pursuant to the ANconnect Agreement, Alchemy agreed to purchase and assume from ANconnect certain assets and liabilities of ANconnect's business (the "May 2015 Transaction").

12.    In order to purchase the assets sold in the May 2015 Transaction, Alchemy borrowed more money from the Lenders pursuant to the terms of the Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July, 9 2015, which amended, restated and superseded the Credit Agreement.  Subject to the terms of the Credit Agreement, SunTrust and the Lenders provided Alchemy with certain revolving and credit term loan facilities in an aggregate principal amount of $59,500,000, which amount Calrissian unconditionally and irrevocably guaranteed (the "Guaranteed Loans").

13.     Unable to pay its debts, and with over $46,000,000 of the Guaranteed Loans still outstanding, on July 1, 2016, as noted above, Alchemy filed a petition seeking liquidation under chapter 7 of the Bankruptcy Code.

### 3.     The Nu Image Arbitration

14.     On February 29, 2016, Nu Image, on behalf of the Sellers, commenced an arbitration proceeding before JAMS (the "Arbitration") against Calrissian and the Virgo Entities related to post-closing payments allegedly due under the August 2014 Purchase Agreement. Calrissian asserted counterclaims against Nu Image, including claims of misrepresentations and certain business tort claims related to the August 2014 Transaction.  *See* Calrissian Stay Relief Motion [Calrissian D.I. 9] at 1 & ¶¶ 10-11.

15.     Following Calrissian's bankruptcy filing, the Court entered an order [Calrissian D.I. 32] modifying the automatic stay of section 362 of the Bankruptcy Code to permit the Arbitration to proceed.

16.     Ultimately, the arbitrator determined that Calrissian and the Virgo Entities were liable for certain post-closing payments under the August 2014 Purchase Agreement and certain legal fees and expenses related to the Arbitration.  In accordance with the applicable arbitration rules, Calrissian and the Virgo Entities appealed the arbitrator's decision to a JAMS arbitration tribunal.  However, that appeal ultimately proved unsuccessful, as well.  *See* Calrissian Motion to Dismiss [Calrissian D.I. 52] ¶ 11.

### 4.     SunTrust v. Calrissian Litigation

17.     By the end of 2015, Alchemy had been in default under the Loan Documents by, among other things, failing to prepay certain obligations under the Credit Agreement, failing to maintain minimum EBITDA, and failing to maintain minimum liquidity as required under the terms of the Credit Agreement.

18.     As a result of the existing defaults, and as permitted by the terms of the Credit Agreement, on June 15, 2016, SunTrust (on behalf of itself and the Lenders) notified Alchemy and Calrissian that all obligations owed under the Credit Agreement were due and payable immediately and accelerated the obligations (the "Debt Acceleration Notice").

19.     As with the Debt Acceleration Notice, Alchemy's bankruptcy filing and inability to pay its debts accelerated the maturity of Calrissian's obligations under the Guarantee Agreement, making them due and payable to SunTrust immediately.

20.     Despite the foregoing, Calrissian never paid SunTrust any amounts owed under the terms of the Loan Documents.

21.     Accordingly, on August 5, 2016, SunTrust, in its capacity as administrative agent, commenced a civil action (the "Guaranty Litigation") against Calrissian in the Supreme Court of the State of New York for breach of contract arising out of the Guaranty Agreement seeking the amounts owed by Calrissian under the Loan Documents (the "Guaranty Claim").

22.     On December 22, 2016, SunTrust served Calrissian and the Virgo Entities discovery requests seeking, *inter alia*, to examine the facts and circumstances regarding (i) the August 2014 Transaction, (ii) the May 2015 Transaction, (iii) borrowing base certificates issued in connection with the Loan Documents, (iv) Alchemy's financial projections or business plans, (v) Alchemy's enterprise value, (vi) Alchemy's use of funds received from Calrissian, the Virgo Entities, and/or the Lenders, (vii) any covenant breaches or events of default under the Loan Documents, (viii) Alchemy's Chapter 7 bankruptcy filing, and (ix) the Virgo Entities' apparent control over Alchemy.

23.     For the months that followed, the requested documents were never produced, and ultimately, Calrissian filed for bankruptcy.

## RELIEF REQUESTED AND REASONS THEREFOR

24.     The Lenders are the largest creditors of the Debtors and their estates.  As such, SunTrust has investigated (and continues to investigate) the Debtors' business and financial affairs, as well as potential assets and claims the Debtors' estates may hold.  In connection therewith, and by this Motion, SunTrust requests authorization to conduct an examination of the Virgo Entities, including propounding requests for the production of documents, substantially in the form attached as **Schedule 1** to the Proposed Order.

25.     Pursuant to Bankruptcy Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity."  FED. R. BANKR. P. 2004(a).  The permissive statutory language gives the Court discretion in determining whether to authorize a Rule 2004 examination.  *In re Mattera*, 2007 WL 1813763, at *2 (Bankr. D.N.J. June 13, 2007).

26.     A Rule 2004 examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  FED. R. BANKR. P. 2004(a).  The scope of a Rule 2004 examination is "unfettered and broad", and the breadth of the examination is commonly likened to a "fishing expedition."  *In re Washington Mut., Inc.*, 408 B.R. 45, 49 (Bankr. D. Del. 2009).  The purpose of an examination is to enable a party in interest to discover the nature and extent of the bankruptcy estate.  *Id.*  In connection therewith, proper goals of Rule 2004 examinations include "discovering assets, examining transactions, and determining whether wrongdoing has occurred."  *Id.*  Notwithstanding, a Rule 2004 examination is not without limits.  *Id.*  That is, "[i]t may not be used for purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry."  *Id.* (internal quotation marks omitted).

27.     A Rule 2004 examination is warranted here.  As set forth in **Schedule 1** to the Proposed Order, the requested documents are necessary in order for SunTrust and the Lenders (the

largest creditors) to examine certain pre-petition transactions and potentially discover assets of the estates. More specifically, SunTrust seeks documents related to, among other things, Calrissian's finances, as well as the August 2014 Transaction and May 2015 Transaction. SunTrust believes that the requested documents may uncover colorable claims that could benefit the estates and their creditors.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1

28.     Pursuant to Local Rule 2004-1, undersigned counsel hereby certifies that prior to filing this Motion, he has attempted to informally obtain the information sought herein and has communicated with counsel to the Virgo Entities with respect to that request. As of the date hereof, no agreement has been reached.

## NOTICE

29.     Pursuant to Local Rule 2004-1(d), SunTrust will provide notice of this Motion to (i) counsel to the Chapter 7 Trustee, (ii) counsel to the Virgo Entities and (iii) the United States Trustee.

## CONCLUSION

WHEREFORE, SunTrust requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, compelling the Virgo Entities to produce the documents set forth on **Schedule 1** to the Proposed Order within 14 days of entry of the Proposed Order, or such other date as may be agreed to by SunTrust and the Virgo Entities.

Dated: May 21, 2018                  **ASHBY & GEDDES, P.A.**

                                     */s/ Ricardo Palacio*
                                     _____
                                     Ricardo Palacio (No. 3765)
                                     Stacy L. Newman (No. 5044)
                                     500 Delaware Avenue, 8th Floor
                                     Wilmington, DE 19899
                                     Telephone: (302) 654-1888

Email: rpalacio@ashbygeddes.com
Email: snewman@ashbygeddes.com

and

**AKIN GUMP STRAUSS HAUER & FELD LLP**
David P. Simonds
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067
Telephone: (310) 229-1000
Email: dsimonds@akingump.com

William F. Mongan
1 Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Email: wmongan@akingump.com

*Counsel to SunTrust Bank*