IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) ) | Chapter 7 |
| OUR ALCHEMY, LLC *et al.*, | ) ) | Case No. 16-11596 (KG) |
| Debtors.[1] | ) ) ) ) ) ) | Hearing Date: June 21, 2018 at 2:00 p.m. (ET) <br> Obj. Deadline: June 5, 2018 at 4:00 p.m. (ET) <br><br> Re: D.I. 571 |

### VIRGO ENTITIES' OBJECTION TO THE MOTION OF SUNTRUST BANK, AS ADMINSTRATIVE AGENT FOR ITSELF AND CERTAIN OTHER LENDERS, FOR AN ORDER UNDER RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE COMPELLING THE PRODUCTION OF DOCUMENTS FROM THE VIRGO ENTITIES

Virgo Investment Group, LLC ("Virgo"), Virgo Societas Partnership III (Onshore), L.P. ("Virgo Onshore"), and Virgo Societas Partnership III (Offshore), L.P. ("Virgo Offshore"), (collectively, the "Virgo Entities"), hereby respectfully object to the *Motion of SunTrust Bank, as Administrative Agent for Itself and Certain Other Lenders, for an Order Under Rule 2004 of the Federal Rules of Bankruptcy Procedure Compelling the Production of Documents from the Virgo Entities* [D.I. 571] (the "Rule 2004 Motion") filed by SunTrust Bank N.A. ("SunTrust") for the reasons set forth below. This objection is timely pursuant to the *Notice of Motion of SunTrust Bank, as Administrative Agent for Itself and Certain Other Lenders, for an Order Under Rule 2004 of the Federal Rules of Bankruptcy Procedure Compelling the Production of Documents from the Virgo Entities* [D.I. 571] filed on May 21, 2018.

---

[1] The Debtors are: Our Alchemy, LLC, Case No. 16-11596 (KG), and Anderson Digital, LLC, Case No. 16-11597 (KG).

{00023335. }

**Background**

1. On July 1, 2016 (the "Petition Date"), Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson" and together with Alchemy, the "Debtors") each filed a voluntary petition for relief in this Court under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases").

2. Anderson is a wholly-owned subsidiary of Alchemy. Alchemy is, in turn, a wholly-owned subsidiary of Calrissian, L.P. ("Calrissian"). Calrissian filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 15, 2017 in this Court. *See In re Calrissian*, Case No 17-10356 (KG) (the "Calrissian Bankruptcy").[2]

3. Calrissian is a limited partnership formed under the laws of Delaware. Virgo Onshore and Virgo Offshore, parties to which the Rule 2004 Motion discovery is directed, are two of the several limited partners in Calrissian. These two limited partners in Calrissian have lost over $47 million from their investment in Calrissian, through the losses sustained by Alchemy, its operating subsidiary. Nonetheless, SunTrust Bank seeks this duplicative, overly broad, discovery of fifty-three compound requests with multiple sub-parts constituting hundreds of requests, attempting to delve into the private and proprietary investment processes and decision-making of these limited partners and Virgo in an attempt to blame these investors for SunTrust's losses.

A.   **The 2014 Transaction**

4. Calrissian was originally created to invest in assets in, and related to, the film industry. Rule 2004 Motion [D.I. 571] ¶ 7. On August 18, 2014, Calrissian and Virgo Onshore

---

[2] References to the docket in the Calrissian bankruptcy case are styled "Calrissian D.I. ___".

{00023335. }

and Virgo Offshore[3] entered into a Purchase Agreement (the "Purchase Agreement") with Nu Image Holdings, Nu-Image, Inc. ("Nu Image") and certain other equity holders (collectively, the "Sellers") to purchase all of the outstanding equity interest in Millennium Entertainment, LLC ("Millennium") (the "2014 Transaction").  Millennium's name was later changed to Our Alchemy, LLC.

5. As part of the 2014 Transaction, Alchemy and SunTrust, along with other members of Alchemy's senior lender group (collectively with SunTrust, the "Lenders"), entered into a Revolving Credit and Term Loan Agreement, dated September 4, 2014 (as amended, the "Credit Agreement").  In connection with the Credit Agreement, Calrissian agreed to guaranty Alchemy's obligations under the Credit Agreement pursuant to the terms of the Guaranty and Security Agreement, dated September 4, 2014 (as amended, the "Guaranty Agreement," and together with the Credit Agreement, the "Loan Documents").

### B. The 2015 Transactions

6. On May 7, 2015, Alchemy entered into an asset purchase agreement (the "APA") with ANconnect, LLC ("ANconnect"), the physical distribution arm of Anderson Media Corporation, which is an affiliate of Anderson Merchandisers, LLC ("Anderson Merchandisers").  On July 9, 2015, Calrissian, OA Investment Holdings LLC ("OA Investment"), a direct subsidiary of Calrissian, and ARC Entertainment, LLC ("ARC") executed a contribution agreement (the "Contribution Agreement"), pursuant to which Calrissian acquired substantially all of the assets, and certain liabilities, associated with ARC's film distribution and film festival businesses.  Pursuant to the Contribution Agreement, these assets and liabilities

---

[3] Virgo Onshore and Virgo Offshore executed the Purchase Agreement only with respect to Section 6.9 which sets forth the Virgo Entities' guaranty in favor of the Sellers for the payment of all liabilities and obligations under the Purchase Agreement.

were subsequently contributed to OA Investment. The transactions executed pursuant to the APA and the Contribution Agreement are hereinafter referred to as the "2015 Transactions."

7. Calrissian and the Virgo Entities ultimately learned that Alchemy (formerly Millennium) had been losing, and would continue to lose, substantial amounts of money. Calrissian Motion to Dismiss [Calrissian D.I. 52] ¶ 9. In fact, Alchemy's losses continued unabated even after Alchemy's management was replaced, an additional investment of approximately $14 million in the form of junior debt by the Virgo Entities (bringing the Virgo Entities' total losses to approximately $47.4 million) and the retention of financial advisors at the insistence of senior lenders of Alchemy and Calrissian. *Id*.

8. Alchemy ultimately filed for chapter 7 protection before this Court on July 1, 2016.

### C. SunTrust v. Calrissian Litigation

9. On August 5, 2016, SunTrust, in its capacity as administrative agent, filed suit against Calrissian in the Supreme Court of the State of New York (the "Guaranty Litigation") for breach of contract arising out of the Guaranty Agreement.

10. On December 22, 2016, SunTrust served Calrissian and Virgo discovery requests in the Guaranty Litigation seeking, *inter alia*, to examine certain information related to the 2014 Transaction, the 2015 Transactions, the Loan Documents and Alchemy's and Calrissian's businesses. As described below, more than half of the document requests served by SunTrust on Virgo in the Guaranty Litigation are identical, or nearly identical, to the requests now propounded by SunTrust through its Rule 2004 Motion before the Court, demonstrating that the Rule 2004 Motion is nothing more than a way to use the bankruptcy process to obtain discovery for SunTrust's private litigation against Calrissian related to its guarantee.

### D.    SunTrust's Duplicative Requests for Documents

11.    On March 29, 2018, George L. Miller (the "Alchemy Trustee"), chapter 7 trustee to the estate of Our Alchemy, LLC (Case No. 16-11596 (KG)) and Anderson Digital, LLC (Case No. 16-11597 (KG)) in these Chapter 7 Cases, propounded upon the Virgo Entities fifty-three (53) document requests identical to those set forth in Schedule 1 of the Rule 2004 Motion. Indeed, a review of the instructions pertaining to SunTrust's Rule 2004 document requests indicates that SunTrust simply copied the requests made by the Alchemy Trustee. Instruction number thirteen (13) provides that supplemental responses "must be served on the **Trustee**." Similarly, instruction number eighteen (18) indicates that documents withheld on the basis of privilege should be identified "to provide the **Trustee** an opportunity to assess the claim of privilege."

12.    On April 13, 2018, just two weeks after the Alchemy Trustee propounded its document requests on the Virgo Entities, the Virgo Entities received identical requests for the production of documents from SunTrust.

13.    On or about May 2, 2018, the Alchemy Trustee agreed to narrow the focus of its fifty-three (53) requests for documents to address narrowly tailored information that includes documents that relate to Calrissian's financial position, and any transactions between Calrissian and Virgo Entities or affiliates. Because the Alchemy Trustee controls all of Alchemy's corporate files and servers, the Alchemy Trustee has narrowed the requests to reflect, in part, the fact that the Virgo Entities are not the appropriate source to request Alchemy documents. The Virgo Entities have been in communication with SunTrust's counsel and counsel for the Alchemy Trustee in an effort to provide them with the documents and information requested, but did not receive the promised narrowed requests until May 2, 2018. Since that narrowed scope

was agreed upon, the Virgo Entities have produced several thousand pages of documents in response to the Alchemy Trustee's requests, and continue to provide documents on a rolling basis.

14. Despite these efforts to resolve the document requests without the need for the intervention of the Court, SunTrust served the Virgo Entities with notice of its Rule 2004 Motion in the above captioned bankruptcy proceedings and the Calrissian Bankruptcy.

15. On May 18, 2018, SunTrust served the Virgo Entities with *Notice of Motion of SunTrust Bank, as Administrative Agent for Itself and Certain Other Lenders, for an Order Under Rule 2004 of the Federal Rules of Bankruptcy Procedure Compelling the Production of Documents from the Virgo Entities* [Calrissian D.I. 72] propounding **identical requests** for the production of documents to those set forth in Schedule 1 to the Rule 2004 Motion and the requests originally propounded by the Alchemy Trustee.

16. On May 21, 2018, SunTrust also served the Virgo Entities with the *Notice of Motion of SunTrust Bank, as Administrative Agent for Itself and Certain Other Lenders, for an Order Under Rule 2004 of the Federal Rules of Bankruptcy Procedure Compelling the Production of Documents from the Virgo Entities* [D.I. 571] in these Chapter 7 Cases, yet again propounding **identical requests** for the production of documents to those requested in the Calrissian Bankruptcy and the requests originally propounded by the Alchemy Trustee.

## Arguments and Authorities

### A.    SunTrust Has Failed to Establish Good Cause

17. SunTrust's Rule 2004 Motion is inappropriate and should be denied. Rule 2004 of the Federal Rules of Bankruptcy Procedure allows a court to authorize a party in interest to conduct an examination relating to the "acts, conduct, or property or to the liabilities and

financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004. Although Rule 2004 is broad, it is not without limits. The party seeking to conduct an examination under Rule 2004 bears the burden of showing "good cause" for the examination which it seeks. *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016) (citing *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)). "Good cause" is shown by establishing that the proposed examination "is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship." *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (citing *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)) (internal quotations omitted). In determining whether "good cause" exists, a court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). Inquiries that seek far-reaching information require a higher showing of good cause. *See In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008).

18.   Although Rule 2004 allows for "fishing expeditions," there must be good cause to do so. Here, SunTrust has failed to satisfy its burden of showing "good cause" for the examination which it seeks. SunTrust claims that it believes that "the requested documents may uncover colorable claims that could benefit the estate and its creditors." Rule 2004 Motion [D.I. 571] ¶ 26. However, SunTrust fails to show how this information is necessary to establish such claims; rather, SunTrust baldly asserts that the requested documents may uncover claims that could benefit the estate and its creditors—namely SunTrust. Further, SunTrust has not, and cannot, show that denial of its intrusive Rule 2004 Motion will result in undue hardship.

SunTrust has other direct avenues in which it may pursue the information it has requested from the Virgo Entities – avenues that it has *already* made use of: (1) the Calrissian Bankruptcy, and (2) the Guaranty Litigation in the State of New York. Finally, the nature of documents SunTrust seeks from the Virgo Entities are extremely broad and far-reaching into the business activities of the Virgo Entities and demand a higher showing of "good cause." Because SunTrust has failed to satisfy its burden of establishing "good cause" its Rule 2004 Motion must be denied.

### B. SunTrust's Rule 2004 Motion is Duplicative and Overly Broad

19. Despite the permissible breadth of an examination under Rule 2004, it may not be used "for purposes of abuse or harassment" and may not "stray into matters which are not relevant to the basic inquiry." *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984); *see also Countrywide Home Loans*, 384 B.R. at 394 (noting that a Rule 2004 examination "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."). SunTrust's requests must relate to matters "which may affect the administration of the debtor's estate." *In re E. W. Resort Dev. V, L.P., L.L.L.P.*, No. 10-10452 (BLS), 2014 WL 4537500, at *6 (Bankr. D. Del. Sept. 12, 2014) (internal quotations omitted). SunTrust's Rule 2004 Motion claims to seek documents related to, among other things, "Calrissian's finances, as well as the August 2014 Transaction and May 2015 Transaction." Rule 2004 Motion [D.I. 571] ¶ 27. As indicated by SunTrust in its Rule 2004 Motion and as evidenced by the extreme breadth of the document requests propounded by SunTrust, the scope documents actually sought is far beyond those matters which relate to the Debtors or the administration of these Chapter 7 Cases.

### i. *The Rule 2004 Motion Cannot Be Used for the Purposes of Harassment*

20. An examination under Rule 2004 may not be used for the purpose of abuse or harassment. *See Mittco*, 44 B.R. at 36. Here, the fifty three (53) broad requests for documents propounded by SunTrust are **identical** to the requests made by the Alchemy Trustee on March

{00023335. }

8

29, 2018, and are **identical** to those filed by SunTrust in the Calrissian Bankruptcy. And more than half[4] of the document requests propounded by SunTrust pursuant to its Rule 2004 Motion are **identical, or nearly identical**, to the document requests served by SunTrust on Virgo in connection with the Guaranty Litigation in the Supreme Court of the State of New York. Further, the Virgo Entities are cooperating with the Alchemy Trustee to produce the responsive documents to the narrow requests made by the Alchemy Trustee on May 2, 2018. The Alchemy Trustee was appointed to represent the interests of the Debtors' bankruptcy estates and the interests of their creditors. SunTrust has not shown that the Alchemy Trustee has failed in its representation of these interests in order to warrant the intrusive and duplicative discovery it now seeks through its Rule 2004 Motion. SunTrust's duplicative discovery is impermissible and should not be authorized by the Court. *See In re Buick,* 174 B.R. 299, 305–06 (Bankr. D. Colo. 1994) (noting that "[t]he Court is reticent to open the door to Rule 2004 examinations which might be identical or duplicative of existing discovery needs and activities of other interested parties.").

### ii. *SunTrust's Requests Are Impermissibly Broad*

21. An examination under Rule 2004 may not "stray into matters which are not relevant to the basic inquiry." *Mittco*, 44 B.R. at 36. Rule 2004 only allows a court to permit a party in interest to conduct an examination into the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004. Many of the document requests propounded by SunTrust, however, seek information that far exceeds these specific bounds.

---

[4] The document request numbers 1, 4, 5, 7-10, 14, 15, 19, 21, 23-25, 28, 30-37, 41-49, and 51 propounded by SunTrust upon the Virgo Entities are identical, or nearly identical, to the document requests propounded by SunTrust upon Virgo in connection with the Guaranty Litigation.

22. The documents requested by SunTrust in request numbers 24, 30-33, 39-40, and 53 encompass information that is highly intrusive into the Virgo Entities' business and information that is unrelated to the Debtors or their bankruptcies. For example, request number 24 seeks "[a]ll Documents and Communications Relating to [the Virgo Entities] balance sheets, solvency, ability to pay [the Virgo Entities'] debts as they come due." The documents requested in request numbers 30 and 31 encompass a period of time that is more than three and a half years before the Virgo Entities acquired an indirect interest in Alchemy. Such requests are highly intrusive, burdensome and should not be permitted by this Court.

23. SunTrust's document request numbers 2, 3, 4, 12, 23, 24, 27, 30-34, 38, 40, 41, 47-49, and 53 largely encompass information related to the business of non-Debtor entities, such as Calrissian and the Virgo Entities. For example, request number 12 seeks "[a]ll Documents and Communications Relating to Calrissian." Request number 38 seeks "[a]ll Documents and Communications Relating to (i) Calrissian's decision to file Chapter 11 relief or (ii) the timing of the Calrissian Chapter 11 filing." As evidenced by such requests, a substantial portion of the information sought by SunTrust is unrelated to the Debtors' business, bankruptcy or the spurious allegations contained in the *Motion of SunTrust Bank, as Administrative Agent for Itself and Certain Other Lenders, for an Order (I) Converting the Chapter 11 Case of Calrissian LP to a Case Under Chapter 7 and (II) Granting Related Relief* [Calrissian D.I. 70] filed by SunTrust in the Calrissian Bankruptcy.

24. As set forth above, the document requests propounded by SunTrust upon the Virgo Entities through the Rule 2004 Motion are outside the scope of what is permitted under Rule 2004, and the intrusion sought by SunTrust only serve the purposes of harassment. Many of the document requests propounded by SunTrust relate to Alchemy's business records.

However, unlike the Alchemy Trustee, the Virgo Entities do not have access to a complete record of Alchemy's files, servers or company documents. The Virgo Entities have expressed and demonstrated their willingness to cooperate with the Alchemy Trustee – the party appointed to represent the interests of the Debtors and their creditors – to produce the documents the Alchemy Trustee has determined may be relevant. Because SunTrust's document requests are overly broad, extremely burdensome and entirely duplicative of the requests made by the Alchemy Trustee, SunTrust's Rule 2004 Motion should be denied.

25.    Pursuant to instruction twenty-one (21) of SunTrust's document requests, "[e]xcept where otherwise specified, the Requests seek Documents dated, created, or otherwise obtained on or after January 1, 2013." The Virgo Entities object to the Requests' propounded by SunTrust which seek information for this date range on the basis that such requests are unduly burdensome and overbroad. These requests seek information that is unrelated to the administration of Alchemy's bankruptcy, as the date range for such requests cover a period of time prior to the Virgo Entities indirect ownership interest in Alchemy. More specifically, the Virgo Entities object to documents requested by SunTrust in request numbers 6(i), 6(ii), 6(iv), 7, 24, 25, 27, 30, 31(i), 31(ii) and 33, as such requests seek highly confidential and proprietary information regarding the Virgo Entities' business decisions prior to the Virgo Entities affiliation with Alchemy. Accordingly, the Virgo Entities object to each of the requests for documents contained in SunTrust's Rule 2004 Motion on the basis that such requests are overbroad as to scope and time.

### C. SunTrust's 2004 Requests Are Otherwise Objectionable

26.    The Virgo Entities object to each of SunTrust's requests for documents, with the exception of request numbers 20, 44, 46 and 52, on the basis of attorney-client privilege.

SunTrust defines each entity, individual and the term "You" to include "Professionals". The term "Professionals" is broadly defined by SunTrust to include counsel or any other person involved in providing services. Thus, with the exception of these four requests, the documents sought by SunTrust may encompass information subject to the attorney-client privilege.

27. The Virgo Entities further object to document request numbers 3, 5, 7, 9(i), 33, 37, 39, 40, 48, 49, 51, and 53 on the basis that the information sought by SunTrust contains attorney work product. As described in paragraph 26 of this objection, the document requests propounded by SunTrust broadly define the term "You" and "Your" to encompass the Virgo Entities' attorneys. As a result, the foregoing requests encompass information and documents prepared by the Virgo Entities' attorneys. The Court should not require the Virgo Entities to produce information that falls under the work product protection.

28. Although SunTrust's Rule 2004 Motion lists fifty-three (53) requests for documents, there are many more categories of documents sought by SunTrust through its Rule 2004 Motion as many of its requests are compound. The Virgo Entities object to document request numbers 1, 3, 5-9, 24, 26, 30-35, 37, 38, 44-46, and 53, on the basis that these requests for documents are compound and contain up to four subcategories of document requests.

29. The Virgo Entities further object to the information requested by SunTrust in request numbers 2, 11, 12, and 13 on the basis that such requests are unduly burdensome and overbroad without limitation as to time and scope.

30. The Virgo Entities further object to the information requested by SunTrust in request numbers 40 and 41, on the basis that the information sought by SunTrust through these requests encompasses confidential information generated in connection with the arbitration proceeding filed by Nu Image against Calrissian and the Virgo Entities.

**Reservation of Rights**

31. The Virgo Entities expressly reserve, and do not waive, their right to amend, modify or supplement this Objection and to object to the Rule 2004 Motion and any and all discovery requests of SunTrust on any grounds permitted by law. The Virgo Entities expressly reserve and do not waive their right to assert the attorney-client privilege or any other privilege recognized under governing law with respect to any discovery sought by SunTrust.

**Conclusion**

32. By reason of the foregoing, the Rule 2004 Motion filed by SunTrust should be denied and the Court should grant such other and further relief as the Court otherwise deems necessary or appropriate.

Dated: June 5, 2018
Wilmington, DE

**THE ROSNER LAW GROUP LLC**
*/s/ Scott J. Leonhardt*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
824 Market Street, Suite 810
Wilmington, DE 19801
Tel.: 302-777-1111
leonhardt@teamrosner.com

-and-

**DIAMOND MCCARTHY LLP**
Andrea Levin Kim
909 Fannin Street, 37th Floor
Houston TX 77010
Tel: 713-333-5107
akim@diamondmccarthy.com

*Counsel for Virgo Investment Group, LLC, Virgo Societas Partnership III (Onshore), L.P. and Virgo Societas Partnership III (Offshore), L.P.*