## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Our Alchemy, LLC, *et al.*,[1]<br><br>       Debtors. | Chapter 7<br><br>Case No. 16-11596 (KG)<br><br>(Jointly Administered)<br><br>**Related Doc. Nos. 610, 641, 645, 646, 671, 677** |

### ORDER APPROVING THE SALE OF
### CERTAIN OF THE DEBTORS' ASSETS

Upon the motion (the "**Sale Motion**")[2] of George L. Miller, in his capacity as chapter 7 trustee (the "**Trustee**") for the Debtors in the above-captioned bankruptcy cases (the "**Bankruptcy Cases**") for an order (this "**Sale Order**") authorizing the Sale of the Acquired Assets pursuant to the Stalking Horse Agreement[3], free and clear of all claims, liens and encumbrances and providing certain related relief; and the Bankruptcy Court having entered the *Order (I) Establishing Bidding Procedures for the Sale of Certain of the Debtors' Assets; (II) Approving Break-Up Fee and Transaction Expenses; (III) Approving Form And Manner Of Sale Notice; (IV) Scheduling an Auction and a Hearing to Consider the Approval of the Sale; and (V) Granting Certain Related Relief,* on July 27, 2018 (the "**Bidding Procedures Order**"); and the Auction having been held on September 7, 2018, for the consideration of Qualified Bids and the selection of a Prevailing Bidder and Second-Highest Bidder; and upon the Bankruptcy Court's consideration of the Sale Motion, the declarations submitted in support of the Sale Motion, the

---

[1] The Debtors are: Our Alchemy, LLC, Case No. 16-11596, and Anderson Digital, LLC, Case No. 16-11597.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings provided in the Sale Motion, the Bidding Procedures, or the Stalking Horse Agreement as applicable.

[3] As used herein, the term "Stalking Horse Agreement" shall refer to the Amended Asset Purchase Agreement dated as of September 7, 2018 between the Trustee and the Stalking Horse Purchaser, as may be amended or supplemented.

record of the bidding procedures hearing held on July 25, 2018, and the Sale Hearing held on September 17, 2018 (the "**Sale Hearing**") with respect to the Sale Motion, the objections thereto, if any, and the testimony and evidence admitted at the Sale Hearing; and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby:

**FOUND, CONCLUDED AND DETERMINED THAT:[4]**

A.    **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction to consider this Sale Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105, 363, and 503, Bankruptcy Rules 2002, 6004, 9006, and 9014 and Rules 2002-1(b), 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

B.    **Notice**.    As evidenced by affidavits of service previously filed with the Bankruptcy Court, and based on representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, and the transactions contemplated by the Stalking Horse Agreement (the "**Sale Transaction**") has been provided to all parties entitled thereto; (ii) such notice is good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, or the Sale Transaction is or shall be required.

C.    **Opportunity to Object**.    All parties in interest have been given a reasonable opportunity to object and to be heard with respect to the Sale Motion, the Auction, the Sale

---

[4] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Hearing, and the Sale Transaction, including, without limitation, the following: (1) the Office of the United States Trustee; (2) counsel for the Debtors; (3) counsel to SunTrust; (4) counsel to the Directors Guild of America, Inc., the Screen Actors Guild – American Federation of Television and Radio Artists, and the Writers Guild of America West, Inc.; (5) counsel to the Stalking Horse Purchaser; (6) all entities known by the Trustee to have expressed a *bona fide* interest in purchasing any of the Acquired Assets; (7) all creditors listed on Schedules D and E for each Debtor in the Schedules of Assets and Liabilities filed by the Trustee in the Bankruptcy Cases; (8) the Internal Revenue Service and all other applicable federal, state, county, and municipal taxing authorities; (9) the U.S. Environmental Protection Agency and the California Environmental Protection Agency; (10) the U.S. Attorneys for the Central District of California and the District of Delaware; and (11) the state attorneys general and state labor regulatory authorities for California and Delaware; (12) all persons and entities that have filed a request for service of filings in these Bankruptcy Cases pursuant to Bankruptcy Rule 2002; and (13) all of the Debtors' other known creditors, equity interest holders and/or parties in interest.

      D.    **Auction**. The Trustee adequately marketed the Acquired Assets. The marketing process created by the Bidding Procedures provided potential bidders with a full and fair opportunity to submit bids and participate in the Auction. The Auction was conducted fairly and in good faith, without collusion and in accordance with the Bidding Procedures Order. At the Auction, the Stalking Horse Purchaser was selected as the Prevailing Bidder with a Qualified Bid of $3,250,000.00, and Shout! Factory, LLC was selected as the Second-Highest Bidder (the "Second-Highest Bidder") with a Qualified Bid of $3,075,000.00 (the "Second-Highest Bid"). The Trustee's determination that the Stalking Horse Agreement constitutes the best offer for the Acquired Assets constitutes a valid and sound exercise of the Trustee's business judgment.

3

E.    **Arm's-Length Sale**.  The Sale Transaction contemplated by the Stalking Horse Agreement and this Order was negotiated and is being undertaken by the Trustee, and the Stalking Horse Purchaser at arm's-length, without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m).  The Stalking Horse Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Acquired Assets, complied with the Bidding Procedures Order, and agreed to subject its bid to the competitive Bidding Procedures approved in the Bidding Procedures Order.  None of the Stalking Horse Purchaser, its affiliates or their respective representatives is an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31).  None of the Trustee, the Stalking Horse Purchaser, or their respective affiliates or representatives has engaged in any conduct that would cause or permit the Stalking Horse Agreement to be avoided under Bankruptcy Code section 363(n) or has acted in any improper or collusive manner with any person.  The terms and conditions of the Sale Transaction and the Stalking Horse Agreement, including without limitation the consideration provided therein, are fair and reasonable and shall not be avoided under Bankruptcy Code section 363(n).

F.    **Good Faith Purchaser**.  The Stalking Horse Purchaser, its affiliates, and their respective representatives have all proceeded in good faith and without collusion in all respects in connection with the Sale Transaction, the Stalking Horse Agreement, the Bidding Procedures, and this sale proceeding.  Such persons are therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction unless, prior to the Closing, such authorization is duly stayed pending such appeal.

4

G.    **Corporate Authority**.  The Trustee and the Debtors: (i) have full corporate power and authority to execute the Stalking Horse Agreement and all other agreements, instruments, and documents contemplated thereby and to consummate their obligations with respect to the Sale Transaction; (ii) have taken all corporate action necessary to authorize and approve their entry into and performance in respect of the Stalking Horse Agreement and the Sale Transaction; and (iii) require no consents or approvals to consummate the Sale Transaction, other than those expressly provided for in the Stalking Horse Agreement and the entry of this Order.  With respect to the Trustee and the Debtors, the Sale Transaction has been duly and validly authorized by all necessary corporate action and/or approval by the Bankruptcy Court.

H.    **Sale in Best Interests**.  The relief requested in the Sale Motion is in the best interests of the Debtors, their Estates, their creditors and all other parties in interest.  Immediate approval by the Bankruptcy Court of the Sale Transaction is necessary and appropriate to maximize the value of the Debtors' Estates.

I.    **Business Justification**.  The Trustee has demonstrated both good, sufficient and sound business reasons and compelling circumstances for the Bankruptcy Court to authorize the Trustee's entry into the Stalking Horse Agreement and the consummation of the Sale Transaction under Bankruptcy Code section 363(b) outside the ordinary course of business. Entry of this Order approving the Sale Transaction is a necessary condition precedent to the Stalking Horse Purchaser's consummation of the Sale Transaction.

J.    **Consideration**.  The Purchase Price and other consideration to be provided by the Stalking Horse Purchaser to the Trustee pursuant to the Stalking Horse Agreement (i) represents the highest or otherwise best offer received by the Trustee and (ii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent

5

Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, the laws of the United States, any state, territory, possession thereof or the District of Columbia, or any other applicable law. The Stalking Horse Agreement represents a fair and reasonable offer to effectuate the terms of the Sale Transaction under these circumstances. Other than the Stalking Horse Purchaser, no other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors.

K.    **Free and Clear**. The conveyance of the Acquired Assets in accordance with the Stalking Horse Agreement will be a legal, valid, and effective transfer of the Acquired Assets, and, except as otherwise provided in the Stalking Horse Agreement, vests or shall vest the Stalking Horse Purchaser with all right, title, and interest of the Debtors in and to the Acquired Assets pursuant to Bankruptcy Code sections 363(f) and 365 free and clear of all Liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature that have been, are or could be asserted against the Trustee, the Debtors, or the Acquired Assets, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Bankruptcy Cases, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "**Interests**"), including, but not limited to: (i) those that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' rights, title, and interests in the Acquired Assets, or any similar rights; (ii) those arising in respect of (a) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, (b) any employee, worker's compensation, occupational

disease or unemployment or temporary disability related claim, and (c) any environmental laws; (iii) those arising under all mortgages, deeds of trust, security interests, pledges, Liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership; and (iv) those arising in connection with any agreements, acts, or failures to act, of any of the Trustee or the Debtors, or any of the Trustee or the Debtors' predecessors, affiliates, or representatives including, but not limited to, Interests arising under any bulk-transfer laws, doctrines of successor liability, or similar theories. Notwithstanding anything else to the contrary set forth in this paragraph, the term "**Interests**" shall not include any Permitted Liens, any Assumed Liabilities, and any Liens created by or through the Stalking Horse Purchaser.

L.     **Findings Required by Stalking Horse Purchaser**.     The Stalking Horse Purchaser represents that it would not have entered into the Stalking Horse Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their Estates and their creditors: (i) if the Acquired Assets are not conveyed to the Stalking Horse Purchaser free and clear of all Interests of any kind or nature, except as set forth in this Order, or if the Stalking Horse Purchaser would, or in the future could, be liable for any of the Interests; and (ii) unless the Stalking Horse Agreement provides, and the Court so orders, that none of the Releasees (as defined below) or the Acquired Assets shall have any liability whatsoever with respect to any Interest or be required to satisfy any Interest in any manner (whether at law or in equity, by payment, setoff or otherwise, directly or indirectly).   An injunction against creditors and third parties pursuing claims against, and Liens, interests and encumbrances on, the Acquired Assets is necessary to induce the Stalking Horse Purchaser to close the Sale

Transaction, and the issuance of such injunctive relief is therefore necessary to avoid irreparable injury to the Debtors' Estates and will benefit the Estates and their creditors and all other parties in interest.

M.    **Satisfaction of Section 363(f) Standards**.  Pursuant to the terms set forth in the Stalking Horse Agreement, the Trustee may sell the Debtors' rights, title, and interests in the Acquired Assets free and clear of any Interests of any kind or nature as set forth in this Order because in each instance, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Each person or entity with any Interest in the Acquired Assets: (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction, is deemed to have consented to the Sale Transaction, or has had its objections to the Sale Transaction considered and overruled by the Bankruptcy Court; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise is subject to the provisions of Bankruptcy Code section 363(f).  Those holders of Interests who did not object to the Sale Motion are deemed, subject to the terms of this Order, to have consented to the relief sought in the Sale Motion pursuant to Bankruptcy Code section 363(f)(2).

N.    **No Fraudulent Transfer**.  The Stalking Horse Agreement was not entered into for the purpose of hindering, delaying or defrauding present or future creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.  Neither the Trustee and nor the Stalking Horse Purchaser is entering into the Sale Transaction with actual fraudulent intent within the meaning of such statutory and common law fraudulent conveyance and fraudulent transfer laws.

O.    **No Successor Liability**.  Upon the Closing, except as included in the Assumed Liabilities, the Stalking Horse Purchaser shall not and shall not be deemed to: (i) be a successor

8

or successor employer to any of the Debtors or their Estates under any theory of law or equity; (ii) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or the Debtors' Estates; (iii) be a mere continuation or substantial continuation of any of the Debtors or any enterprise of the Debtors; or (iv) be liable for any acts or omissions of the Trustee or the Debtors in the conduct of the Debtors' business or arising under or related to the Acquired Assets other than as set forth in the Stalking Horse Agreement. The Stalking Horse Purchaser shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws. Without limiting the generality of the foregoing, and except as otherwise provided in the Stalking Horse Agreement, the parties intend that the Stalking Horse Purchaser shall not be liable for any Interest or liability (other than Assumed Liabilities and Permitted Liens) against any Debtor, or any of its predecessors or affiliates, and the Stalking Horse Purchaser shall have no successor or vicarious liability of any kind or character whatsoever, whether known or unknown as of the Closing Date, whether now existing or hereafter arising, whether asserted or unasserted, or whether fixed or contingent, with respect to the Debtors' business, the Acquired Assets or any liabilities of any Debtor arising prior to the Closing Date. The Stalking Horse Purchaser would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

P.      **UP Entertainment LLC Objection and Resolution.** UP Entertainment LLC on September 12, 2018 filed an objection to the Sale Transaction by the Trustee objecting on various grounds to the inclusion of rights in a film titled "Life of a King" (the "Movie") in the Acquired Assets to be transferred (D.I. 676; the "UP Objection"). UP Entertainment LLC filed the UP Objection as owner and copyright holder of the Movie by virtue of a certain assignment

from Life of a King LLC.    A resolution of the UP Objection has been reached by UP Entertainment LLC, Life of a King LLC, the Trustee and OA Acquisitions LLC as follows:  (i) UP Entertainment LLC and Life of a King LLC consent and agree to the transfer of the distribution rights to the Movie under the Acquisition Agreement entered into as of September 6, 2013 by and between Millennium  Entertainment LLC  and Life of a King LLC (the "UP Designated Contract"), to OA Acquisitions LLC as part of the Sale Transaction and waive any future claims regarding the rejection of the subject UP Designated Contract, (ii) OA Acquisitions LLC grants to UP Entertainment LLC, its successors and assigns, a non-exclusive license to air the Movie on UP Entertainment LLC's networks and services which are majority owned, controlled and operated by UP Entertainment LLC or its parent, InterMedia Partners, provided that if requested by OA Acquisitions LLC then UP Entertainment LLC will promptly advise OA Acquisitions LLC on which of the networks and/or services UP Entertainment LLC is making the Movie available, (iii) the Trustee from the proceeds of the Sale Transaction shall pay the sum of $30,519.51 to UP Entertainment LLC within ten (10) days of Closing of the Sale Transaction with OA Acquisitions LLC, which payment shall also be in full and final satisfaction of the Licensor License Fee Proof of Claim in the amount of $5,519.51 filed on August 24, 2018 by Life of a King LLC which payment of $30,519.51 has been approved by SunTrust Bank, as administrative agent for the Secured Lenders (collectively, the "UP Resolution").

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.    **Sale Motion is Granted.**  The Sale Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

2.    **Objections Overruled.**  Any objections to the entry of this Order or the relief granted herein and requested in the Sale Motion that have not been withdrawn, waived, settled,

10

or otherwise resolved as set forth on the record at the Sale Hearing and/or memorialized pursuant to the terms hereof (if any) hereby are denied and overruled on the merits with prejudice.

3.    **Approval.**  The Stalking Horse Agreement and all of the terms and conditions therein are approved.  The Trustee and the Stalking Horse Purchaser are hereby authorized to: (i) enter into and perform the Stalking Horse Agreement and execute and perform any additional agreements, instruments or documents that may be reasonably necessary or appropriate to implement the Stalking Horse Agreement, provided that such additional documents do not change its terms in a manner materially adverse to the Trustee; (ii) consummate the Sale Transaction in accordance with the terms and conditions of the Stalking Horse Agreement and the other agreements contemplated thereby; (iii) and take all other and further actions as may be reasonably necessary to implement the Sale Transaction.   The provisions of this Order authorizing the sale of the Acquired Assets free and clear of Interests, except as otherwise set forth in the Stalking Horse Agreement or this Order, shall be self-executing, and none of the Trustee, the Debtors, or the Stalking Horse Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  However, the Trustee, the Debtors, the Stalking Horse Purchaser, and each of their respective officers, directors, employees, agents, and representatives are hereby authorized and empowered to take all actions and execute and deliver any and all agreements, instruments and documents that the Trustee or the Stalking Horse Purchaser deem necessary or appropriate to implement and effectuate the terms of the Stalking Horse Agreement and this Order.  For the avoidance of doubt, the amount of any lien securing the charges of a laboratory or other facility storing any of the Acquired Assets may be paid by the Trustee, subject to approval by SunTrust, without further order of the Court.

11

4.    **Valid Transfer.**  Upon the Closing: (i) the Sale Transaction effects a legal, valid, enforceable and effective sale and transfer of all of the Debtors' rights, title, and interests in Acquired Assets to the Stalking Horse Purchaser, and shall vest the Stalking Horse Purchaser with all of the Debtors' rights, title, and interests in such Acquired Assets free and clear of all Interests of any kind whatsoever, except as expressly provided in this Order and the Stalking Horse Agreement; and (ii) the Stalking Horse Agreement, the Sale Transaction and any agreements, instruments, and documents contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Trustee, the Debtors, or any successor trustee appointed with respect thereto.  All Interests (other than Permitted Liens and Assumed Liabilities) in and to the Acquired Assets shall attach to the proceeds received by the Trustee from the sale of the Acquired Assets with the same priority, validity, force and effect as such Interests had in the Acquired Assets prior to their sale.  The use of such proceeds shall be subject to, and governed by, the Sharing Agreement, the Sharing and Reimbursement Order, and the Guilds Stipulation.

5.    **General Assignment.**  Effective as of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' rights, title, and interests in the Acquired Assets to the Stalking Horse Purchaser.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction.

6.    **Exculpation.**  None of the Stalking Horse Purchaser, its affiliates, successors and assigns, and each of their respective current and former officers, directors, employees, managers, partners, controlling persons, members, advisors, attorneys, agents and representatives

12

(collectively, the "**Releasees**") shall have or incur any liability to, or be subject to any claim or action by, the Trustee, the Debtors, the Debtors' Estates, or any of their respective predecessors, successors and assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Stalking Horse Agreement and the entry into and consummation of the Sale Transaction, except as expressly provided in the Stalking Horse Agreement and this Order.

7.    **Injunction.** Except as otherwise provided in the Stalking Horse Agreement or by this Order, all persons and entities, including, but not limited to, all debt holders, equity holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants, and other persons, holding Interests of any kind or nature whatsoever in the Debtors or against the Trustee, the Debtors, or the Debtors' rights, title, and interests in the Acquired Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Bankruptcy Cases, whether imposed by agreement, understanding, law, equity or otherwise), including, without limitation, those arising under, out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' business, or the transfer of the Debtors' rights, title, and interests in the Acquired Assets to the Stalking Horse Purchaser, shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests against the Releasees, the Acquired Assets, or the rights, title, and interests of the Estates in such Acquired Assets.  Following the Closing, no holder of an Interest against the Estates, the Debtors, or the Acquired Assets shall interfere with the Stalking Horse Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Interests except as otherwise provided in the Stalking Horse Agreement or by this Order.  For the

13

avoidance of doubt, the foregoing shall not prevent the Trustee from enforcing the terms of the Stalking Horse Agreement against the Stalking Horse Purchaser and/or its successors and assigns.

        8.    **No Successor Liability.**  Upon the Closing, except as otherwise provided in the Stalking Horse Agreement, the Releasees shall not and shall not be deemed to: (i) be a successor or successor employer to any of the Debtors or their Estates under any theory of law or equity; (ii) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or the Debtors' Estates; (iii) be a mere continuation or substantial continuation of any of the Debtors or any enterprise of the Debtors; or (iv) be liable for any acts or omissions of the Trustee or the Debtors in the conduct of the Debtors' business or arising under or related to the Acquired Assets other than as set forth in the Stalking Horse Agreement.  The Stalking Horse Purchaser shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws.  Except with respect to the Assumed Liabilities and the Permitted Liens, none of the Releasees or the Acquired Assets shall have (i) any Liability or responsibility for or be required to satisfy in any manner (whether at law or in equity, by payment, setoff or otherwise, directly or indirectly) any claim or any Interest against any of the Debtors, or (ii) any successor or vicarious Liabilities of any kind or character, including, but not limited to, federal, state or other tax Liabilities, U.S. or foreign pension Liabilities, or Liabilities based on any theory of antitrust law, environmental law, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, *de facto* merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the

14

commencement of the Chapter 7 Cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to any of the Debtors or any obligations of the Debtors, including, but not limited to, Liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing or any taxes in connection with, or in any way relating to, the cancellation of debt of the Debtors or their affiliates.

9. **Binding Effect of Order.** The terms and provisions of the Stalking Horse Agreement and this Order shall be binding in all respects upon the Trustee, the Debtors, the Debtors' Estates, all creditors of and holders of equity interests in the Debtors (whether known or unknown), all other parties in interest, and their respective affiliates, successors and assigns, and any third parties.

10. **Sale Free and Clear of Interests.** This Order (i) shall vest the Stalking Horse Purchaser with all right, title and interest in the Acquired Assets free and clear of any and all Interests of any kind or nature whatsoever, except as otherwise provided in the Stalking Horse Agreement or this Order, and (ii) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets. Upon the occurrence of the Closing, the Trustee, the Debtors, and all persons holding an Interest in the Acquired Assets immediately prior to the Closing are hereby authorized to execute

15

such documents and take all other actions as may be reasonably necessary to release their Interests in the Acquired Assets (if any) as such Interests may have been recorded or may otherwise exist.   Other than Permitted Liens and Assumed Liabilities, all recorded Interests against the Acquired Assets shall be deemed stricken from their records, official and otherwise.

11.    **Release of Liens**.  If any person or entity which has filed statements or other documents or agreements evidencing Interests in the Acquired Assets shall not have delivered to the Trustee before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and easements, and any other documents required to document the release of such Interests (other than the Permitted Liens and Assumed Liabilities), the Trustee and the Stalking Horse Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.  Each and every federal, state and governmental agency or department and any other person or entity is hereby authorized and directed to accept any and all documents and instruments in connection with or necessary to consummate the Sale of the Acquired Assets contemplated by the Stalking Horse Agreement or evidence the release of Interests in the Acquired Assets.

12.    **Assumed Liabilities and Permitted Liens**.  For the avoidance of doubt, notwithstanding any other provisions of this Order the sale of the Acquired Assets to the Stalking Horse Purchaser shall be subject to: (a) the Assumed Liabilities and the Permitted Liens set forth in the Stalking Horse Agreement; and (b) obligations, if any, arising under collective bargaining agreements to make residual payments and provide related notices, accruing after the Closing Date and applicable to the exploitation of any of the Acquired Assets, but only to the extent 28 U.S.C. section 4001 provides for the deemed assumption of such obligations by the Stalking

16

Horse Purchaser. By way of clarification in connection with subparagraph (b), supra, nothing therein shall be deemed to expand the scope of the obligations (if any) to which the Purchaser would otherwise be subject pursuant to 28 U.S.C. § 4001, and nothing therein shall be deemed to expand or contract whatever obligations which may accrue after the Closing Date which may be imposed pursuant to the contractual terms of any of the Acquired Assets.

14.    **Retention of Jurisdiction.** This Court retains exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of, and to resolve any and all disputes that may arise under or in connection with, this Order and the Stalking Horse Agreement, all amendments thereto and any waivers and consents thereunder, including, but not limited to, the authority to (i) compel delivery of the Acquired Assets to the Stalking Horse Purchaser; (ii) interpret, implement and enforce the provisions of this Order and any related order; and (iii) protect the Releasees and the Acquired Assets against any Interests of any kind or nature whatsoever (except as otherwise provided in the Stalking Horse Agreement or this Order).

15.    **Retention of Rights By the Government.** Nothing in this Order or in the Stalking Horse Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit of the United States or any state or municipality of the United States under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; or (ii) should be construed to give the Stalking Horse Purchaser any more protection against any governmental unit of the United States or any state or municipality of the United States than the Stalking Horse Purchaser is otherwise entitled to under Bankruptcy Code section 363(f). Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not otherwise exist under law.

16.    **No Material Modifications.**  The Stalking Horse Agreement and any related agreements, instruments or other documents may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' Estates and has been agreed to between the Trustee, after consultation with SunTrust, and the Stalking Horse Purchaser.

17.    **Subsequent Orders.**  Nothing contained in any subsequent order of this Court shall nullify, alter, conflict with or derogate from the provisions of this Order, and the provisions of this Order shall survive and remain in full force and effect.

18.    **Failure to Specify Provisions.**  The failure to reference or specifically include any particular provisions of the Stalking Horse Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Stalking Horse Agreement and the Sale Transaction be authorized and approved in its entirety.

19.    **No Stay of Order.**  Notwithstanding the provisions of Bankruptcy Rule 6004 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry.

20.    **No Application of Bulk Sales Laws or Commissions**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.  No obligation or Liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment is due to any person in connection with the Stalking Horse Agreement or the transactions contemplated hereby or thereby for which the Stalking Horse Purchaser is or will become liable.

LEGAL\33319044\10 00601.0823.000/390810.000
09/17/2018

21.    **Inconsistencies with Prior Orders, Pleadings or Agreement.**  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in the Bankruptcy Cases, the terms of this Order shall govern.   To the extent that this Order is inconsistent with the terms of the Stalking Horse Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

22.    **Second-Highest Bidder.**    The Second-Highest Bid is hereby approved.   In accordance with the Bid Procedures, if the Stalking Horse Purchaser, as the Prevailing Bidder, fails to consummate the Sale Transaction, the Trustee may deem the Second-Highest Bidder to have the new Prevailing Bid, and the Trustee will be authorized, without further order of this Court, to consummate the Alternative Transaction with the Second-Highest Bidder pursuant to the terms of the Second Highest Bidder's Alternative Asset Purchase Agreement.  In such event, the Second-Highest Bidder will be deemed to be the Prevailing Bidder and the Trustee will be authorized, but not directed, to effectuate a sale of the Acquired Assets to the Second-Highest Bidder (subject to the terms of its Alternative Asset Purchase Agreement) without further order of the Bankruptcy Court and, in such event, all provisions of this Order applicable to the Stalking Horse Purchaser, the Sale Transaction, and the Stalking Horse Agreement shall apply, respectively, to the Second-Highest Bidder, the Second Highest-Bid, the Alternative Transaction with the Second Highest Bidder, and the Second Highest Bidder's Alternative Asset Purchase Agreement.

LEGAL\33319044\10 00601.0823.000/390810.000
09/17/2018

23.    The UP Resolution is hereby approved and by this order of the Court the Trustee, UP Entertainment LLC, Life of a King, LLC and OA Acquisitions LLC are directed and authorized to proceed with implementing the terms of the above UP Resolution including but not limited to the execution of any documents reasonably necessary to effectuate the UP Resolution.

BY THE COURT:

Dated: September 17, 2018
Wilmington, Delaware

The Honorable Kevin Gross
United States Bankruptcy Judge

LEGAL\33319044\10 00601.0823.000/390810.000
09/17/2018