## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Our Alchemy, LLC, *et al.*,[1] | Case No. 16-11596 (KG) (Jointly Administered) |
| Debtors. | **Hearing Date: December 21, 2018 at 10:00 a.m.** **Objection Date: December 14, 2018 at 4:00 p.m.** |

## MOTION OF CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER AUTHORIZING DISTRIBUTIONS OF UNIDENTIFIED COLLECTED POST-PETITION REVENUES TO SUNTRUST BANK, AS ADMINISTRATIVE AGENT FOR ITSELF AND CERTAIN OTHER SECURED LENDERS OF THE DEBTORS

George L. Miller, the chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Estates") of the above-captioned debtors (collectively, the "Debtors") hereby respectfully files this motion (the "Motion") for entry of an order, substantially in the form submitted herewith, authorizing the Trustee to make distributions of unidentified collected post-petition revenues to SunTrust Bank, as Administrative Agent ("SunTrust")[2] for itself and certain other secured lenders of the Debtors (collectively, and including SunTrust in its capacity as a lender, the "Secured Lenders"), pursuant to sections 105, 362, 704 and 725 of title 11 of the United States Code (the "Bankruptcy Code") and in accordance with the Sharing Agreement (as defined below) entered into with the Secured Lenders. In support of the Motion, the Trustee respectfully states the following:

---

[1] The Debtors are Our Alchemy, LLC, Case No. 16-11596, and Anderson Digital, LLC, Case No. 16-11597.

[2] For the avoidance of doubt, and except as otherwise noted herein, any reference to "SunTrust" in this Motion shall mean SunTrust in its capacity as Administrative Agent for the Secured Lenders, as identified in Pre-Petition Financing Documents (as defined in the Sharing Agreement (as defined below)) and in accordance with and subject to the conditions thereof.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference* from the United States District Court for the District of Delaware,
dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2),
and the Trustee confirms his consent pursuant to Rule 9013-l(f) of the Local Rules of
Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of
Delaware to entry of a final order by the Court in connection with the Motion to the extent that it
is later determined that the Court, absent consent of the parties, cannot enter final orders or
judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105(a), 362, 704,
and 725 of the Bankruptcy Code, and Rule 2002 of the Federal Rules of Bankruptcy Procedure
(the "Bankruptcy Rules").

## BACKGROUND

4.      Prior to the commencement of these bankruptcy cases, the Debtors operated as
film and media distributors.  The Debtors, among other things, acquired, licensed and distributed
feature films, television series, and other programming via multiple platforms, including online,
electronic, and hard copy distribution channels.

5.      On July 1, 2016 (the "Petition Date"), the Debtors commenced these bankruptcy
cases (the "Chapter 7 Cases") by each filing a voluntary petition for relief under chapter 7 of the
Bankruptcy Code.

6.       On or shortly after the Petition Date, the Office of the United States Trustee appointed George L. Miller as the duly authorized chapter 7 trustee for the Estates of the Debtors, and he continues to serve in this capacity.

**A.    The Debtors' Pre-Petition Obligations Owed to the Secured Lenders and the Sharing Agreement with the Secured Lenders**

7.       As of the Petition Date, the Debtors were indebted to the Secured Lenders in the amount of at least $46,306,475.00 (the "Pre-Petition Obligations"), which indebtedness was secured by an asserted first priority security interest in substantially all of the Debtors' assets, including cash and other proceeds of the Debtors' accounts receivable and inventory (as defined in the Sharing Agreement, the "Collateral").  Because the Debtors had no unencumbered cash, absent a carve-out from the Secured Lenders, the Trustee would not have been able to effectively administer the Estates.  Moreover, because the Pre-Petition Obligations appeared to exceed the value of the Debtors' assets, the Debtors' unsecured creditors would likely have seen no benefit from any administration of the Estates without a carve-out from the Secured Lenders.

8.       Shortly after the Petition Date, the Trustee commenced negotiations with the Secured Lenders, and the Trustee and SunTrust, as agent for the Secured Lenders, eventually entered into an agreement (the "Sharing Agreement")[3] under which the Trustee obtained carve-outs from the Secured Lenders' liens (as collectively defined in the Sharing Agreement, the "Carve-Out") to enable him to use the Debtors' existing cash and proceeds of their accounts receivable and inventory to administer the Estates and market and attempt to sell the Debtors' assets.

---

[3] The Sharing Agreement is attached to the Sharing and Reimbursement Order (as defined below) as Exhibit 1.  *See* Docket No. 302.

3

9.      The Carve-Out from the Secured Lenders' liens in the Sharing Agreement included carve-outs for: (i) the payment of certain allowed statutory commissions of the Trustee related to recovering, preserving, marketing, and selling the Collateral pursuant to sales conducted under section 363 of the Bankruptcy Code or other methods of liquidating the Collateral (as defined in the Sharing Agreement, the "Asset Sales"); (ii) professional fees related to Asset Sales and/or any other costs and expenses related to Asset Sales; and (iii) an additional carve-out for the Estates based on a percentage of the cash proceeds of Asset Sales. *See* Sharing Agreement ¶¶ 7-9.

10.     On September 15, 2016, the Trustee filed a motion for approval of the Sharing Agreement [Docket No. 226].

11.     On October 25, 2016, the Court entered an order approving the Sharing Agreement [Docket No. 302] (the "Sharing and Reimbursement Order").

12.     Subject only to certain "Guild Considerations" (as defined in the Sharing and Reimbursement Order),[4] the Sharing and Reimbursement Order provided that: (i) the Sharing Agreement was approved; (ii) on account of the Pre-Petition Obligations, the Debtors are indebted to the Secured Lenders in an amount of at least $46,306,475.00, plus interest, fees, costs, and expenses, and the Pre-Petition Obligations constitute legal, valid, binding obligations of the Estates, enforceable in accordance with their terms; (iii) such claims shall be allowed for

---

[4] On January 30, 2018, the Trustee filed a motion to approve a stipulation (the "Guild Stipulation") between the Trustee, SunTrust, and the Guilds, including the Directors Guild of America, Inc., Screen Actors Guild – American Federation of Television and Radio Artists, the Writers Guild of America West, Inc. (collectively, the "Guilds"), regarding the Sharing Agreement and the Guild Considerations [Docket No. 543]. The Guild Stipulation was approved by the Court on March 1, 2018 [Docket No. 553]. Among other things, the Guild Stipulation resolved the parties' disputes concerning the competing security interests in the Debtors' film library, and set forth a method for distributing sale proceeds therefrom among the parties.

4

all purposes in each Debtors' bankruptcy case and in any successor case; and (iv) subject only to certain exceptions expressly stated in the Sharing and Reimbursement Order, such claims are secured by valid, enforceable, binding, perfected, and non-avoidable first-priority liens and security interests granted by the Debtors to the Secured Lenders upon and in the Collateral.

13.     The Sharing Agreement approved by the Court provides for the Trustee to pay SunTrust via wire transfer the proceeds of Asset Sales net of the Carve-Out.  *See* Sharing Agreement ¶¶ 10-14.  The automatic stay under section 362(a) of the Bankruptcy Code was modified to permit SunTrust to receive, collect, and apply payments in respect of the Collateral. *See id.*

**B.     Trustee's Collection of Revenues and Inability to Identify Certain of Such Revenues to Specific Film Titles**

14.     The assets of the Debtors and their Estates include film distribution rights.  Such rights provide for and authorize the Debtors to exploit various film titles, primarily through sub-license agreements with digital platforms including, for example, Amazon and Netflix (collectively, the "Sub-Licensees").  Generally, film licensors (the "Content Licensors") licensed to the Debtors various exploitation, distribution and other rights regarding certain films.  The Debtors, in turn, entered into agreements with the Sub-Licensees who undertook the exhibition and sub-distribution of the relevant film(s).  In exchange, the Sub-Licensees were (and remain) obligated to pay the Debtors certain fees on account of the sub-licensed rights, and to provide detail with respect to the composition of those fees (i.e., a breakdown of the fees on a film title-by-film title basis).  Such accounting information is necessary to permit the Trustee to analyze

5

and determine which Content Licensors, if any, may potentially assert claims against certain of the revenues collected by the Trustee.[5]

15.    The Trustee has performed such analyses many times during the pendency of the Chapter 7 Cases using revenue information supplied by the Sub-Licensees and has utilized these analyses in connection with revenues collected pursuant to his Court-approved stipulations with Netflix and Amazon[6] and, most recently, with regard to his Motion to Establish a Bar Date for Filing Claims for Alleged Licensing Fees or Other Amounts Related to License Fee Fund No. 1 [D.I. 612], which was approved by order of the Bankruptcy Court dated July 25, 2018 [D.I. 637]. In these instances, the Trustee was able to identify and notice Content Licensors whose rights may have been affected as to how the Trustee proposed to use specific funds which could be identified to specific film titles.

16.    Identification of collected revenues to specific film titles is a challenging task which is not possible without detailed revenue information available only from the Sub-Licensees, and the analyses of revenues carries a significant cost chargeable under the terms of the Sharing Agreement.  Notwithstanding the foregoing, the Trustee has endeavored to identify the source of all funds received on account of the post-petition exploitation of the Debtors' distribution and exploitation rights.  In a number of instances, the Trustee has not received complete accounting information from certain Sub-Licensees which would enable him to perform this analysis.  The Trustee's efforts to obtain the necessary accounting information from such Sub-Licensees have included a significant volume of e-mail requests and telephone

---

[5] Typically, under and pursuant to the terms of an agreement between the Debtors and a Content Licensor, the Content Licensor would be entitled to a portion or percentage of the fee(s) paid by the Sub-Licensee to the Debtors.

[6] *See* D.I. 494 and 566, respectively.

6

requests, and the issuance of formal demand letters to certain of such Sub-Licensees for information.  In spite of these efforts, the Trustee has not received all of the information required to identify all collected funds to specific film titles, and additional efforts, in the business judgment of the Trustee, would not be productive and would instead result in the detrimental incurrence of costs without a corresponding benefit to the Estates.

17.     As of the date of this Motion, the Trustee has been able to identify substantially all of the post-petition collections derived from the exploitation of the Debtors' film rights to specific film titles, except for those funds identified on Exhibit "A" totaling $949,366.42.  The Trustee has made repeated good faith efforts to obtain the information from Sub-Licensees as would be necessary to account to Content Licensors who may hold claims against post-petition collections.

18.     The Trustee believes that any additional efforts to identify these funds to specific film titles and Content Licensors would be, at best, only at a disproportionately greater cost relative to the amount actually at issue on an individual case-by-case basis, and most likely such further efforts would prove fruitless.  In some instances, the relevant Sub-Licensees have indicated that they simply no longer possess or are unable to locate and/or access the requested information.  In other instances, the Sub-Licensees have been non-responsive to the Trustee's requests for information.

19.     The revenues collected by the Trustee from the exploitation of the Debtors' distribution rights constitute the Secured Lenders' collateral.[7]  As a result, and in furtherance of the Trustee's administration of the Estates, the Trustee seeks the authority to distribute the

---

[7] As explained below, because SunTrust holds valid first priority security interests in the Collateral as found and ordered by this Court, SunTrust has asserted that such security interests take priority over any claims that may be asserted by a Content Licensor.

unidentified collected revenues identified on Exhibit "A", as well as any additional future, similarly unidentifiable collected revenues received by the Trustee, net of the Carve-Out (collectively, the "Unidentified Collected Revenues"), to SunTrust via wire transfer in accordance with the Sharing Agreement.  The Trustee intends to proceed with the abandonment of the film distribution rights remaining as property of the Estates within approximately sixty (60) days and accordingly any additional future unidentifiable revenues should be minimal.

## RELIEF REQUESTED

20.     Accordingly, by this Motion, the Trustee seeks the entry of an order, substantially in the form of the proposed order submitted herewith, authorizing the Trustee to distribute the Unidentified Collected Revenues to SunTrust, via wire transfer, without further order of this Court.

## BASIS FOR REQUESTED RELIEF

21.     Distributions to SunTrust in these Chapter 7 Cases are provided for and authorized by the Sharing Agreement, which, among other things, modified the automatic stay of section 362(a) of the Bankruptcy Code to permit such distributions.  *See* Sharing Agreement ¶ 14.  As recognized by this Court, payments to a secured creditor on account of its secured claim is appropriate after the secured creditor's collateral has been liquidated.  *See In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 510-12 (Bankr. D. Del. 2010) (reciting examples of the "ample authority" for a secured creditor being paid all or part of its prepetition secured claim). Accordingly, because SunTrust has a valid first priority security interest in substantially all of the Debtors' assets, including cash and other proceeds of the Debtors' accounts receivable and inventory, distributions to SunTrust of the Unidentified Collected Revenues are both appropriate and prudent following the sale, disposition or realization of its Collateral.

8

22.     This Court also has the authority to grant the relief requested in this Motion pursuant to section 105 of the Bankruptcy Code, which provides that "[t]he court may issue any order…that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  "The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 COLLIER ON BANKRUPTCY ¶ 105.01 (Alan N. Rosnick & Henry J. Sommers eds., 16th ed.).  The Court, therefore, should authorize the relief sought by this Motion as doing so will give effect to the Sharing Agreement, and further the administration of these cases.  Indeed, it will enable the Trustee's administration of the Estates to proceed in a prudent and expeditious manner consistent with the Trustee's duties under section 704 of the Bankruptcy Code, as well as the Trustee's obligation under section 725 of the Bankruptcy Code, after notice and a hearing, to "dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title." 11 U.S.C. § 725.

23.     Thus, the Trustee respectfully submits that any distributions of Unidentified Collected Revenues to SunTrust should be authorized and made free and clear of any and all liens, encumbrances or other claims any creditor or party in interest in these cases may assert with respect to such funds or distributions against the Estates, SunTrust and the Secured Lenders on account thereof.

24.     In addition, the Sharing Agreement authorizes the Trustee to make distributions to SunTrust via wire transfer.  *See* Sharing Agreement at ¶13.  Accordingly, the Trustee hereby seeks express authority to make additional distributions to SunTrust via wire transfer in accordance with the terms and provisions of the Sharing Agreement.

9

25.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Trustee requests that the Bankruptcy Court waive this 14-day stay, and that the order approving this Motion be effective immediately.

## NOTICE

A copy of this Motion is being served upon: (i) counsel to the Debtors; (ii) the United States Trustee; (iii) counsel to SunTrust; (iv) the Debtors' top twenty unsecured creditors as appearing on the Debtors' filed bankruptcy schedules; (v) all Content Licensors as of the Petition Date known to the Trustee; and (vi) all other parties in interest having requested notice pursuant to Bankruptcy Rule 2002 as of the date hereof (the "Service Parties").  In light of the nature of the relief requested herein, the Trustee respectfully submits that no other or further notice need be given.

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto, granting this Motion and authorizing the Trustee to Distribute, free and clear of all liens, encumbrances or other claims, the Unidentified Collected Revenues to SunTrust, via wire transfer, without further order of this Court, and granting such other relief as the Court may deem appropriate.

11/30/2018 5:03 PM
LEGAL\39230388\2 00601.0823.000/390810.000

Dated:  November 30, 2018
      Wilmington, DE

COZEN O'CONNOR

By:   */s/ John T. Carroll, III*

John T. Carroll, III (DE No. 4060)
1201 N. Market Street
Suite 1001
Wilmington, DE  19801
Telephone: (302) 295-2028
Facsimile: (302) 295-2013
jcarroll@cozen.com

Eric L. Scherling
1650 Market Street
Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2042
Facsimile: (215) 701-2081
escherling@cozen.com

*Counsel to George L. Miller,*
*Chapter 7 Trustee*

11