# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OUR ALCHEMY, LLC, *et al.*,<br><br>Debtors. | Chapter 7<br><br>Case No. 16-11596 (JTD)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 1040 & 1041** |

### REPLY IN SUPPORT OF MOTION OF
### EMIGRANT BANK AND PACIFIC MERCANTILE BANK FOR ENTRY OF AN
### ORDER GRANTING EMIGRANT BANK AND PACIFIC MERCANTILE BANK
### LEAVE TO SERVE A SUBPOENA ON THE TRUSTEE PURSUANT TO FRCP 45

Emigrant Bank and Pacific Mercantile Bank (collectively, the "Lenders") by and through their undersigned counsel respectfully submit this reply (this "Reply") in support of the *Motion of Emigrant Bank and Pacific Mercantile Bank for Entry of an Order Granting Emigrant Bank and Pacific Mercantile Bank Leave to Serve a Subpoena on the Trustee Pursuant to FRCP 45* [Docket No. 1040] (the "Motion") and in response to the *Chapter 7 Trustee's Objection to Motion of Emigrant Bank and Pacific Mercantile Bank for Entry of an Order Granting Emigrant Bank and Pacific Mercantile Bank Leave to Serve a Subpoena on the Trustee* [Docket No. 1041] (the "Objection")[1] and represent as follows:

### PRELIMINARY STATEMENT

1. The Lenders filed the Complaint in the SDNY Litigation on March 18, 2020 against the SunTrust Bank ("SunTrust") and Truist Bank (collectively with SunTrust, the "Agent"), neither of which are Debtors in these Chapter 7 Cases. Lenders filed an Amended Complaint on September 27, 2021. Discovery was stayed in the SDNY Litigation until March 27, 2023, when

---

[1] Capitalized terms used but not defined herein shall have the meanings given them in the Motion and the Objection.

07601-00001/14198060.1

10912688v.3

the United States District Court for the Southern District of New York (the "SDNY Court") lifted the stay on discovery. Since May 2023, the Lenders have been attempting to get in touch with the Trustee and its counsel via emails, phones calls, and voicemails seeking the Trustee's agreement to receive service of the Subpoena to produce documents previously produced in Adversary Proceeding No. 18-50633 and other relevant documents in the Trustee's possession by July 25, 2023.

2.     Despite all these attempts to communicate with the Trustee, the Lenders did not receive any responses to their request. The Lenders narrowed the scope of the Subpoena and filed the Motion on June 30, 2023.

3.     Since the filing of the Motion, counsel for the Lenders and the Trustee have engaged in productive communications to attempt to resolve disputes related to the underlying Subpoena and minimize any potential burden on the Trustee in responding to the Subpoena. However, the parties have yet to reach agreement on these disputes.

4.     As set forth more fully below, the Court should not extend the *Barton* doctrine to the service of the Subpoena as it goes beyond the original scope of the doctrine and is not necessary to protect the Trustee from undue burden. Accordingly, the Lenders respectfully request that the Objection be overruled to the extent not otherwise resolved consensually by the parties.

## THE REPLY

**A.     The Lenders May Serve the Subpoena on the Trustee Since Such Service Complies with the Automatic Stay and the Barton Doctrine.**

5.     As noted in the Motion, certain courts have held that the *Barton* doctrine does not apply to service of a third-party subpoena on a trustee. *In re Media Group, Inc.*, 2006-WL-6810963 at *5-6 (B.A.P. 9th Cir. Nov. 14, 2006) ("*Barton* [does not] support[] the proposition that

leave from the appointing court must be obtained before pursuing *discovery* in a case in which the court appointee is not a named party.") (emphasis in original).  This Court should follow the rationale laid out in *In re Media Group, Inc.* and refuse to require leave for service of the Subpoena on the Trustee.  Service of third-party discovery on a trustee is an entirely different prospect than a suit against a trustee, and the discovery rules applicable in the SDNY Litigation are available to adequately address the issue of burden.  Thus, this Court need not make itself the gatekeeper of discovery from a chapter 7 trustee.

6. Moreover, the automatic stay does not prohibit service of third-party discovery on a chapter 7 trustee.  *See United Nat'l Funding, LLC v. JetDirect Aviation Inc.*, 2012 WL 2514929 at *9 (D. Nev. June 27, 2012) (Requiring a chapter 7 trustee in Delaware to comply with discovery requests that pertain to claims against other non-debtor defendants); *see also In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2018 Bankr. LEXIS 504 at *14-15 (Bankr. D.N.J. Feb. 23, 2018) (holding that section 362(a) does not preclude a party from seeking discovery from the foreign representative of a chapter 15 debtor); *Groner v. Miller (In re Miller)*, 262 B.R. 499, 504-05 (9th Cir. B.A.P. 2001) ("[T]his panel believes that section 362(a) does not preclude generation of information regarding claims by or against a non-debtor party, even where that information could eventually adversely affect the Debtor.").  If the automatic stay does not prohibit the production from a trustee, the Court should not further extend an equitable doctrine to prohibit such production.

**B.    If the Lenders Need Leave of Court to Serve the Subpoena, Such Relief is Appropriate in these Circumstances.**

7. Given that the automatic stay does not bar service of the Subpoena, even if the *Barton* doctrine were to apply to service of the Subpoena, the Court should permit such service to

occur. Permitting service of the Subpoena does not necessarily obligate the Trustee to comply. As noted above, the parties have engaged in good faith discussions on the scope of production so as to minimize burden. Even if the parties are unable to resolve dispute, the Trustee will have the ability to file a motion to quash in the SDNY Litigation, and the SDNY Court can address the issue of burden as it relates to any document production. If the Lenders bring a motion to compel the production of these documents, such a dispute would be heard in this Court.

8. Moreover, the Lenders have proposed a reasonable compromise to the Trustee that would substantially limit any burden. Specifically, the Lenders proposed that the Trustee turn over data already in electronic form in its possession without undertaking the expense of loading, reviewing, and Bates-stamping the documents. The burden of reviewing these documents would instead fall on the Lenders, and the confidentiality of these documents would be maintained through the protective order in the SDNY Litigation. In addition, the Lenders have requested that the Trustee reproduce materials that it already gathered or produced in Adversary Proceeding No. 18-50633, including prior productions (to the extent they exist), discovery responses, deposition transcripts, declarations, exhibits, and expert reports. The Trustee has suggested that the volume of these materials is likely very limited. Finally, the Lenders have requested that the Trustee provide information related to distributions in this case, as well as any productions in the Trustee's possession related to certain litigation pending in Los Angeles Superior Court under the caption *Avagliano v. Our Alchemy, LLC, et al.*

9. The Lenders have also informed the Trustee that for categories of documents that fall within the possession of SunTrust or Virgo Investment Group, LLC ("Virgo"), such as communications between the Trustee and SunTrust or documents produced by Virgo in Adversary Proceeding No. 18-50633, the Lenders will initially pursue those documents from SunTrust and

Virgo, respectively. The Lenders' compromise should avoid any unnecessary expense and burden on the Trustee.

10. Contrary to the Trustee's assertion, the documents at issue are highly relevant to the SDNY Litigation. The Lenders have brought suit against SunTrust for breach of contract. But the Lenders' allegations not only involve SunTrust's failure to fulfill its contractual obligation to sue Virgo, but also the Lenders' underlying claim that Virgo was the principal or alter ego of Calrissian, L.P. (the 100% equity owner of Alchemy). The Lenders allege that when Calrissian purchased Alchemy in 2014 and guaranteed the Lenders' loans to Alchemy in 2014 and 2015, Calrissian was acting as Virgo's agent or alter ego. The Trustee has sole possession of most of Alchemy's documents, which are critical to any determination of Virgo's control and domination of Calrissian during the events in question, as well as any misconduct by Virgo relating to the loans. The Lenders' ability to pursue their claims would be severely compromised if they were unable to obtain documents from the Trustee through the Subpoena.

**CONCLUSION**

WHEREFORE, the Lenders respectfully request that this Court overrule the Objection, grant the relief requested in the Motion and grant any further relief as this Court deems just and proper.

Dated: July 13, 2023                    Respectfully submitted,

*/s/ L. Katherine Good*
L. Katherine Good (No. 5101)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: kgood@potteranderson.com

 - and -

Victor Noskov *(pro hac vice)*
Leigha Empson *(pro hac vice)*
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: victornoskov@quinnemanuel.com
        leighaempson@quinnemanuel.com

*Attorneys for the Lenders*

10912688v.3